1  JONATHAN S. SHENSON (State Bar No. 184250)
   KLEE, TUCHIN, BOGDANOFF & STERN LLP
2  2121 Avenue of the Stars, 33rd Floor
   Los Angeles, California 90067-5061
3  Telephone:   (310) 407-4000
   Facsimile:    (310) 407-9090
4
   Counsel for MHF Zweite Academy Film GmbH & Co., KG
5  and MHF Erste Academy Film GmbH & Co. Producktions, KG

FILED

JUL 1 8 2006

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                    Deputy Clerk

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | Case No. SV 05-13855-MT |
| FRANCHISE PICTURES, LLC., et al. | Chapter 11 |
| Debtor. | Jointly Administered |
| ☒ Affects All Debtors<br>☐ Affects Only: | |
| | Case No. SV 05-50077-MT |
| In re | Chapter 11 |
| SPE HOLDING CORP., et al. | Jointly Administered |
| Debtor. | **OBJECTION BY MHF TO DEBTORS' MOTION TO APPROVE (1) SALE OF ASSETS FREE AND CLEAR OF LIENS AND INTERESTS; (2) ASSUMPTION AND ASSIGNMENT OF DESIGNATED EXECUTORY CONTRACTS; AND (3) REJECTION OF DESIGNATED EXECUTORY CONTRACTS** |
| ☒ Affects All Debtors<br>☐ Affects Only | |
| | **Hearing:**<br>Date:  August 11, 2006<br>Time:  8:30 a.m.<br>Place: Courtroom "302"<br>         21041 Burbank Blvd.<br>         Woodland Hills, CA |

88462.2

**TO THE HONORABLE JUDGE MAUREEN A. TIGHE, UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE, THE DEBTORS-IN-POSSESSION AND ALL OTHER PARTIES IN INTEREST AND THEIR ATTORNEYS OF RECORD:**

MHF Erste Academy Film GmbH & Co. Produktions KG ("MHF Erste") and MHF Zweite Academy Film GmbH & Co., KG ("MHF Zweite", and together with MHF Erste, "MHF") shall, and do hereby, object to the Debtors' Motion to Approve: (1) Sale of Assets Free and Clear of Liens and Interests; (2) Assumption and Assignment of Designated Executory Contracts; and (3) Rejection of Designated Executory Contracts (the "Motion").[1]

## I.

## SUMMARY OF THE OBJECTION

There are two components to MHF's objection. First, MHF Erste objects to the SPE Debtors' motion to approve the Sale.[2] Without knowing the value of their assets, the Bergstein-controlled SPE Debtors agreed to encumber their assets with an "insider" claim in favor of a Bergstein company, inappropriately resolved against the SPE Debtors, in order to facilitate a sale of their assets for no cash to another Bergstein company. This "insider" claim has not been vetted by a disinterested fiduciary and there is no committee appointed in the SPE Debtors' cases. Moreover, recent deposition testimony of Hans Turner reveals that the Sale and Settlement are not "arms-length" transactions and that there is no credible evidence (whatsoever) that the Sale is fair and reasonable to the creditors of the SPE Debtors. Indeed, the only reasonable inference to be drawn from Turner's deposition is that the Sale and Settlement smack of self-dealing. And, Court-approval of this *sub rosa* liquidating plan will irrevocably disenfranchise creditors from ever having the benefit of a disinterested fiduciary investigate, let alone litigate, the value of the SPE Debtors' assets, the allowance of a $9,250,000 purported secured claim in favor of R2D2, or any viable pre or post-

---

[1] Terms not otherwise defined in this Objection shall have the meaning ascribed to them in the Motion.

[2] MHF Erste is a creditor of Sever Production ("Sever"), one of the SPE Debtors. MHF Erste is the "Producer" under that certain Motion Picture Distribution Agreement, dated October 14, 2001, with Sever, as "Distributor", and Franchise Pictures LLC ("Franchise Pictures"), as "Distribution Guarantor", relating to the distribution of the then-entitled full length motion picture "Ecks v. Sever" (the "Distribution Agreement"). Sever has been and continues to be in default of its obligation to remit to MHF Erste 50% of the Adjusted Domestic Gross Receipts which means 10% of the Domestic Gross Receipts (as defined in the Distribution Agreement) after only deducting a distribution fee to be retained by Warner Bros. in an amount equal to 15% of Domestic Gross Receipts. Sever is one of the SPE Debtors.

88462.2                                 1

1 petition claims against "insiders" including, possibly, Hans Turner, the only individual that can be

2 held accountable for the SPE Debtors' conduct.

