ORIGINAL

JONATHAN S. SHENSON (State Bar No. 184250)
KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 Avenue of the Stars, 33rd Floor
Los Angeles, California 90067-5061
Telephone:    (310) 407-4000
Facsimile:    (310) 407-9090

Counsel for MHF Zweite Academy Film GmbH & Co., KG
and MHF Erste Academy Film GmbH & Co. Producktions, KG

FILED

JUL 18 2006

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____ Deputy Clerk

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>FRANCHISE PICTURES, LLC., et al.<br><br>     Debtor.<br><br>☒ Affects All Debtors<br>☐ Affects Only:<br><br>-------------------------------------------------<br>In re<br><br>SPE HOLDING CORP., et al.<br><br>     Debtor.<br><br>☒ Affects All Debtors<br>☐ Affects Only: | Case No. SV 05-13855-MT<br><br>Chapter 11<br><br>Jointly Administered<br><br><br>Case No. SV 05-50077-MT<br><br>Chapter 11<br><br>Jointly Administered<br><br>**DECLARATION OF JONATHAN S. SHENSON IN SUPPORT OF OBJECTION BY MHF TO DEBTORS' MOTION TO APPROVE (1) SALE OF ASSETS FREE AND CLEAR OF LIENS AND INTERESTS; (2) ASSUMPTION AND ASSIGNMENT OF DESIGNATED EXECUTORY CONTRACTS; AND (3) REJECTION OF DESIGNATED EXECUTORY CONTRACTS**<br><br>**Hearing:**<br>Date:  August 11, 2006<br>Time:  8:30 a.m.<br>Place:  Courtroom "302"<br>       21041 Burbank Blvd.<br>       Woodland Hills, CA |

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

88465.1

1

I, Jonathan S. Shenson, declare:

2    1.    I am over 18 years of age and have personal knowledge of the facts contained in this

3    declaration. If called as a witness, I could and would competently testify to these facts.

4    2.    I am a member of the bar of this Court and a member of Klee, Tuchin, Bogdanoff &

5    Stern LLP, counsel for MHF Erste Academy Film GmbH & Co. Produktions KG ("MHF Erste") and

6    MHF Zweite Academy Film GmbH & Co., KG ("MHF Zweite", and together with MHF Erste,

7    "MHF"), and file this declaration in support of MHF's objection (the "Objection")[1] to the Debtors'

8    Motion to Approve: (1) Sale of Assets Free and Clear of Liens and Interests; (2) Assumption and

9    Assignment of Designated Executory Contracts; and (3) Rejection of Designated Executory

10    Contracts (the "Motion").

11    3.    I attach as Exhibit "1" excerpts from a true and correct certified copy of the

12    Settlement Hearing Transcript.

13    4.    I attach as Exhibit "2" excerpts from a true and correct certified copy of the Turner

14    Deposition Transcript (the "Turner Deposition Excerpt").

15    5.    On July 18, 2006, I received from Lawrence Peitzman, of Peitzman, Weg &

16    Kempinsky LLP, excerpts from what I understand to be a true and correct copy of a corrected

17    version of the Turner Deposition Transcript (the "Corrected Turner Deposition Excerpt"). Having

18    reviewed the Corrected Turner Deposition Excerpt, I believe that page 57 is the only portion of the

19    Turner Deposition Excerpt that has changed.

20    6.    I attach as Exhibit "3" page 57 of the Corrected Turner Deposition Excerpt.

21    Executed this 18th day of July, 2006 at Los Angeles, California.



Jonathan S. Shenson

22

23

24

25

26

27

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

---

28    [1] Terms not otherwise defined in this Declaration shall have the meaning ascribed to them in the Objection.

*ORIGINAL*

1    UNITED STATES BANKRUPTCY COURT

2    CENTRAL DISTRICT OF CALIFORNIA

3    --oOo--

4    In Re:                          )   Case No. SV05-13855-MT
                                     )
5    FRANCHISE PICTURES, LLC, and    )
     CB PRODUCTIONS, INC.,           )   Woodland Hills, California
6                                    )   Tuesday, May 30, 2006
                                     )   2:00 p.m.
7         Debtors.                   )
                                     )
8    _____)

9    In Re:                          )   Case No. SV05-50077-MT
                                     )
10   SPE HOLDING CORP.,              )
                                     )
11        Debtor.                    )
                                     )
12   _____)

                                     MOTION BY DEBTOR FOR AN ORDER
13                                   (1) APPROVING BIDDING
                                     PROCEDURES, AND (2) SETTING A
14                                   DATE AND TIME FOR SALE HEARING

15                                   MOTION BY DEBTOR FOR AN ORDER
                                     (1) APPROVING BIDDING
16                                   PROCEDURES AND (2) SETTING A
                                     DATE AND TIME FOR SALE HEARING
17
                                     MOTION BY DEBTOR FOR AN ORDER
18                                   APPROVING SETTLEMENT WITH
                                     R2D2, LLC AND RELATED PARTIES
19
                                     MOTION BY DEBTOR FOR ORDER
20                                   APPROVING SETTLEMENT WITH
                                     R2D2, LCC AND RELATED PARTIES
21

22

23

24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.

Echo Reporting, Inc.

EXHIBIT 1
PAGE 2

15

1 would have to provide at least as good a treatment for the

2 Guilds as is currently in there.

3        It's a package of consideration.  And if, at the

4 end of that analysis, it turns out that there is a

5 materially different better mousetrap out there, then we're

6 certainly not going to pass that up.  You know, the example

7 I've used -- and everybody smiles, but I hope I'm right --

8 is that somebody walks in on the day of the hearing with a

9 cashier's check for the payment of the purchase price in

10 full and a number greatly in excess of what we're dealing

11 with here.

12        THE COURT:  While you're on the sale motion, what

13 kind of information do you contemplate including in that

14 motion?  Because I think a lot of people have confused the

15 sale and the sale procedures.  So what is coming?  Say this

16 is approved today, in a few weeks.

