Susan H. Tregub, Esq. (SBN 165362)
10100 Santa Monica Blvd., Suite 1250
Los Angeles, CA 90067
Telephone:    (818) 286-7200
Facsimile:    (818) 474-8522

Attorneys for FPLAC, LLC



FILED
JAN 11 2008

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>FRANCHISE PICTURES, LLC, *et al.*,<br><br>Debtor.<br><br>☑ **Affects All Debtors** | Case No. SV 05-13855 MT<br><br>CHAPTER 11<br>(jointly administered) |
| In re<br><br>SPE HOLDING CORP., *et al.*<br><br>Debtors.<br><br>☑ **Affects All Debtors** | Case No. SV 05-50077 MT<br><br>CHAPTER 11<br>(jointly administered)<br><br>**NOTICE OF MOTION AND MOTION BY FPLAC, LLC FOR AN ORDER CLARIFYING THE SALE ORDER AND ASSET PURCHASE AGREEMENT RELATING TO THE PURCHASE OF DEBTORS' ASSETS AND AMENDING SCHEDULE 3.2(a) THEREOF**<br><br>Date:    February 4, 2007<br>Time:    10:00am<br>Place:   Courtroom 302<br>         21041 Burbank Blvd.<br>         Woodland Hills, CA 91367 |

TO THE OFFICE UNITED STATES TRUSTEE, CREDITORS AND ALL PARTIES IN INTEREST:

PLEASE TAKE NOTICE that a hearing will be held on February 4, 2008 at 10:00 a.m., before the Honorable Maureen Tighe, United States Bankruptcy Judge for the Central District of California, in her Courtroom "302" located at 21041 Burbank Blvd., Woodland Hills, California, to consider the motion (the "Motion") by FPLAC, LLC for an order (i) clarifying the "Order Granting Motion to Approve: (1) Sale of Assets Free and Clear of Liens and Interests; (2) Assumption and Assignment of Designated Executory Contracts; and (3) Rejection of Designated Executory Contracts" entered by this Court on September 8, 2006 (the "Sale Order"), and (ii) amending "Schedule 3.2(a)" of the "Asset Purchase Agreement" attached as Exhibit A to the Sale Order. Specifically, FPLAC, LLC is seeking an order correcting an inadvertent mistake that resulted in certain film development projects acquired by FPLAC, LLC being omitted from the schedule filed with the Court.

PLEASE TAKE FURTHER NOTICE that the Motion is based upon this Notice and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Hans Turner, David Bergstein and Susan Tregub, filed concurrently herewith, Section 105 of the Bankruptcy Code, the entire record of this case and such other evidence and argument as may be presented to the Court prior to or at the hearing on the Motion.

PLEASE TAKE FURTHER NOTICE that, pursuant to Local Rule 9013-1(a)(7), responses, if any, to the Motion must be in writing and filed with the Bankruptcy Court and served upon counsel for FPLAC, LLC at the address set forth in the upper left-hand corner of the first page of this Notice of Motion not later than fourteen (14) calendar days prior to the hearing date set with respect to the Motion. Pursuant to Local Rule 9013-1(a)(11), the failure to timely file and serve an opposition to the Motion may be deemed by the Court to be consent to the granting of the relief requested in the Motion.

PLEASE TAKE FURTHER NOTICE that, pursuant to Local Rule 9013-1(a)(8), FPLAC, LLC may file and serve a reply memorandum not later than seven (7) calendar days before the date designated for hearing.

WHEREFORE, FPLAC, LLC respectfully requests that the Court enter an Order (i) granting the Motion; (ii) clarifying the Sale Order; (iii) approving that the Amended Schedule 3.2(a) filed concurrently with this Motion be made a part of the Sale Order, and (iv) granting such other and further relief as the Court deems just and proper.

Dated: January 10, 2008

SUSAN H. TREGUB, ESQ.

_____
Susan H. Tregub, Esq.
Attorneys for FPLAC, LLC

3

1. FPLAC, LLC submits this Motion for an order (i) clarifying the "Order Granting Motion to Approve: (1) Sale of Assets Free and Clear of Liens and Interests; (2) Assumption and Assignment of Designated Executory Contracts; and (3) Rejection of Designated Executory Contracts" entered by this Court on September 8, 2006 (the "Sale Order"), and (ii) amending "Schedule 3.2(a)" of the "Asset Purchase Agreement" attached as Exhibit A to the Sale Order so that an inadvertent mistake that was made in Schedule 3.2(a) can be corrected.