3 <u>Next</u>, MHF objects to any sale of the distribution rights for the pictures entitled "The

4 In-Laws" and the "The Whole Ten Yards", to the extent such distribution rights are not owned by the

5 Sellers. Schedule 3.1 to the APA contemplates the sale of these distribution rights, though, based on

6 information available to it, MHF believes these distribution rights are owned by entities <u>other than</u>

7 the Sellers.[3] While the Sellers claim (at times) they are only selling what they own, the APA is not

8 clear on this point and statements by the Franchise Debtors suggest that Schedule 3.1 sets forth the

9 rights to be sold.[4] Adding to the confusion, the Sellers acknowledge in the Motion that they do not

10 own the distribution rights for "The Whole Ten Yards".[5] Accordingly, insofar as Schedule 3.1 sets

11 forth the rights to be sold (without regard to whether the Sellers own such rights), MHF respectfully

12 requests that any order approving the Sale expressly provide that the Sellers are only selling

13 distribution rights they own.

14 / / /

15 / / /

---

[3] MHF Erste is the owner of the underlying copyright for "The In-Laws" and "Producer" under that certain Motion Picture Distribution Agreement, dated November 15, 2001, with T.D.P. Distribution, Inc. ("TDP"), as "Distributor", and Franchise Pictures, as "Distribution Guarantor", whereby MHF Erste granted certain distribution rights to TDP for the then-entitled full length motion picture "Till Death Do Us Part". MHF Zweite is the owner of the underlying copyright for "The Whole Ten Yards" and "Producer" under that certain Motion Picture Distribution Agreement, dated November 18, 2002, with Nine Yards Two Distribution, Inc. ("NYTD"), as "Distributor", Franchise Pictures, as "Distribution Guarantor", whereby MHF Zweite granted certain distribution rights to NYTD for the full length motion picture "The Whole Ten Yards". Neither TDP nor NYTD are Sellers and MHF is not aware of any of the distribution rights granted to TDP or NYTD under the aforementioned distribution agreements having been assigned to any of the Sellers. Due to certain confidentiality provisions in the distribution agreements, however, MHF has not filed the agreements but will provide them to the Court at the hearing, if necessary.

[4] At the hearing on the motion to approve Settlement Agreement, counsel for the Franchise Debtors indicated that the "exhibits go into great detail about the rights that are being transferred ... [and] will certainly be relevant to a sale.... The scope of the rights the film is covered by, the nature of the rights of the various Debtors, whether the sales agency rights only, copyright interest, so on and so forth, is all to be disclosed on the exhibits to the Sale Motion." See, Transcript from hearing on Motion to approve the Settlement Agreement (the "Settlement Hearing Transcript"), pg. 15, lines 19 – 20 and pg. 16, lines 1 – 5. Certain excerpts from the Settlement Hearing Transcript are attached as Exhibit "1" to the Declaration of Jonathan S. Shenson in Support of the Objection, filed concurrently herewith (the "Shenson Declaration").

[5] See, Motion, pg. 26, footnote 11 (the "only rights relating to the motion picture entitled 'The Whole Ten Yards' that are included in the Purchased Assets are the sales agency rights").

88462.2

2

## II.

## BACKGROUND

On December 23, 2005, FPLLC, LLC, an affiliate of Bergstein (the "Bergstein Purchaser"), R2D2 and the Franchise Debtors reached agreement on the material terms of the Sale and Settlement Agreement (including the purchase price, the allocation of the purchase price and the various adjustments) and entered into a letter of intent ("LOI").

On January 10, 2006, the SPE Debtors -- entities controlled by David Bergstein[6] -- agreed to the terms of the LOI, even though they had not completed an analysis concerning the value of their assets.[7] During this time, Susan Tregub, counsel for Bergstein and the Bergstein Purchaser, served as general insolvency counsel for the Bergstein-controlled SPE Debtors, which failed for more than a month to disclose the existence of this "insider" transaction to the Court.[8]

On May 30, 2006, during the hearing on the Sellers' motion to approve the Settlement Agreement (which only becomes effective upon Court-approval of the Sale), this Court expressed concern that "there was no counsel at the table" for the SPE Debtors when the Settlement and Sale were negotiated and cautioned that it would not approve the Sale if it appeared that claims have been inappropriately resolved against the SPE Debtors. Explicitly reserving the right to "call the sale off" at the Sale hearing if such turned out to be the case, the Court conditionally approved the Settlement Agreement.[9]

On June 9, 2006, the Sellers filed the Motion to approve the Sale. Pursuant to the Motion, if this "insider" transaction is approved, the Bergstein Purchaser will be entitled to purchase the Sellers' assets for $27,250,000, largely with "funny money". For example, the Bergstein Purchaser will be permitted to apply a $12,500,000 "credit" against the entire amount of the Purchase Price allocable to the Bergstein-controlled SPE Debtors which has never been vetted by a

---

[6] See, Section F. of Joint Status Report, filed April 28, 2006 in Adv. Pro. No. SV 05-01522MT (Docket #18). David Bergstein controls R2D2, the beneficial owner of Mobius and serves as chief executive officer for Mobius. Mobius, through Hans Turner, manages the SPE Debtors' affairs.

[7] See, Case Status Report, filed February 13, 2006 (Docket # 16), page 4, lines 11 – 17 and page 5 lines 26 – 28.