17        MR. NEALE:  What I'm concerned about, people raise

18 the issue of the exhibits to the APA not being attached.

19 Those exhibits go into great detail about the rights that

20 are being transferred, which films are subject to Guild

21 coverage, the form of the Guild release that a buyer would

22 have to enter into.

23        What we were trying to do is get the process

24 rolling, because every day of delay was one day less of

25 marketing time before the ultimate sale hearing.  Our view

EXHIBIT 1
PAGE 3

16

1  of it was, those exhibits will certainly be relevant to a

2  sale.  The scope of the rights the film is covered by, the

3  nature of the rights of the various Debtors, whether the

4  sales agency only, copyright interest, so on and so forth,

5  is all to be disclosed on the exhibits to the sale motion.

6          THE COURT:  They will be filed publicly --

7          MR. NEALE:  Yes.

8          THE COURT:  -- or will they -- they will not be

9  just in the room where people who pay their 25,000 can see

10 them?

11         MR. NEALE:  No.  The description of the rights

12 will be -- is an exhibit.  I think it's Schedule 3.1 or 3.3

13 to the APA, which reflects all of the rights, the film is

14 covered by the APA, the rights to be transferred.  The

15 underlying documents which comprise those rights, whether

16 it's distribution agreements or sale agreements --

17         THE COURT:  I don't want all of them.

18         MR. NEALE:  Right.  I assumed the Court would feel

19 that way about it.

20         THE COURT:  So if someone has a dispute on a

21 specific right, they're going to know in advance you're

22 proposing to sell that, to come in and litigate whether or

23 not that can be sold or whether or not there's some issue

24 related to that --

25         MR. NEALE:  Exactly.

EXHIBIT  1
PAGE  4

147

1   can't do it within 90 days, the sale is off, that's it, I

2   wouldn't approve it.  And we'll have to look at the wording

3   of the order very carefully, and it's got to provide very

4   clearly, all bets are off if these issues are not resolved

5   by the sale.  I wouldn't be inclined to go forward today.

6          But looking at the A&C property's factors on

7   approval of a settlement, I think there is at least some

8   deference to the Debtor's business judgment.  Here, I think

9   I can defer to the Debtor -- the Franchise Debtors' judgment

10  greatly because of the extensive analysis they've provided

11  and the Creditor's Committee analysis.  The problem here is

12  we've got the SPE Debtors.

13         While I am concerned that there was no counsel at

14  the table when this deal was negotiated, I don't at this

15  point see the harm if, in fact, at the sale hearing -- in

16  fact, I see great benefit to the SPE Debtors in many ways,

17  and I don't see that the Franchise Debtors were over-

18  reaching or unfair.  But if at the sale hearing it appears

19  to be resolving claims that should not be resolved against

20  the SPE Debtors and it appears to be over-reaching, the SPE

21  Debtors will at that time be fully represented, and at that

22  time I reserve the right to completely call the sale off

23  because it wasn't negotiated fully by disinterested counsel

24  at the time.  So I think deferring to the business judgment,

25  I can do that at this point.



EXHIBIT  1
PAGE  5

165

1  dates in that order as well?

2          MR. NEALE:  I will.

3          THE COURT:  That will be good.

4          Okay.  Thank you, everybody.  I know this was a

5  long hearing, and you all put a lot of time.  The briefs

6  were excellent.  Thank you.

7          ALL:  Thank you, your Honor.

8          THE COURT:  Adjourned.

9      (Proceedings recessed.)

10

11

12          I certify that the foregoing is a correct

13  transcript from the electronic sound recording of the

14  proceedings in the above-entitled matter.

15

16  _____                ___6-13-06___
    Transcriber                            Date

17
    FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:
18
    _____
19  D. L. Francisco, President
    Echo Reporting, Inc.
20

21

22

23

24

25

Echo Reporting, Inc.


EXHIBIT ___1___
PAGE ___6___

**CERTIFIED COPY**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION


In re                         )
FRANCHISE PICTURES LLC,       )
et al.                        )
              Debtors.        )
_____)
X    Affects All Debtors      )
     Affects Only             )
                              )
_____)
In re                         )
SPE HOLDING CORP., et al.)
                              )
              Debtors.        )
                              )    No. SV 05-50077-MT
_____)    Chapter 11
X    Affects All Debtors      )    (Jointly Administered)
     Affects Only             )
_____)



DEPOSITION OF HANS W. TURNER

June 26, 2006


EXHIBIT 2
PAGE 7

224244

**BARKLEY**
Court Reporters

(310) 207.8000   Los Angeles       (916) 922.5777   Sacramento       (818) 702.0202   San Fernando Valley
(949) 955.0400   Orange County     (408) 885.0550   San Jose         (858) 455.5444   San Diego
(415) 433.5777   San Francisco     (951) 686.0606   Inland Empire    (760) 322.2240   Palm Springs

1    understanding that I could get compensated.

2        Q    Okay.

3             And what period of time were you involved in

4    negotiations concerning the Asset Purchase Agreement?

5        A    My recollection is around December/January --

6    December 2005/January 2006.

7        Q    It was during December 2005/January 2006 you

8    participated in negotiations of the Asset Purchase

9    Agreement; correct?

10       A    I would not characterize it that way.  I would

11   say I was at meetings during which the asset purchase

12   agreement was negotiated.

13       Q    How many meetings were there?

14       A    I don't know.  Several.

15       Q    More than five?

16       A    Not that I attended.  Maybe three or four.

17       Q    You participated in three or four meetings;

18   correct?

19       A    Yeah.

20       Q    When was the first meeting of those four?

21       A    If it was in the December/January time period, it

22   would have been in December.

23       Q    Do you remember specifically in December when it

24   was?

25       A    No.

EXHIBIT 2
PAGE 8

52

HANS W. TURNER                        BARKLEY

1    Q    Okay.

2         And that was the first meeting in December 2005?

3    A    I would suspect, yeah.

4    Q    Who attended that meeting?

5    A    It was at the law offices of Levene, Neale,

6    Bender and that would have been David Bergstein, David

7    Neale, John Brincko, myself and I don't know who else.

8    There may have been other people.

9    Q    How long did the meeting last?

10   A    I don't recollect.

11   Q    What were the substance of the discussions at the

12   meeting?