On September 8, 2006 this Court entered the Sale Order pursuant to which, among other things, FPLAC, LLC ("Purchaser") acquired certain assets of Franchise Pictures LLC, Franchise Pictures, Inc., Franchise Films LLC, Franchise Entertainment LLC, 3000 Miles Productions, Inc., Alex and Emma Productions, Inc., Auggie Rose Productions, Inc., Battlefield Productions, LLC, Carter Productions, LLC, Champs Productions Inc., Conprod, Inc., Heightened Productions Inc., Nine Yards Productions, LLC, Phoenician Entertainment LLC, Pledge Productions, Inc., Rangers Productions, Inc., Seraph Productions, Inc., Split Card Films, Inc., Suite Productions LLC, Valentine Productions, Inc., VLN Productions, Inc., TGD Productions, Inc., Phoenician Entertainment, Inc., Nordhoff Rentals, Inc., Franchise Classics Pictures, Inc., Franchise Creative Corp. and Franchise Television LLC, debtors and debtors in possession in the chapter 11 cases being jointly administered under Case No. SV 05-13855-MT (collectively, the "Franchise Debtors") and Animal Productions, LLC, Captured Productions, Inc., Cinema Holdings, Inc., Desperate, Inc., Disorder Productions, Inc., Lost Angels Distribution, Inc., Merciless Movies, Inc., Nine Yards Two Productions, Inc., Rabbitprod, Inc., Restrained Films, Inc., Ripped Films, Inc., Rumbling Productions, Inc., Saint Mortimer Films, Inc., Seabreeze Productions, Inc., Sever Productions, Inc., Silent Productions, Inc., Snake Eyes Productions, Inc., South Boondock Productions, Inc., Spartan Distribution, Inc., SPE Holding Corp., Stormy Productions, Inc., Twin Pictures Acquisition Corp., Unbelievable Productions, Inc., VS Productions, Inc., Zig Zag Productions, Inc. and Franchise Studios LLC, debtors and debtors in possession in the chapter 11 cases being jointly administered under Case No. SV 05-50077-MT (collectively, the "SPE Debtors," and, together with the Franchise Debtors, the "Sellers").

The Sale Order signed by this Court had attached to it as Exhibit A the "Asset Purchase Agreement between Franchise Pictures LLC and Certain Affiliates and SPE Holding Corp. and Certain Affiliates and FPLAC, LLC and Morgan Creek Productions, Inc." dated as of September 1, 2006 (the "Joint APA"). As set forth in the attached Memorandum of Points and Authorities, the Schedule 3.2(a) ostensibly set forth the assets being acquired by Purchaser but failed to include certain "Development Projects" which Sellers and Purchaser had negotiated as part of the sale to Purchaser and which had been previously submitted to the Court in the original asset purchase agreement filed by the Sellers and Purchaser. This list of "Development Projects" was apparently inadvertently omitted from the Schedule 3.2(b) of the Joint APA. Purchaser is seeking relief from this Court for an order clarifying the Sale Order and permitting an amended Schedule 3.2(b) to be filed and made a part of the Sale Order.

The Motion is based upon Section 105(a) of the Bankruptcy Code, the attached Memorandum of Points and Authorities, the Declarations filed concurrently herewith in support of the Motion, the entire record of the Sellers' bankruptcy cases, the statements, arguments and representations of counsel to be made at the hearing on the Motion, and any other evidence properly presented to the Court at, or prior to, the hearing on the Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**STATEMENT OF FACTS**

On June 9, 2006 the Sellers filed a motion (the "Sale Motion") seeking an order of the Court to, among other things, approve the sale of substantially all of the Sellers' assets (the "Sale") to Purchaser or its designee or a party tendering a higher and better offer for such assets in accordance with the terms of that certain Asset Purchase Agreement executed by the parties on or about April 28, 2006 (the "APA"). The hearing on the Sale was scheduled by the Court for September 5, 2006 ("Sale Hearing").

The APA was filed on May 11, 2006 as Exhibit A to the "Declaration of John Brincko in Support of the Sellers' Notice of Motion and Motion for an Order (1) Approving Bidding

Procedures and (2) Setting a Date and Time for Sale Hearing." A true and correct copy of the APA is attached hereto as Exhibit "A." At that time, the schedules associated with and referred to in the APA (the "APA Schedules") were not attached to the APA and were not at that point filed with the Court.