[8] See, generally, Case Status Report, filed February 13, 2006 (Docket # 16).

[9] See, Settlement Hearing Transcript, pg. 147.

88462.2

3

1  disinterested fiduciary, including a $9,250,000 "credit" on account of a purported claim held by
2  R2D2, another Bergstein-controlled entity. And for no consideration whatsoever, the Bergstein-
3  controlled SPE Debtors will generally release David Bergstein and his companies and their
4  respective officers, directors, shareholders, members, managers, employees and agents of any and all
5  claims, none of which have been investigated by a disinterested fiduciary. Arguably, these releases
6  would extend to Hans Turner (as an employee of Mobius), likely the only individual that can be held
7  accountable for the actions taken by the Bergstein-controlled SPE Debtors.

## III.

## THERE IS NO CREDIBLE EVIDENCE TO SUPPORT THE SALE

On June 26, 2006, Warner Brothers ("WB") deposed Hans Turner.[10] The deposition transcript reveals that the Sale and Settlement is <u>not</u> the product of "arms-length" negotiations, which directly contradicts Hans Turner's prior declaration testimony filed in support of the Motion (the "Turner Declaration").[11] In fact, the SPE Debtors did <u>not</u> participate in any of the negotiations relating to the Sale or Settlement. During his deposition, Hans Turner, the only person with authority to negotiate on behalf of the SPE Debtors, disclaimed having had any substantive role in the negotiations concerning the Purchase Price, the allocations of the Purchase Price, or the adjustments to the Purchase Price (aka the "credits").[12]

Through his deposition testimony, Hans Turner contradicted material statements in the Turner Declaration and, for this reason, the Court should give no weight to the statements in the Turner Declaration that the Sale is "fair and reasonable" to the creditors of the SPE Debtors.[13] In any event, as demonstrated below, these statements cannot withstand minimal scrutiny.

Hans Turner's opinion that the Purchase Price allocation is "fair and reasonable" is not credible. He has <u>no</u> understanding of the relative value of the SPE Debtors' interest in the film

---

[10] A copy of certain excerpts from a certified copy of the transcript of the June 26, 2006 Deposition of Hans Turner (the "Turner Deposition Transcript") is attached as Exhibit "2" to the Shenson Declaration.

[11] See, Turner Declaration, pg. 7, paragraph 12.

[12] See, Turner Deposition Transcript, pgs. 52 - 58, 116 - 120, and 139 - 142.

[13] See, Turner Declaration, pg. 6, lines 10 - 11.

88462.2                                           4

1  library, on the one-hand, and the Franchise Debtors' interest in the film library, on the other hand.

2  Based on a "rough estimate," he assigned an $8,000,000 value to the SPE Debtors' interest in the

3  film library, however, he admitted to not having an understanding of the value of the Franchise

4  Debtors' library.[14] At best, he was prepared to say that the Franchise Debtors' film library is worth

5  more, but expressly disclaimed any understanding as to how much more.[15] In any event, his opinion

6  is fatally flawed because it fails to take into account the value of <u>all</u> of the Purchased Assets[16]

7  including (i) the rights available for transfer by Sellers from any Rejected Contracts, if any, (which

8  cannot be determined until the time has lapsed for counter-parties to make 365(n) elections), (ii)

9  certain claims against Comerica, Warner Brothers and certain insiders, and (iii) certain tax refunds

10  and rebates.[17]

11  Hans Turner's opinion that the allocation of the Allowed R2D2 Claim (the "R2D2

12  Claim Allocation") is "fair and reasonable" is similarly suspect. The SPE Debtors bear a

13  disproportionate burden of the Allowed R2D2 Claim, 92.5% or 100% if Bergstein does not buy the

14  assets, given that the SPE Debtors "are confident ... they [too] would prevail in any litigation"

15  concerning the allowability of the Bergstein claims.[18] Turner's justification for the R2D2 Claim

16  Allocation -- the global resolution of all of Bergstein's pre and post-petition claims against the

17  Sellers -- is based on the following two factors, which inappropriately shit a disproportionate share

18  of the Allowed R2D2 claim on the SPE Debtors' estates: (i) the extent to which the liens and

19  security interests asserted by R2D2 were perfected with regard to each picture and (ii) the extent to

20  which the amount owed under the Mobius Termination Claim is attributable to the Franchise

21  Debtors' estates over the SPE Debtors' estates.[19]

22  / / /

23

---

[14] See, Turner Deposition Transcript, pg. 112, lines 9 - 14.

[15] See, Turner Deposition Transcript, pg. 142, lines 7 - 14.

[16] See, Turner Declaration, pgs. 4 - 6.

[17] See, APA, Section 3.2.

[18] See, Motion to approve the Settlement Agreement, pg. 22, lines 4 - 5.

[19] See, Turner Declaration, pg 6, lines 15 - 18.