13   A    I have no specific recollection.

14   Q    What about in general terms?

15   A    Well, in general terms they were flushing out an

16   asset terms agreement.

17   Q    At that first meeting in December 2005 what did

18   you say during that meeting?

19   A    I don't have any specific recollection of

20   anything that I may have said in that or any other meeting

21   in December or January.

22   Q    Oka

23        Do you keep notes of meetings --

24   A    No.

25   Q    Did you keep notes of those meetings?

EXHIBIT 2
PAGE 9

HANS W. TURNER

BARKLEY

1    A    No.

2    Q    Did anyone to your knowledge keep notes of those

3    meetings?

4    A    I don't recollect if anyone did.

5    Q    Okay.

6         At that first meeting what did David Bergstein

7    say?

8    A    Well, let me just answer your question

9    indirectly.  If I don't remember what I said I will tell

10   you I certainly don't remember what David Bergstein or

11   David Neale or John Brincko said.

12   Q    So as you sit here today you don't have any

13   recollection of what anybody said at that --

14   A    No.

15   Q    --  first meeting in December 2005?

16   A    That is correct.

17        MR. KOENIG:  Just let him complete his question

18   because otherwise you are going to be talking over him and

19   the court reporter is going to have a hard time.

20        THE WITNESS:  Oh, okay.

21   Q    BY MR. MENTON:  Let's go back for a moment.

22        You indicated that you participated in three or

23   four meetings as you recall during December 2005/2006;

24   right?

25   A    Two to three.  Three or four, yeah.

EXHIBIT 2
PAGE 70

HANS W. TURNER

BARKLEY

1      Q    What was your understanding of what you did

2    during those meetings?

3      A    I sat there and I listened and then occasionally

4    I interjected a comment or two.  It is very difficult for

5    me to recollect because I have been going to meetings at

6    Levene, Neale and Bender with the same participants for

7    two years continuously and they are all running together.

8      Q    Okay.

9          Then in connection with these three or four

10   meetings that you attended, other than making a comment

11   here or there do you remember saying anything?

12     A    No, because my knowledge of bankruptcy law is

13   extremely limited and I try not to interject where it

14   doesn't give a benefit.

15     Q    Okay.

16          And is it your understanding that at those

17   meetings in December 2005/January 2006 the Asset Purchase

18   Agreement was negotiated?

19     A    Yes.

20     Q    So it sounds like, correct me if I'm wrong, that

21   it was basically David Bergstein and others that were

22   negotiating the Asset Purchase Agreement?

23     A    That's correct.

24     Q    Okay.

25          MS. TREGUB:  Can we take a short break.

EXHIBIT 2
PAGE 11

55

HANS W. TURNER

BARKLEY

1           MR. MENTON:  Sure.

2           (Recess taken.)

3      Q    BY MR. MENTON:  I didn't mean to misstate your

4   testimony before.  I had thought that there were three or

5   four meetings.  You thought there were two meetings?

6      A    Two or three, three or four, I don't really know

7   the number.  Let's say three.

8      Q    Okay.

9           As you sit here today do you remember the

10  essential terms or the principal terms of the Asset

11  Purchase Agreement?

12     A    Not from those meetings.

13     Q    No, but otherwise?

14     A    From subsequent readings of the APA but I didn't

15  comment them to memory.

16     Q    Okay.

17          But as you sit here today do you remember in

18  general what those terms are?

19     A    Yes.

20     Q    What are those terms?

21     A    Why don't you -- they are what they are in the

22  APA.

23          MR. KOENIG:  He is asking for your recollection.

24     Q    BY MR. MENTON:  I'm asking for your recollection.

25     A    I didn't commit them to memory I just remember

EXHIBIT 2
PAGE 12

HANS W. TURNER

BARKLEY

1   there was a purchase price; the purchase price was

2   allocated between the two debtors.  There was a settlement

3   agreement of some kind with the Guilds; that's my general

4   recollection.

5      Q     Do you remember who the proposed buyer is?

6      A     A company called FPLAC I think.

7      Q     Do you have any relationship with FPLAC?

8      A     I don't even know what the initials stand for,

9   no.

10     Q     Okay.

11           Do you know whether Mr. Bergstein has any

12   relationship with FPLAC?

13     A     Yes.

14     Q     What is your understanding of his relationship --

15     A     I don't know what his relationship is but I know

16   he is the buyer here.  Anything controlled by him is the

17   buyer.

18     Q     Do you remember what the purchase price is that

19   is provided for in the Asset Purchase Agreement?

20     A     I believe somewhere around 27,000,000.

21     Q     And do you remember how that is allocated as

22   between the SPE debtors and the other debtors?

23     A     14 and 12 or 26 -- I don't remember the number.

24   Why don't you refresh my recollection you have it in front

25   of you; what's the number?

EXHIBIT 2
PAGE 13

HANS W. TURNER

BARKLEY

1    Q    We're just testing your recollection right now we

2    will get to it.

3    A    Oh, okay.  Why don't we just go for the gusto

4    what's the number.

5    Q    Do you remember how that was allocated?

6         MR. KOENIG:  You just asked and he just said he

7    doesn't remember.

8         MR. MENTON:  No, I asked him the amount.  I asked

9    him how it was.

10        MR. KOENIG:  What's the difference?  In your

11   question I don't understand the difference between the two

12   questions.

13        MR. MENTON:  Sure.  One was how it was allocated

14   in terms of specific dollar amounts.  The follow-up

15   question was, okay, that was the allocation as best you

16   can recollect, but how did it come to pass that that was

17   the allocation?

18        MR. KOENIG:  Thank you.

19        MR. MENTON:  I apologize for any confusion.

20        THE WITNESS:  Now which question am I answering

21   the quantitative or qualitative?