The APA contemplated, among other things, a Sale of substantially all of the Sellers' motion picture-related assets, as identified in Schedule 3.1 to the APA (collectively, the "Purchased Assets" as defined in the APA) in accordance with Sections 363 and 365 and other applicable provisions of the Bankruptcy Code. The term "Purchased Assets" was defined in Section 3.1 of the APA to include, among other things, the assets, properties and rights listed on the Schedule 3.1 attached to the APA. Section 3.2 of the APA enumerated the "Excluded Assets" that were not being conveyed by Sellers to Purchaser. The terms and conditions of the Sale were extensively negotiated, at arms' length, by and among the Sellers, the Purchaser, the Debtors' Official Committee of Unsecured Creditors and certain other parties.

On June 9, 2006 the Franchise Debtors filed the "Declaration of John P. Brincko in Support of Debtors' Motion to Approve: (1) sale of assets free and clear of liens and interests; (2) assumption and assignment of Designated Executory Contracts; and (3) Rejection of Designated Executory Contracts" and the exhibits thereto" (the "Brincko Declaration"). The APA Schedules were included in the Brincko Declaration filing. The Brincko Declaration and the Schedules appended thereto are attached hereto as Exhibit "B." Included on Schedule 3.1 of the APA Schedules are certain Franchise Pictures "Development Projects" (the "Development Projects"). Schedule 3.1 had been primarily prepared by Hans Turner and had been transmitted by him to counsel for the Franchise Debtor's for inclusion as part of the APA Schedules attached to the Brincko Declaration. See Turner Declaration at Paragraph 6. These Development Projects were a matter negotiated between Sellers and Purchaser as part of the Purchased Assets that Purchaser was buying under the terms of the APA. See Bergstein Declaration at Paragraph 6.

Thereafter, on August 10, 2006 the Sellers filed a "Submission of Amended Schedules 3.1, 3.3(b), 3.6, 6.1 and 6.2 to the Asset Purchase Agreement Between Franchise Pictures LLC and

6

Certain Affiliates and FPLAC LLC Dated as of April 28, 2006" (the "Amended Schedules"). The Amended Schedules are attached hereto as Exhibit "C." Included in the attached Exhibit C is a revised Schedule 3.1 that includes the Development Projects. See Turner Declaration at Paragraph 9.

After the Amended Schedules were filed and in approximately mid-August 2006 Purchaser was approached by Morgan Creek Productions, Inc. ("Morgan Creek") regarding potentially entering into a joint transaction for the acquisition of the Sellers' assets. On August 15, 2006 Purchaser received a proposed term sheet for a joint acquisition of Sellers' assets by Purchaser and Morgan Creek. Morgan Creek attached a schedule of the assets it was proposing to acquire, none of which included the Development Projects. Purchaser rejected Morgan Creek's proposed terms for a joint acquisition of Sellers' assets. See Bergstein Declaration at Paragraph 8.

After negotiations between Purchaser and Morgan Creek broke down, on August 22, 2006 Morgan Creek filed "Morgan Creek Production Inc.'s Submission of (1) Asset Purchase Agreement for the Franchise Assets, (2) Redline of Asset Purchase Agreement Against FPLAC APA, and (3) Binding Letter of Intent for the SPE Assets" (the "MC APA"). The MC APA contemplated a sale with only the Franchise Debtors and Section 3.1 defined the "Purchased Assets" under the MC APA as, among other things, the rights associated with the film titles attached as Schedule 3.1. The "Film Titles" under Schedule 3.1 to the MC APA were 3000 Miles to Graceland, Alex and Emma, Angel Eyes, Art of War, Auggie Rose, Battlefield Earth, The Big Kahuna, Caveman's Valentine, Confession, Driven, Five Aces, Get Carter, The Green Dragon, Heist, The Pledge, Rangers, Viva Las Nowhere and The Whole Nine Yards. The MC APA is attached hereto as Exhibit "D."

Thereafter, between the time that the MC APA was filed on August 22, 2006 and the Sale Hearing, scheduled for September 5, 2006, Sellers, Purchaser, Morgan Creek and certain other third parties again entered into negotiations for a joint purchase of Sellers' assets by Purchaser and Morgan Creek.