88462.2                                    5

1   With regard to the first factor, by limiting his inquiry on the "allowability" of the
2   R2D2 Claim to perfection, Hans Turner seemingly presumes that the underlying claim is not
3   avoidable or otherwise subject to attack. A cursory review of the R2D2 Claim, however, reveals that
4   it arose in connection with a pre-petition lending arrangement in which R2D2 advanced funds
5   earmarked for the payment of costs incurred by the Franchise Debtors in defending the Intertainment
6   litigation.[20] If nothing else, the SPE Debtors -- who were not defendants in the litigation -- may have
7   a basis to avoid the R2D2 Claim as a fraudulent transfer. This illustrates why the SPE Debtors
8   would have benefited greatly from being represented by disinterested counsel. With regard to the
9   second factor, the fact that Hans Turner believes the Mobius Termination Claim[21] has any bearing on
10  the allocation issue is shocking given that the claim is to be paid only from the proceeds of any sale
11  of the Franchise Debtors' assets.[22] Finally, and again to the detriment of the SPE Debtors' creditors,
12  Hans Turner's opinion fails to take into account that the Franchise Debtors are solely liable for
13  $750,000 advanced under the DIP Loan.

14  In sum, the evidence reveals that through a manipulation of claims, the SPE Debtors'
15  assets are being used to finance the Bergstein Purchaser's acquisition of the film library and fund a
16  settlement with the Franchise Debtors.

17  / / /
18  / / /
19  / / /
20  / / /
21  / / /
22  / / /

---

[20] See, R2D2 Proof of Claim including, without limitation, the following documentation filed in support thereof (i) the Disbursement provision in that certain Convertible Promissory Note dated as of December 9, 2002 between R2D2, LLC, on the one hand, and Franchise Pictures, LLC, its subsidiaries and the special purpose entities, on the other hand and (ii) Paragraph 6 of the Letter of Intent, dated December 9, 2002, between R2D2, LLC, on the one hand, and Franchise Pictures, LLC, its subsidiaries and the special purpose entities, on the other hand.

[21] Insofar as Hans Turner meant the Mobius Claim (and not the Mobius Termination Claim), then his opinion fails to take into account that the Franchise Debtors are solely liable for more than $4,000,000 on account of the Mobius Termination Claim

[22] See, Motion to approve Settlement Agreement, pg. 25, lines 6 - 8.

88462.2                                     6

IV.

## LEGAL DISCUSSION

A. <u>The "Insider" Sale is inherently Unfair and Should Not be Approved.</u>

Interested transactions like this Sale are subject to the highest level of scrutiny and cannot be evaluated under the liberal "business judgment" standard:

> [Insider] dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged, the burden is on the director or stockholder not only to prove the good faith of the transaction, but also to show its inherent fairness from the viewpoint of the corporation and those interested therein.

<u>Pepper v. Litton</u>, 308 U.S. 295, 60 S. Ct. 238, 245 (1939); accord <u>In re W.A. Mallory</u>, 214 B.R. 834, 837 (Bankr. E.D. Va. 1997) (insider transactions "must face a higher scrutiny").

This is a classic "insider" transaction. David Bergstein controls the buyer, the SPE seller and the only two entities that the SPE seller believes may have secured claims against it (other than the guilds). This transaction is anything but fair. It was not the product of "arms-length" negotiations. Indeed, the SPE Debtors did not even participate in the negotiations. Without even knowing the value of their assets, the Bergstein-controlled SPE Debtors agreed to encumber their assets with a secured claim in favor of a Bergstein company, that will be deemed allowed though it has never been investigated by a disinterested fiduciary, to facilitate a sale of their assets to another Bergstein entity. There is no committee appointed in the SPE Debtors' cases and, as a result, no check (whatsoever) on any possible self-dealing. In sum, the proposed Sale is not in the best interest of all creditors, and certainly not any non-insider creditors, who stand to gain nothing. It does not satisfy the heightened standard of good faith and inherent fairness required when insiders seek to benefit from a proposed transaction and, on that basis, the Sale should be denied.

B. <u>The SPE Debtors have Failed to Establish that the Sale is in the Best Interests of the SPE Debtors' Estates.</u>

Assuming the SPE Debtors are not required to demonstrate the inherent fairness of this "insider" Sale (which they are); the Court should still deny the Motion because the SPE Debtors have failed to establish that the Sale is in the best interests of the estate. "In approving any sale

88462.2

7

outside the ordinary course of business, the court must not only articulate a sufficient business reason for the sale, it must further find that it is in the best interest of the estate, i.e., that it has been given adequate marketing, that it has been negotiated and proposed in good faith, that the purchaser is proceeding in good faith, and that it is an 'arms-length' transaction." In re Wilde Horse Enterprises, Inc., 136 B.R. 830, 841 – 842 (Bankr. C.D. 1991). "'Good faith" encompasses fair value, and further speaks to the integrity of the transaction. Id. at 842. It is the SPE Debtors' duty to produce evidence probative of these issues. Id. at 841.