22    Q    BY MR. MENTON:  The qualitative.

23    A    How it came to pass as the transaction between

24   the buyer and the seller.  I didn't do the allocation, I

25   don't know.

EXHIBIT 3
PAGE 14

58

HANS W. TURNER

BARKLEY

1   27,250,000 as provided for in the Asset Purchase Agreement

2   fair and reasonable?

3       A    If I thought otherwise I wouldn't have signed the

4   declaration.   The answer is yes.

5       Q    And what is the basis for your opinion?

6       A    Because I believe that the purchase price is at

7   least equal to if not greater than the value of the

8   underlying assets.

9       Q    What is your understanding of what the value of

10  the underlying asset is?

11      A    I don't have an understanding of the value of the

12  underlying asset since I did no work in valuing the

13  franchise debtor library.

14      Q    Did you value the library for the SPE debtors?

15      A    In a sense.

16      Q    What do you mean, "in a sense"?

17      A    Well, what do you mean by "value"?   The answer is

18  that one can do a formal library evaluation or one can do

19  a, as I did, a rough estimate based upon my familiarity

20  with the titles.

21      Q    Okay.

22           In connection with preparing a formal valuation,

23  what is your understanding of what is involved in doing

24  that?

25      A    Do you want me to tell you what steps are

EXHIBIT 2
PAGE 16

112

HANS W. TURNER

BARKLEY

1    look at it.

2        Q    And what was your involvement if at all of the

3    allocation of the purchase price between the Franchise

4    debtors and SPE debtors?

5        A    None.

6        Q    I believe you testified this morning that there

7    was provisions in the Asset Purchase Agreement regarding

8    credit bids; do you remember that?

9        A    Well, you asked me if I was aware of them, I

10   didn't really testify to that because I'm not all that

11   familiar with it, but, yes.

12       Q    Okay.

13            Why don't we do this, go back to Exhibit 1 page

14   52 of the asset agreement.

15       A    My signature page?

16       Q    No, it is page 42 of the agreement itself.

17            MR. KOENIG:  You mean Bates stamp 42?

18            MR. MENTON:  I'm sorry.

19            THE WITNESS:  I got it.

20       Q    BY MR. MENTON:  Do you see section 4.4 there?

21       A    Yes.

22       Q    It talks about adjustments of the purchase price?

23       A    Yes.

24       Q    Do you see that?

25       A    Yes.

EXHIBIT 3
PAGE 16

HANS W. TURNER

BARKLEY

1     Q     Okay.

2           And subparagraph A talks about adjustments to the

3     purchase price with respect to R2D2; do you see that?

4     A     Yes.

5     Q     Did you have any role in the adjustment to the

6     purchase price in relation to R2D2?

7     A     No.

8     Q     Do you work for R2D2?

9     A     I do not now work for R2D2 nor have I ever worked

10    for R2D2.

11    Q     Now section 42(b) it discusses adjustments to the

12    purchase price in relation to -- it is called "The Guild

13    Adjustment"; do you see that?

14    A     Yes, I see it.

15    Q     And that relates to the Guild obligation; do you

16    see that?

17    A     Yes.

18    Q     Did you play any role to the adjustment of the

19    purchase price as to the Guild obligations?

20          MR. KOENIG:  Do you know what he means by "play a

21    role"?

22          THE WITNESS:  That's what I'm thinking.

23          MR. KOENIG:  Ask him --

24    Q     BY MR. MENTON:  Did you have any discussions with

25    anyone concerning the adjustment to the purchase price in

EXHIBIT 3
PAGE 17

117

HANS W. TURNER

BARKLEY

1  relation to the Guild legislation?

2      A    Not to the adjustments of the purchase price per

3  se.

4      Q    What do you mean "per se"?

5      A    I had meetings with Mr. Kohanski of the Guild

6  where we discussed the Guild's claims but we never

7  discussed any settlement or we never discussed adjustment

8  to the purchase price.

9      Q    What do you remember of those discussions that

10  you had with Mr. Kohanski concerning the Guild claims?

11      A    We discussed the reports to the auditors

12  basically.  We talked through it and discussed it.

13      Q    Report of which auditors?

14      A    The Guild hired some auditors to prepare a claim

15  analysis and they were in the Mobius's offices for a

16  better part of a year I would think, and we provided them

17  assistance by giving them access to all the data and

18  answering their questions and at the end of that time they

19  came up with a claims report is the best way to put it or

20  audit report.  That was the report that Mr. Kohanski and I

21  discussed on about two occasions.

22      Q    Do you remember when those occasions were?

23      A    Fall of sometime between August and November of

24  2005.

25      Q    Do you remember the substance of the claims

EXHIBIT __2__
PAGE __12__

118

HANS W. TURNER

BARKLEY

1  reported?

2      A    I think Mr. Kohanski was interested but not

3  perhaps persuaded of my opinion of the audit report.

4      Q    What was your opinion of the audit report?

5      A    I think they did a very comprehensive job but on

6  one or two claims, specific claims, I thought that they

7  had not considered all of the available evidence.  And I'm

8  talking about one or two pictures.

9      Q    Did the claims report have any conclusions about

10  the dollar amount of claims?

11      A    Yes, definitely.

12      Q    Okay.

13          Do you remember what those were in general terms?

14      A    My recollection was it was around $13,000,000.

15      Q    Was that a secured claim?

16      A    Some of it was and some of it wasn't.  I don't

17  remember how it broke out.

18      Q    Okay.

19          Do you remember what Mr. Kohanski was -- what

20  position Mr. Kohanski was taking at the time considering

21  the art report or claims report?

22      A    Basically he took the position that the audit

23  report stood on its own and they did a comprehensive job

24  and perhaps it was two transactions that I recollected

25  from memory weren't as accurate as his auditors were.  It

EXHIBIT 2
PAGE 19

HANS W. TURNER

BARKLEY

1   pretty much sums up his position.

2   Q   Was there a resolution as a result of the

3   discussions you had?