The initial draft of an asset purchase agreement contemplating the purchase of Sellers' assets by Purchaser and Morgan Creek was circulated in the afternoon on August 25, 2006. A joint asset purchase agreement among Sellers, Purchaser and Morgan Creek (the "Joint APA") was finalized on September 1, 2006. A copy of the Joint APA is attached hereto as Exhibit "E."

The drafting of the Joint APA was primarily "controlled" by counsel for Morgan Creek in that that they circulated drafts, collected comments from the relevant parties, revised the draft documents and re-circulated them. See Tregub Declaration at Paragraph 14. The initial draft of the Joint APA was prepared by counsel for Morgan Creek and circulated on August 25, 2006. See Tregub Declaration at Paragraph 13. A revised draft of the Joint APA was circulated on August 31, 2006, and did not include the schedules associated with the agreement. See Tregub Declaration at Paragraph 14. Thereafter, on September 1, 2006 at 1:10am, counsel for Morgan Creek circulated a draft of the schedules to be included in the Joint APA (the "Joint APA Schedules"). See Tregub Declaration at Paragraph 15. The Joint APA Schedules prepared and circulated by Morgan Creek excluded Schedule 3.1 of the original APA and included Schedules 3.2(a) and 3.2(b). These Schedules 3.2(a) and 3.2(b) were ostensibly supposed to set forth the Purchased Assets by each of Purchaser and Morgan Creek. An additional draft of the Joint APA Schedules was circulated by counsel for Morgan Creek at 5:28pm on September 1, 2006. See Tregub Declaration at Paragraph 15. After hours and hours of continual work and negotiation among the parties (though none of that negotiation related to the Development Projects) and the near total breakdown of the joint transaction with Morgan Creek, the Joint APA was finalized, executed and circulated to the service list at approximately 10:15pm on Friday September 1, 2006 by counsel for the Franchise Debtors. See Tregub Declaration at Paragraph 16. The Joint APA was filed by Sellers with the Court on Tuesday September 5, 2006. In that very hurried period, neither Purchaser nor its counsel noticed that Schedule 3.2(a) omitted the Development Projects.

During the time frame within which the Joint APA was being negotiated, in addition to negotiation of that document, because of the looming September 5, 2006 Sale Hearing date and the actions by Sellers and Purchaser to do everything within their respective abilities to resolve all

of the approximately 16 objections filed relating to the Sale Motion, there was a tremendous volume of documentation being circulated, reviewed, commented upon and filed with the Court over a very short and intense period of time. See Turner Declaration at Paragraph 14. See Tregub Declaration at Paragraph 17. The failure to notice that Schedule 3.2(a) did not include the Development Projects was an oversight.

The Sale Hearing was heard by this Court on September 5, 2006 and this Court entered the Sale Order on September 8, 2006. A copy of the Sale Order, excluding exhibits, is attached hereto as Exhibit "F."

In late 2007, Purchaser was preparing the chain of title on one of the Development Projects for a potential production and in reviewing all of the chain of title documentation, Hans Turner and Susan Tregub discovered that Schedule 3.2(a) of the Joint APA did not correspond with the Amended Schedules filed in August 2006 and in fact omitted the Development Projects. See Turner Declaration at Paragraph 14. See Tregub Declaration at Paragraph 18.

## II.

## ARGUMENT

PURCHASER NEGOTIATED FOR THE ACQUISITION OF THE DEVELOPMENT PROJECTS AND IS ENTITLED TO RELIEF FROM THIS COURT TO AMEND THE SCHEDULE 3.2(A) OF THE JOINT APA TO INCLUDE THE DEVELOPMENT PROJECTS.

Purchaser negotiated with the Sellers to acquire these Development Projects and Purchaser is requesting that this Court issue an order clarifying the Sale Order and Joint APA and ordering that an Amended Schedule 3.2(a) that properly reflects the assets negotiated for and acquired by Purchaser be made a part of the Sale Order.

Purchaser believes that there was nothing that prohibited Sellers from agreeing to sell the Development Projects to Purchaser at the time that such sale was negotiated. The sale of the Development Projects were clearly within the Sellers' authority as set forth in all of the motions and pleadings filed relating to the Sale Motion and the sale of their assets to Purchaser under Section 363 of the Bankruptcy Code.