1.   There is No Sufficient Business Reason for the Sale.

The SPE Debtors have failed to articulate a sound purpose for proceeding with the Sale. The SPE Debtors assert that a quick sale of their assets is imperative in that the Sellers do not have enough money to administer their estates and "the cash proceeds of the Sale will allow them to administer their estates, pursue other sources of recovery ... and formulate and confirm liquidating plans of reorganization."[23] Yet, the they do not receive any cash from the Sale. Relying on this misleading statement and the assertion that the Sale will result in the elimination of "at least $40 million of asserted secured and unsecured claims," the SPE Debtors assert (without any evidentiary support) that the Sale is in the best interest of their estates. However, the claims being eliminated are "insider" claims which have not been vetted by a disinterested fiduciary, and the Bergstein-controlled SPE Debtors are unjustifiably saddled with a disproportionate share of the cost associated with settling them.

2.   The Purchase Price Allocation as Reduced by the R2D2 Claim Allocation is Not Fair and Reasonable.

Given that the Bergstein-controlled SPE Debtors are selling their assets to a Bergstein affiliate, this Court needs to make an independent determination that the Purchase Price allocation and "credits" represent fair value. See, Mission Iowa Wind Co. and Storm Lake Power Partners I, LLC v Enron Corp., 291 B.R. 39 (Bankr. S.D.N.Y. 2003) (possibility that allocation may have been infected by self-dealing ... requires court determination that allocation is a fair reflection of assets). However, there is no credible evidence whatsoever for the Court to do so. In fact, the evidence

---

[23] See, Motion, pg. 30, lines 25 - 27 and pg. 31, lines 6 - 8.

suggests the contrary, that through a manipulation of claims, the SPE Debtors' assets are being used to finance the Bergstein Purchaser's acquisition of the film library and fund a settlement with the Franchise Debtors.

        3.        The Negotiations Surrounding the Sale were Not "Arms-Length" or Conducted in Good Faith.

The Turner Deposition reveals unequivocally that the Sale was not the product of "arms-length" negotiations, and any self-serving statement by the SPE Debtors that the negotiations were conducted in good faith is particularly inadequate under the circumstances. See, In re Apex Oil Co., 92 B.R. 847, 869 (Bankr. E.D. Mo. 1988) (no lack of good faith where the purchase and sale agreement was the product of "vigorous, arms-length, good faith negotiations ... "which took place in a 'fish bowl' under the watchful eyes of the Examiner and Committee, with the involvement of all major interested parties....") (emphasis added). Moreover, there is evidence suggesting that the Bergstein-controlled SPE Debtors did not proceed with the Sale in "good faith"-- that indeed, there was collusion between them and the Bergstein Purchaser. The Bergstein-controlled SPE Debtors agreed to the terms of the LOI (which assigned a value to their asset and the various allocations) even though they had not completed an analysis concerning the value of their assets, and failed (at a time when they were represented by Bergstein's lawyer) to disclose the existence of this "insider" transaction to the Court.

C.    The Bergstein Purchaser is Not Entitled to a "Good Faith" Finding or the Protections of 363(m).

For the reasons discussed in the preceding section of this Objection, the Bergstein Purchaser is not entitled to a "good faith" finding or the protections of section 363(m). In any event, there is no evidence to support a finding of good faith and "[i]t would be [an] error to presume good faith from any lack of evidence in the record to the contrary." In re M Capital Corp., 290 B.R. 743, 748 (9th Cir. BAP 2003).

D.    This is a *Sub Rosa* Plan.

It is well established that a Court should not allow a debtor to circumvent the requirements of Chapter 11 by authorizing actions by a debtor-in-possession which would dictate the terms of a plan of reorganization. See, In re Braniff Airways, Inc., 700 F.2d 935 (5th Cir. 1983)

88462.2

9

(disallowing compromise of controversy where approval constitutes a *sub rosa* plan, short-circuiting the requirements for confirming plan). A debtor's estate and its assets cannot be restructured or reallocated without providing all creditors with the requisite protections normally afforded to them through the disclosure statement and plan process. Id. at 940. Here, the proposed Sale violates the prohibition against effectuating a chapter 11 plan of reorganization *sub rosa*, by doing virtually everything needed to establish irrevocably the terms of a liquidating chapter 11 plan for the SPE Debtors -- everything, that is, except meet the disclosure, solicitation and confirmation standards that the Bankruptcy Code mandates for every chapter 11 plan of reorganization.

For the foregoing reasons, MHF respectfully requests that the Motion be DENIED.

DATED: July 18, 2006

JONATHAN S. SHENSON, a Member of
KLEE, TUCHIN, BOGDANOFF & STERN LLP
Counsel for MHF Zweite Academy Film GmbH & Co., KG and MHF Erste Academy Film GmbH & Co. Producktions, KG

88462.2

10

## PROOF OF SERVICE

I declare that I am over eighteen years of age and that I am not a party to this action. My business address is Fox Plaza, 2121 Avenue of the Stars, Thirty-Third Floor, Los Angeles, California 90067-5061.