4   A   No, it was just a discussion and I voiced an

5   opinion and he thanked me for that opinion and we moved

6   on.

7   Q   Okay.

8   Did you talk to Joe Kohanski about anything else

9   other than what you have testified to?

10   A   I had a number of conversations with Mr. Kohanski

11   over the past year but they were always in regard to the

12   conduct of the audit and things of that nature.

13   Q   Do you know who was involved in discussions

14   concerning the adjustment of the purchase price relating

15   to the Guild obligation?

16   A   Do I know?

17   Q   Yes.

18   A   It would be the buyer and Mr. Kohanski.

19   Q   Turning your attention going to Exhibit 2 of your

20   declaration, paragraph 9(b) it begins on page on --

21   A   "B" as in Bravo?

22   Q   Yes.

23   It begins on page 4 and goes on to Page 5.

24   A   Yes.

25   Q   You make reference to a Warner Brothers'

EXHIBIT  2
PAGE  20

HANS W. TURNER

BARKLEY

1    A    No, she is not.

2    Q    When did she leave?

3    A    Around January 2005.

4    Q    And was there a reason for her leaving?

5    A    Yes.

6    Q    What was the reason?

7    A    She wanted to go back to school and pursue a --

8    and get training to pursue a different line of work.  I

9    think she is involved in some legal field unfortunately.

10    Q    Now, under the Asset Purchase Agreement is it

11    your understanding that the Mobius claim has been

12    compromised and resolved?

13    A    I don't understand the word "compromise."

14    Q    What does it mean in your declaration on Page 7

15    line 17?

16    A    Okay.

17         Hold on.  Page what?

18    Q    It says the secure I'm looking at line --

19    A    In the Asset Purchase Agreement they are

20    compromised and resolved.

21    Q    And what is your understanding of what that

22    means?

23    A    That means that whatever claims Mobius would have

24    with respect to the SPE debtors the Asset Purchase

25    Agreement resolved those claims.

EXHIBIT 2
PAGE 21

139

HANS W. TURNER

BARKLEY

1      Q     Okay.

2            Were you involved in the compromise and

3      resolution of those claims in the Asset Purchase

4      Agreement?

5      A     No.  I was, you know, in a couple of meetings as

6      discussed where those things were discussed.  Beyond that

7      the answer is no.

8      Q     What is your understanding of the unsecured claim

9      of E-Group, Inc.?

10     A     I'm sorry?

11     Q     Your understanding of the unsecured claim of

12     E-Group Services, Inc.?

13     A     Yes.

14     Q     What are they?

15     A     Yes.  E-Group Services provides services to the

16     library i.e., to the assignment agreement.  It provided

17     the employees and the accounting that made the servicing

18     of the library possible.

19     Q     Do you -- as you sit here today, do you have a

20     recollection as to the amount of the unsecured claim of

21     E-Group Services, Inc.?

22     A     I can't differentiate it right now from the

23     Mobius claim, no.  I mean, I would have to refresh my

24     recollection by going back to the documents.

25     Q     And what is the basis for your belief in the last

EXHIBIT 2
PAGE 22

140

HANS W. TURNER

BARKLEY

1    line of paragraph 13 where you say, "I believe the

2    resolution of all these claim benefits any creditor who

3    may assert an unsecured claim against these estates."

4        A    Well, because it resolves all the claims of the

5    secured creditors so they are not -- the unsecured

6    creditors aren't pushed further back by having unresolved

7    secured claims, that's what I meant by it.

8        Q    Did you mean anything else by it?

9        A    No.

10       Q    And when you say "these estates," to which

11   estates are you referring?

12       A    SPE debtors.

13       Q    Looking at paragraph 14.

14       A    Yes.

15       Q    You say in the last sentence, "Under the

16   circumstances I believe it is highly unlikely that the SPE

17   debtors would be able to accomplish a sale of their assets

18   separate and apart from the debtors."

19       A    The debtors being the Franchise debtors, is that

20   how you read it?

21           MR. KOENIG:  Well, let him ask his question.

22       Q    BY MR. MENTON:  By the term "debtors" you mean

23   the Franchise debtors?

24       A    Yes.

25       Q    And what is the basis for your belief there?

EXHIBIT 2
PAGE 23

141

HANS W. TURNER

BARKLEY

1      A      First of all, I believe that it's always easier

2   and better to sell a library in one piece rather than to

3   split it up.  And secondly I believe the value of the --

4   there is more value in the assets of Franchise debtors

5   than there are SPE debtors.  So they can drag the SPE

6   debtors along.

7      Q      Do you have an understanding of the value of the

8   assets of the Franchise debtors?

9      A      No, but I just think it is more than the SPE.  I

10  told you earlier that the SPE was about eight and

11  Franchise is more than that, that's about it.

12     Q      Do you have any understanding as to how much

13  more?

14     A      Certainly not -- I don't want to get into that.

15            MR. KOENIG:  If you have an opinion otherwise.

16            THE WITNESS:  No, not as I sit here today.

17     Q      BY MR. MENTON:  Did you previously have an

18  opinion as to whether the -- what the value of the assets

19  of the Franchise debtors versus the value?

20     A      Well, I did but that was several years ago before

21  the release of "Alex and Emma," "The Whole 10 Yards" and

22  "Sound of Thunder" which seem to change the valuation

23  materially.

24     Q      Would it be fair to say that in terms of the

25  assets of the Franchise debtors and SPE debtors and the

EXHIBIT 2
PAGE 24

142

HANS W. TURNER

BARKLEY

1                    DEPOSITION OFFICER'S CERTIFICATE

2

3    STATE OF CALIFORNIA              )
                                      )         ss.
4    COUNTY OF Los Angeles            )

5

6         I, _Ingrid Villa_____, hereby certify:

7         I am a duly qualified Certified Shorthand

8    Reporter in the State of California, holder of

9    Certificate Number CSR 11960 issued by the Court

10   Reporters Board of California and which is in full force

11   and effect.  (Fed. R. Civ. P. 28(a).)