Purchaser respectfully submits that there is no reason to believe that Sellers contend that the Development Projects are a part of the "Excluded Assets," as that term is defined in the Joint APA, nor that these are otherwise assets of Sellers. Additionally, Purchaser respectfully submits that Morgan Creek does not have any basis to believe that they negotiated for or acquired any right to the Development Projects.

In fact, given that this was an issue specifically addressed and negotiated by Purchaser and Sellers, see Turner Declaration at Paragraph 15, Purchaser believes that this is a matter of an inadvertent mistake being made and not being recognized at the time that the Joint APA was filed with the Court. In the rush to get the Joint APA finalized and executed so that it could be filed with the Court in time for the Sale Hearing, the Development Projects were accidentally omitted from the Schedule 3.2(a) prepared by Morgan Creek and Purchaser failed to recognize the omission. It was not until Purchaser was doing its own chain of title diligence at the end of 2007 with regard to a potential production of one of the Development Projects that Purchaser recognized the omission and researched the extensive email and other correspondence and communications in order to understand what happened.

In its "Findings of Fact and Conclusions of Law Re Motion to Approve: (1) Sale of Assets Free and Clear of Liens and Interests; (2) Assumption and Assignment of Designated Executory Contracts; and (3) Rejection of Designated Executory Contracts," the Court affirmed that it has jurisdiction over these proceedings and the parties and property affected thereby pursuant to 28 U.S.C. Sections 157(b) and 1334. This is a "core" proceeding within the meaning of 28 U.S.C. Section 157(b)(2). The statutory predicates for the relief requested in the Sale Motion include Sections 105(a), 363, 365 and 1146(a) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014.

Pursuant to the Sale Order entered by this Court, this Court specifically retained jurisdiction "to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Joint APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which Debtors are a party, and to

adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale." See Sale Order at Page 18, lines 17-24.

When a sale order provides that the court shall retain jurisdiction, then "[T]he bankruptcy court retains subject matter jurisdiction to interpret orders entered prior to dismissal of the underlying bankruptcy case. *Beneficial Trust Deeds v. Franklin (In re Franklin )*, 802 F.2d 324, 326-27 (9th Cir.1986)..." In Re:Taylor, 884 F.2d 478, 481, C.A.9 (Cal.),1989. In In Re Texaco, the court expressly retained jurisdiction and, when asked by the debtor in that case to reopen its Chapter 11 case to enforce a confirmation order, the court noted that it retained jurisdiction to:

> 1. To take any action to resolve any disputes arising out of or relating to any Claim [:] ... and to take any action to resolve any disputes of creditors with respect to their Claims ... without any other limitation [: and] ...
>
> 2. To construe and to take any action to enforce the Plan, issue such orders as may be necessary for the implementation, execution and consummation of the Plan .. Plan, Article IX at A-18. In re Texaco Inc., 182 B.R. 937, 944, Bkrtcy.S.D.N.Y.,1995.

The court found, among other things, that the express language of the Bankruptcy Code, the express provisions of the "Texaco Plan" and sound considerations of public policy compelled the conclusion that, "a bankruptcy court has subject matter jurisdiction to enforce and interpret its own orders." Ibid. While in that case the issue at hand was the court's continuing jurisdiction after a plan had been filed, one of the issues in question was the court's continuing jurisdiction to enforce and interpret its own orders.

The Sale Order signed by the Court includes as an exhibit the Joint APA, including the Joint APA Schedules. The Schedule 3.2(a) submitted by the parties inadvertently omits the Development Projects – something that was negotiated in good faith among the Sellers and Purchaser and which Purchaser believes the record shows were clearly intended to be conveyed pursuant to the Sale Order. Purchaser respectfully requests that the Court exercise its continuing

11

1 | jurisdiction over this matter and issue an order clarifying the Sale Order and the Joint APA
2 | appended thereto so that an amended Schedule 3.2(a), which properly includes the Development
3 | Projects, shall be included as part of the Sale Order.

Dated: January 10, 2008                    SUSAN H. TREGUB, ESQ.

*[signature]*

Susan H. Tregub, Esq.
Attorneys for FPLAC, LLC

# CASE NUMBER 05-13855MT

# THE ADDITIONAL PAGES/EXHIBITS IN THIS PLEADING ENTITLED

Notice of motion and motion by FPLAC,

LLC for an order clarifying the sale order

EXHIBIT/PAGE #s: A - F

# ARE IN THE COURT'S FILE