On July 18, 2006, I served a true and correct copy of the following document(s) on the parties indicated on the attached list by using the method indicated below:

**OBJECTION BY MHF TO DEBTORS' MOTION TO APPROVE (1) SALE OF ASSETS FREE AND CLEAR OF LIENS AND INTERESTS; (2) ASSUMPTION AND ASSIGNMENT OF DESIGNATED EXECUTORY CONTRACTS; AND (3) REJECTION OF DESIGNATED EXECUTORY CONTRACTS**

☒   **By First-Class Mail**: I am readily familiar with the business practice of collection and processing of correspondence for mailing with the United States Postal Service. I know that the document(s) listed above was deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business. I know that the above-referenced document(s) were placed into the envelopes, the envelopes were sealed and addressed as set forth on the attached list and, with postage thereon fully prepaid, the envelopes were placed for collection and mailing on this date, following ordinary business practices, in the United States mail at Los Angeles, California.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made and that this declaration was executed at Los Angeles, California on July 18, 2006.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Joanne C. Nadeau

Document2

Franchise Pictures LLC et al.
USBC Case No. SV 05-13855-MT
Request for Special Notice

Debtors
Franchise Pictures LLC et al.
c/o John Brincko
12100 Wilshire Blvd., Suite 1030
Los Angeles, CA 90025

Marjorie L. Erickson, Esq.
Office of the U.S. Trustee
21051 Warner Center Lane, #115
Woodland Hills, CA 91367

Attorneys for Franchise Pictures LLC, et al.
David L. Neale, Esq./Juliet Y. Oh, Esq.
Levene, Neale, Bender Rankin & Brill LLP
10250 Constellation Blvd., Suite 1700
Los Angeles, CA 90067

Counsel for SPE Holding
Skip Koenig, Esq.
Creim Macias & Koenig
633 W. 5th Street, 51st Floor
Los Angeles, CA 90071-3101

Co-Counsel for FilmMusiciansFund
Mark Sharf, Esq.
Sharf Law Firm
15821 Ventura Blvd., Suite 275
Encino, CA 91436

Attorneys for Warner Bros.
L. Peitzman/H.Weg/D.Shamano
Peitzman, Weg & Kempinsky
10100 Santa Monica Blvd., Suite 1450
Los Angeles, CA 90067

Counsel for Film Finances, Inc.
Gary E. Gans, Esq., Ezra J. Reinstein, Esq.
Richards, Watson & Gershon
355 S. Grand Avenue, 40th Floor
Los Angeles, CA 90071-3101

Attorneys for Sony Pictures Entertainment
Sara L. Chenetz, Jennifer Nassiri
Piper Rudnick LLP
1999 Avenue of the Stars, 4th Floor
Los Angeles, CA 90067-6022

Counsel for Comerica Bank
Randye B. Soref and Alex Rhim
Buchalter Nemer, A Professional Corp.
1000 Wilshire Blvd., Suite 15th Floor
Los Angeles, CA 90017

Counsel for Intertainment AG
Gibson, Dunn & Crutcher LLP
B. Silverman/S. Newman/S. Edelman
333 S. Grand Avenue, 49th Floor
Los Angeles, CA 90071-3197

Counsel for Castle Rock Pictures
Wayne M. Smith/Warner Bros.
4000 Warner Blvd., Bldg. 156, Rm 5158
Burbank, CA 91522

Counsel for Film Finances, Inc.
Lawrence A. Diamant, Esq.
Robinson, Diamant & Wolkowitz
1888 Century Park East, Suite 1500
Los Angeles, CA 90067

David Bergstein
Mobius International
5890 West Jefferson Boulevard
Los Angeles, CA 90016

Counsel to Committee
Richard Havel, Sally Neely, Esq.
Sidley Austin LLP
555 W. 5th Street, Suite 4000
Los Angeles, CA 90013

Screen Actors Guild - Acting Committee
Chair
c/o Vicki G. Shapiro, Esq.
Assistant General Counsel
5757 Wilshire Boulevard
Los Angeles, CA 90036

Counsel for Morgan Creek
Bennett L. Spiegel/Lori Sinanyan
Kirkland & Ellis
777 S. Figueroa Street
Los Angeles, CA 90017

Morgan Creek Productions
John Graham, Esq.
Jeffer, Mangels, Butler & Marmaro
1900 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Counsel for Andew Vanja
Rutter Hobbs & Davidoff, Inc.
Brian Davidoff
1901 Avenue of the Stars, Suite 1700
Los Angeles, CA 90067

Gene Hackman
c/o Fred Spector
Creative Artists Agency
9830 Wilshire Boulevard
Beverly Hills, CA 90212

Counsel for XL Reinsurance America
G. Valeriano, J. Hernandez, M. Krone
Anderson, McPharlin & Conners LLP
444 S. Flower Street, 31st Floor
Los Angeles, CA 90071-2901

Matt Salinger
Plan B Productions
c/o New Moon Productions
1700 Broadway, 17th Floor
New York, NY 10019