12        I am authorized to administer oaths or

13   affirmations pursuant to California Code of Civil

14   Procedure, Section 2093(b) and prior to being examined,

15   the witness was first duly sworn by me.  (Fed. R. Civ.

16   P. 28(a), 30(f)(1).)

17        I am not a relative or employee or attorney or

18   counsel of any of the parties, nor am I a relative or

19   employee of such attorney or counsel, nor am I

20   financially interested in this action.  (Fed. R. Civ. P.

21   28.)

22        I am the deposition officer that

23   stenographically recorded the testimony in the foregoing

24   deposition and the foregoing transcript is a true record

25                          / / /

EXHIBIT 2
PAGE 35

162

BARKLEY

1    of the testimony given by the witness.  (Fed. R. Civ. P.

2    30(f)(1).)

3         Before completion of the deposition, review of

4    the transcript [x] was [ ] was not requested.  If

5    requested, any changes made by the deponent (and

6    provided to the reporter) during the period allowed, are

7    appended hereto.  (Fed. R. Civ. P. 30(e).)

8    Dated:    06/28/06

9

10

11                    Ingrid Villa, CSR 11960

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT  2
PAGE  26

163

BARKLEY

1    there was a purchase price; the purchase price was

2    allocated between the two debtors.  There was a settlement

3    agreement of some kind with the Guilds; that's my general

4    recollection.

5        Q    Do you remember who the proposed buyer is?

6        A    A company called FPLAC I think.

7        Q    Do you have any relationship with FPLAC?

8        A    I don't even know what the initials stand for,

9    no.

10       Q    Okay.

11            Do you know whether Mr. Bergstein has any

12   relationship with FPLAC?

13       A    Yes.

14       Q    What is your understanding of his relationship --

15       A    I don't know what his relationship is but I know

16   he is the buyer here.  *An entity* ~~Anything~~ controlled by him is the

17   buyer.

18       Q    Do you remember what the purchase price is that

19   is provided for in the Asset Purchase Agreement?

20       A    I believe somewhere around 27,000,000.

21       Q    And do you remember how that is allocated as

22   between the SPE debtors and the other debtors?

23       A    14 and 12 or 26 -- I don't remember the number.

24   Why don't you refresh my recollection you have it in front

25   of you; what's the number?

EXHIBIT 3
PAGE 27

57

HANS W. TURNER

BARKLEY

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE (310) 407-4000

1

## PROOF OF SERVICE

2    I declare that I am over eighteen years of age and that I am not a party to this action.

3 My business address is Fox Plaza, 2121 Avenue of the Stars, Thirty-Third Floor,

4 Los Angeles, California 90067-5061.

5    On July 18, 2006, I served a true and correct copy of the following document(s) on

6 the parties indicated on the attached list by using the method indicated below:

7

8    **DECLARATION OF JONATHAN S. SHENSON IN SUPPORT OF
OBJECTION BY MHF TO DEBTORS' MOTION TO APPROVE (1) SALE OF**

9    **ASSETS FREE AND CLEAR OF LIENS AND INTERESTS; (2)
ASSUMPTION AND ASSIGNMENT OF DESIGNATED EXECUTORY**

10    **CONTRACTS; AND (3) REJECTION OF DESIGNATED EXECUTORY**

11    **CONTRACTS**

12

13    ☒    **By First-Class Mail**: I am readily familiar with the business practice of collection and processing of correspondence for mailing with the United States Postal Service. I

14    know that the document(s) listed above was deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of

15    business. I know that the above-referenced document(s) were placed into the envelopes, the envelopes were sealed and addressed as set forth on the attached list

16    and, with postage thereon fully prepaid, the envelopes were placed for collection and mailing on this date, following ordinary business practices, in the United States mail

17    at Los Angeles, California.

18

19    I declare that I am employed in the office of a member of the bar of this Court at

20 whose direction the service was made and that this declaration was executed at Los Angeles,
California on July 18, 2006.

21    I declare under penalty of perjury that the foregoing is true and correct.

22

23

24

25    _Joanne C. Nadeau_

26

27

28

Document2

Franchise Pictures LLC et al.
USBC Case No. SV 05-13855-MT
Request for Special Notice

Debtors
Franchise Pictures LLC et al.
c/o John Brincko
12100 Wilshire Blvd., Suite 1030
Los Angeles, CA  90025

Marjorie L. Erickson, Esq.
Office of the U.S. Trustee
21051 Warner Center Lane, #115
Woodland Hills, CA  91367

Attorneys for Franchise Pictures LLC, et al.
David L. Neale, Esq./Juliet Y. Oh, Esq.
Levene, Neale, Bender Rankin & Brill LLP
10250 Constellation Blvd., Suite 1700
Los Angeles, CA  90067

Counsel for SPE Holding
Skip Koenig, Esq.
Creim Macias & Koenig
633 W. 5th Street, 51st Floor
Los Angeles, CA  90071-3101

Co-Counsel for FilmMusiciansFund
Mark Sharf, Esq.
Sharf Law Firm
15821 Ventura Blvd., Suite 275
Encino, CA  91436

Attorneys for Warner Bros.
L. Peitzman/H.Weg/D.Shamano
Peitzman, Weg & Kempinsky
10100 Santa Monica Blvd., Suite 1450
Los Angeles, CA  90067

Counsel for Film Finances, Inc.
Gary E. Gans, Esq., Ezra J. Reinstein, Esq.
Richards, Watson & Gershon
355 S. Grand Avenue, 40th Floor
Los Angeles, CA  90071-3101

Attorneys for Sony Pictures Entertainment
Sara L. Chenetz, Jennifer Nassiri
Piper Rudnick LLP
1999 Avenue of the Stars, 4th Floor
Los Angeles, CA  90067-6022

Counsel for Comerica Bank
Randye B. Soref and Alex Rhim
Buchalter Nemer, A Professional Corp.
1000 Wilshire Blvd., Suite 15th Floor
Los Angeles, CA  90017