The Film Musicians Secondary Market
Christopher Cella
Cella Lange & Cella
23120 Alicia Parkway, Suite 200
Mission Viejo, CA 92692

Counsel for Epsilon Motion Picture GmbH
Greenberg Traurig, LLP
P. Glassman, A. Starr, M. Bartmettler
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404

The Film Musicians Secondary Mkt Fund
Brian Cella
Cella, Lange & Cella
1600 South Main Plaza, Suite 180
Walnut Creek, CA 94596

Attys for La Financiere Des Enterprises
Dann M. Perlman
Perlman & Associates
280 S. Beverly Drive, Suite 504
Beverly Hills, CA 90212

Counsel for Intertainment AG
Gibson, Dunn & Crutcher LLP
Samuel Newman
333 South Grand Avenue, 47th Floor
Los Angeles, CA 90071-3197

Phoenix Pictures, Inc.
c/o Christopher Trunkey
10202 W. Washington Blvd., Ste. 106
Culver City, CA 90232

Counsel for MHF Zweite Academy, et al.
Ernst-August Schnieder Geschaftsfuher
Academy Film GmbLuise-Ullrich-Strasse 8
D-82031 Grunwald, Germany

Gary Klausner
Stutman, Treister & Glatt
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067

Counsel for Elie Samaha
Brian A. Sun, Esq./Katherine E. Hertel, Esq.
Jones Day
555 South Flower Street, 50th Floor
Los Angeles, CA 90071

Counsel for Elie Samaha
Richard A. Chesley, Esq.
Jones Day
77 West Wacker
Chicago, IL 60601-1692

Attys for SAG, WGA, DGA & Pension Plans
Joseph A Kohanski, Kathleen Erskine
Geffner & Bush
3500 West Olive Avenue, Suite 1100
Burbank, CA 91505

Financial Advisor for Debtors
Philip Fier
Focus Advisory Services
874 Fiske Street
Pacific Palisades, CA 90272

Golden Productions
4834 Gamling Ln.
Orlando, FL 32821

RSN - Home Box Office, Inc.
Stephen Sapienza, Esq. VP/Sr Counsel
Home Box Office, Inc.
1100 Avenue of the Americas
New York, NY 10036

RSN (Apollo Media)
Marina Fineman, Esq.
Stutman, Treister & Glatt PC
1900 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067-3208

Martin S. Zohn, Esq.
Proskauer Rose LLP
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206

Counsel for Airmovies, Inc.
Jeffrey F. Gersh/Rochelle A. Herzog
Zimmerman, Rosenfeld, Gersh, Leeds
9107 Wilshire Blvd., Ste. 300
Beverly Hills, CA 90210-5528

Lance N. Jurich, Esq.
Loeb & Loeb
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067-4164

Susan H. Tregub, Esq.
17554 Weddington Street
Encino, CA 91316-2565

Poser Investments, Inc.
Attn: Richard Hudson Share, Esq.
150 N. Santa Anita Avenue, Suite 530
Arcadia, CA 91006

RSN - Attnys for New City Releasing
Eric P. Israel, Esq.
Danning, Gill, Diamond & Kollitz
2029 Century Park East, 3rd Floor
Los Angeles, CA 90067

Counsel for Wolf Films, etc.
Michael D. Holz, Esq.
Lavely & Singer
2049 Century Park East, Suite 2400
Los Angeles, CA 90067-2906

Counsel for Filmline Int'l
Corrine Rebhun
Kaye Scholer LLP
1999 Avenue of the Stars, #1700
Los Angeles, CA 90067

Counsel for Terence L. Young
Carlos R. Perez, Esq.
Reich, Adell, Crost & Cvitan
3550 Wilshire Blvd., Suite 2000
Los Angeles, CA 90010

Counsel for CB Productions, et al
Michael A. Brewer, Esq.
Hornberger & Brewer
444 South Flower Street, Suite 3010
Los Angeles, CA 90071-1255

Proposed Motion Picture Accounting
Sills & Adelmann
Attn: Steven D. Sills
1801 Century Park East, Suite 1450
Los Angeles, CA 90067

Request for Special Notice
David Gould, Esq.
McDermott, Will & Emery
2049 Century Park East, 34th Floor
Los Angeles, CA 90067-3208

SPE Holding Corp., et al.
USBC Case No. SV 05-50077 MT
Special Notice List

Marjorie Erickson
Office of the U.S. Trustee
21051 Warner Center Lane, Ste. 115
Woodland Hills, CA 91367

Counsel for Debtor
Stuart I. Koenig, Esq.
Sandford L. Frey, Esq.
Creim, Macias, Koenig & Frey LLP
633 W. Fifth Street, 51st Floor
Los Angeles, CA 90071

Richard Havel, Esq.
Sidley Austin Brown & Wood LLP
555 West 5th Street, Ste. 4000
Los Angeles, CA 90013