Counsel for Intertainment AG
Gibson, Dunn & Crutcher LLP
B. Silverman/S. Newman/S. Edelman
333 S. Grand Avenue, 49th Floor
Los Angeles, CA  90071-3197

Counsel for Castle Rock Pictures
Wayne M. Smith/Warner Bros.
4000 Warner Blvd., Bldg. 156, Rm 5158
Burbank, CA  91522

Counsel for Film Finances, Inc.
Lawrence A. Diamant, Esq.
Robinson, Diamant & Wolkowitz
1888 Century Park East, Suite 1500
Los Angeles, CA  90067

David Bergstein
Mobius International
5890 West Jefferson Boulevard
Los Angeles, CA  90016

Counsel to Committee
Richard Havel, Sally Neely, Esq.
Sidley Austin LLP
555 W. 5th Street, Suite 4000
Los Angeles, CA  90013

Screen Actors Guild - Acting Committee
Chair
c/o Vicki G. Shapiro, Esq.
Assistant General Counsel
5757 Wilshire Boulevard
Los Angeles, CA  90036

Counsel for Morgan Creek
Bennett L. Spiegel/Lori Sinanyan
Kirkland & Ellis
777 S. Figueroa Street
Los Angeles, CA  90017

Morgan Creek Productions
John Graham, Esq.
Jeffer, Mangels, Butler & Marmaro
1900 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067

Counsel for Andew Vanja
Rutter Hobbs & Davidoff, Inc.
Brian Davidoff
1901 Avenue of the Stars, Suite 1700
Los Angeles, CA  90067

Gene Hackman
c/o Fred Spector
Creative Artists Agency
9830 Wilshire Boulevard
Beverly Hills, CA  90212

Counsel for XL Reinsurance America
G. Valeriano, J. Hernandez, M. Krone
Anderson, McPharlin & Conners LLP
444 S. Flower Street, 31st Floor
Los Angeles, CA  90071-2901

Matt Salinger
Plan B Productions
c/o New Moon Productions
1700 Broadway, 17th Floor
New York, NY  10019

The Film Musicians Secondary Market
Christopher Cella
Cella Lange & Cella
23120 Alicia Parkway, Suite 200
Mission Viejo, CA  92692

Counsel for Epsilon Motion Picture GmbH
Greenberg Traurig, LLP
P. Glassman, A. Starr, M. Bartmettler
2450 Colorado Avenue, Suite 400E
Santa Monica, CA  90404

The Film Musicians Secondary Mkt Fund
Brian Cella
Cella, Lange & Cella
1600 South Main Plaza, Suite 180
Walnut Creek, CA  94596

Attys for La Financiere Des Enterprises
Dann M. Perlman
Perlman & Associates
280 S. Beverly Drive, Suite 504
Beverly Hills, CA  90212

Counsel for Intertainment AG
Gibson, Dunn & Crutcher LLP
Samuel Newman
333 South Grand Avenue, 47th Floor
Los Angeles, CA  90071-3197

Phoenix Pictures, Inc.
c/o Christopher Trunkey
10202 W. Washington Blvd., Ste. 106
Culver City, CA  90232

Counsel for MHF Zweite Academy, et al.
Ernst-August Schnieder Geschaftsfuher
Academy Film GmbLuise-Ullrich-Strasse 8
D-82031 Grunwald, Germany

Gary Klausner
Stutman, Treister & Glatt
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA  90067

Counsel for Elie Samaha
Brian A. Sun, Esq./Katherine E. Hertel, Esq.
Jones Day
555 South Flower Street, 50th Floor
Los Angeles, CA 90071

Counsel for Elie Samaha
Richard A. Chesley, Esq.
Jones Day
77 West Wacker
Chicago, IL 60601-1692

Attys for SAG, WGA, DGA & Pension Plans
Joseph A Kohanski, Kathleen Erskine
Geffner & Bush
3500 West Olive Avenue, Suite 1100
Burbank, CA 91505

Financial Advisor for Debtors
Philip Fier
Focus Advisory Services
874 Fiske Street
Pacific Palisades, CA 90272

Golden Productions
4834 Gamling Ln.
Orlando, FL 32821

RSN - Home Box Office, Inc.
Stephen Sapienza, Esq. VP/Sr Counsel
Home Box Office, Inc.
1100 Avenue of the Americas
New York, NY 10036

RSN (Apollo Media)
Marina Fineman, Esq.
Stutman, Treister & Glatt PC
1900 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067-3208

Martin S. Zohn, Esq.
Proskauer Rose LLP
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206

Counsel for Airmovies, Inc.
Jeffrey F. Gersh/Rochelle A. Herzog
Zimmerman, Rosenfeld, Gersh, Leeds
9107 Wilshire Blvd., Ste. 300
Beverly Hills, CA 90210-5528

Lance N. Jurich, Esq.
Loeb & Loeb
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067-4164

Susan H. Tregub, Esq.
17554 Weddington Street
Encino, CA 91316-2565

Poser Investments, Inc.
Attn: Richard Hudson Share, Esq.
150 N. Santa Anita Avenue, Suite 530
Arcadia, CA 91006

RSN - Attnys for New City Releasing
Eric P. Israel, Esq.
Danning, Gill, Diamond & Kollitz
2029 Century Park East, 3rd Floor
Los Angeles, CA 90067

Counsel for Wolf Films, etc.
Michael D. Holz, Esq.
Lavely & Singer
2049 Century Park East, Suite 2400
Los Angeles, CA 90067-2906

Counsel for Filmline Int'l
Corrine Rebhun
Kaye Scholer LLP
1999 Avenue of the Stars, #1700
Los Angeles, CA 90067

Counsel for Terence L. Young
Carlos R. Perez, Esq.
Reich, Adell, Crost & Cvitan
3550 Wilshire Blvd., Suite 2000
Los Angeles, CA 90010

Counsel for CB Productions, et al
Michael A. Brewer, Esq.
Hornberger & Brewer
444 South Flower Street, Suite 3010
Los Angeles, CA 90071-1255