David L. Neale, Esq.
Juliet Y. Oh, Esq.
Levene, Neale, Bender, Rankin & Brill
10250 Constellation Blvd., Ste. 1700
Los Angeles, CA 90067

Franchise Pictures LLC et al.
c/o John Brincko
12100 Wilshire Blvd., Suite 1030
Los Angeles, CA 90067

L. Peitzman/H. Weg/D. Shemano
Peitzman, Weg & Kempinsky
10100 Santa Monica Blvd., Suite 1450
Los Angeles, CA 90067

Gary E. Gans, Esq. Ezra J. Reinstein, Esq.
Richards, Watson & Gershon
355 S. Grand Avenue, 40th Floor
Los Angeles, CA 90071-3101

Sara L. Chenetz, Esq.
Jennifer Nassiri, Esq.
Piper Rudnick LLP
1999 Avenue of the Stars, 4th Floor
Los Angeles, CA 90067-6022

Randye B. Soref and Alex Rhim
Buchalter Nemer, A Professional Corp.
1000 Wilshire Blvd., Suite 15th Floor
Los Angeles, CA 90017

Gibson, Dunn & Crutcher LLP
B. Silverman/S. Newman/S. Edelman
333 South Grand Avenue, 49th Floor
Los Angeles, CA 90071-3197

Lawrence A Diamant, Esq.
Robinson, Diamant & Wolkowitz
1888 Century Park East, Suite 1500
Los Angeles, CA 90067

David Bergstein
Mobius International
5890 West Jefferson Boulevard
Los Angeles, CA 90016

Screen Actors Guild - Acting Committee Chair
c/o Vicki G. Shapiro, Esq.
Assistant General Counsel
5757 Wilshire Boulevard
Los Angeles, CA 90036

Bennett L. Spiegel/Lori Sinanyan
Kirkland & Ellis
777 S. Figueroa Street
Los Angeles, CA 90017

Morgan Creek Productions
John Graham, Esq.
Jeffer, Mangels, Butler & Marmaro
1900 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Rutter Hobbs & Davidoff, Inc.
Brian Davidoff
1901 Avenue of the Stars, Suite 1700
Los Angeles, CA 90067

Gene Hackman
c/o Fred Spector
Creative Artists Agency
9830 Wilshire Boulevard
Beverly Hills, CA 90212

G. Valeriano, J. Hernandez, M. Krone
Anderson, McPharlin & Conners LLP
444 S. Flower Street, 31st Floor
Los Angeles, CA 90071-2901

Matt Salinger
Plan B Productions
c/o New Moon Productions
1700 Broadway, 17th Floor
New York, NY 10019

Christopher Cella
Cella Lange & Cella
23120 Alicia Parkway, Suite 200
Mission Viejo, Ca 92692

Greenberg Traurig, LLP
P. Glassman, A. Starr, M. Bartmettler
2450 Colorado Avenue, Suite 400 E
Santa Monica, CA 90404

Dana M. Perlman
Perlman & Associates
280 S. Beverly Drive, Suite 504
Beverly Hills, CA 90212

Gary Klausner, Esq.
Stutman, Treister & Glatt
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067

Brian A. Sun, Esq.
Karl A. Schmitz, Esq.
Jones Day
555 South Flower Street, 50th Floor
Los Angeles, CA 90071

Michael D. Holz, Esq.
Lavely & Singer
2049 Century Park East, Suite 2400
Los Angeles, CA 90067-2906

Jeffrey F. Gersh/Rochelle A. Herzog
Zimmerman, Rosenfeld, Gersh, Leeds
9107 Wilshire Blvd., Ste 300
Beverly Hills, CA 90210-5528

Corrine Rehhun
Kaye Scholer LLP
1999 Avenue of the Stars, #1700
Los Angeles, CA 90067

Joseph A. Kohanski, Kathleen Erskine
Geffner & Bush
3500 West Olive Avenue, Suite 1100
Burbank, CA 91505

Lance N. Jurich, Esq.
Loeb & Loeb
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067-4164

Carlos R. Perez, Esq.
Reich, Adell, Crost & Cvitan
3550 Wilshire Blvd., Suite 2000
Los Angeles, CA  90010

Michael A. Brewer, Esq.
James F. Lindsay, Esq.
Hornberger & Brewer
444 South Flower Street, Suite 3010
Los Angeles, CA  90071-1255

Poser Investments, Inc.
Attn: Richard Hudson Share, Esq.
150 N. Santa Anita Avenue, Suite 530
Arcadia, CA  91006

David Gould, Esq.
McDermott Will & Emery LLP
2049 Century Park East
34th Floor
Los Angeles, CA  90067

Eric Israel, Esq.
Danning Gill Diamond & Kollitz
2029 Century Park East
Los Angeles, CA  90067

Mark M. Sharf, Esq.
Sharf Law Firm
15821 Ventura Blvd., Ste. 275
Encino, CA  91436

Susan Tregub, Esq.
8928 Santa Monica Blvd.
West Hollywood, CA  90069