Proposed Motion Picture Accounting
Sills & Adelmann
Attn: Steven D. Sills
1801 Century Park East, Suite 1450
Los Angeles, CA 90067

Request for Special Notice
David Gould, Esq.
McDermott, Will & Emery
2049 Century Park East, 34th Floor
Los Angeles, CA 90067-3208

SPE Holding Corp., et al.
USBC Case No. SV 05-50077 MT
Special Notice List

Marjorie Erickson
Office of the U.S. Trustee
21051 Warner Center Lane, Ste. 115
Woodland Hills, CA 91367

Counsel for Debtor
Stuart I. Koenig, Esq.
Sandford L. Frey, Esq.
Creim, Macias, Koenig & Frey LLP
633 W. Fifth Street, 51st Floor
Los Angeles, CA 90071

Richard Havel, Esq.
Sidley Austin Brown & Wood LLP
555 West 5th Street, Ste. 4000
Los Angeles, CA 90013

David L. Neale, Esq.
Juliet Y. Oh, Esq.
Levene, Neale, Bender, Rankin & Brill
10250 Constellation Blvd., Ste. 1700
Los Angeles, CA 90067

Franchise Pictures LLC et al.
c/o John Brincko
12100 Wilshire Blvd., Suite 1030
Los Angeles, CA 90067

L. Peitzman/H. Weg/D. Shemano
Peitzman, Weg & Kempinsky
10100 Santa Monica Blvd., Suite 1450
Los Angeles, CA 90067

Gary E. Gans, Esq. Ezra J. Reinstein, Esq.
Richards, Watson & Gershon
355 S. Grand Avenue, 40th Floor
Los Angeles, CA 90071-3101

Sara L. Chenetz, Esq.
Jennifer Nassiri, Esq.
Piper Rudnick LLP
1999 Avenue of the Stars, 4th Floor
Los Angeles, CA 90067-6022

Randye B. Soref and Alex Rhim
Buchalter Nemer, A Professional Corp.
1000 Wilshire Blvd., Suite 15th Floor
Los Angeles, CA 90017

Gibson, Dunn & Crutcher LLP
B. Silverman/S. Newman/S. Edelman
333 South Grand Avenue, 49th Floor
Los Angeles, CA 90071-3197

Lawrence A Diamant, Esq.
Robinson, Diamant & Wolkowitz
1888 Century Park East, Suite 1500
Los Angeles, CA 90067

David Bergstein
Mobius International
5890 West Jefferson Boulevard
Los Angeles, CA 90016

Screen Actors Guild - Acting Committee
Chair
c/o Vicki G. Shapiro, Esq.
Assistant General Counsel
5757 Wilshire Boulevard
Los Angeles, CA 90036

Bennett L. Spiegel/Lori Sinanyan
Kirkland & Ellis
777 S. Figueroa Street
Los Angeles, CA 90017

Morgan Creek Productions
John Graham, Esq.
Jeffer, Mangels, Butler & Marmaro
1900 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Rutter Hobbs & Davidoff, Inc.
Brian Davidoff
1901 Avenue of the Stars, Suite 1700
Los Angeles, CA 90067

Gene Hackman
c/o Fred Spector
Creative Artists Agency
9830 Wilshire Boulevard
Beverly Hills, CA 90212

G. Valeriano, J. Hernandez, M. Krone
Anderson, McPharlin & Conners LLP
444 S. Flower Street, 31st Floor
Los Angeles, CA 90071-2901

Matt Salinger
Plan B Productions
c/o New Moon Productions
1700 Broadway, 17th Floor
New York, NY 10019

Christopher Cella
Cella Lange & Cella
23120 Alicia Parkway, Suite 200
Mission Viejo, Ca 92692

Greenberg Traurig, LLP
P. Glassman, A. Starr, M. Bartmettler
2450 Colorado Avenue, Suite 400 E
Santa Monica, CA 90404

Dana M. Perlman
Perlman & Associates
280 S. Beverly Drive, Suite 504
Beverly Hills, CA 90212

Gary Klausner, Esq.
Stutman, Treister & Glatt
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067

Brian A. Sun, Esq.
Karl A. Schmitz, Esq.
Jones Day
555 South Flower Street, 50th Floor
Los Angeles, CA 90071

Michael D. Holz, Esq.
Lavely & Singer
2049 Century Park East, Suite 2400
Los Angeles, CA 90067-2906

Jeffrey F. Gersh/Rochelle A. Herzog
Zimmerman, Rosenfeld, Gersh, Leeds
9107 Wilshire Blvd., Ste 300
Beverly Hills, CA 90210-5528

Corrine Rehhun
Kaye Scholer LLP
1999 Avenue of the Stars, #1700
Los Angeles, CA 90067

Joseph A. Kohanski, Kathleen Erskine
Geffner & Bush
3500 West Olive Avenue, Suite 1100
Burbank, CA 91505

Lance N. Jurich, Esq.
Loeb & Loeb
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067-4164

Carlos R. Perez, Esq.
Reich, Adell, Crost & Cvitan
3550 Wilshire Blvd., Suite 2000
Los Angeles, CA  90010

Michael A. Brewer, Esq.
James F. Lindsay, Esq.
Hornberger & Brewer
444 South Flower Street, Suite 3010
Los Angeles, CA  90071-1255

Poser Investments, Inc.
Attn: Richard Hudson Share, Esq.
150 N. Santa Anita Avenue, Suite 530
Arcadia, CA  91006

David Gould, Esq.
McDermott Will & Emery LLP
2049 Century Park East
34th Floor
Los Angeles, CA  90067

Eric Israel, Esq.
Danning Gill Diamond & Kollitz
2029 Century Park East
Los Angeles, CA  90067

Mark M. Sharf, Esq.
Sharf Law Firm
15821 Ventura Blvd., Ste. 275
Encino, CA  91436

Susan Tregub, Esq.
8928 Santa Monica Blvd.
West Hollywood, CA  90069