1 | DAVID L. NEALE (SBN 141225)
JULIET Y. OH (SBN 211414)
2 | LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
10250 Constellation Blvd., Suite 1700
3 | Los Angeles, California 90067
Telephone: (310) 229-1234
4 | Facsimile: (310) 229-1244

5 | Attorneys for Franchise Pictures LLC, *et al.* and
6 | SPE Holding Corp., *et al.*

7

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 | **SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| 11 In re | ) Case Nos. 1:05-bk-13855-MT *et al.* |
| 12 FRANCHISE PICTURES LLC, *et al.*, | ) ) Chapter 11 (Jointly Administered) |
| 13 Debtors. | ) ) ) |
| 14 In re | ) ) Case Nos. 1:05-bk-50077-MT *et al.* |
| 15 SPE HOLDING CORP. *et al.*, | ) ) Chapter 11 (Jointly Administered) |
| 16 Debtors. | ) ) **DEBTORS' AMENDED JOINT PLAN OF** |
| 17 | ) **LIQUIDATION** |
| ☒ Affects All Debtors | ) ) |
| 18 ☐ Affects Only: | ) ) |
| 19 | ) Hearing: |
| 20 | ) Date: [To be scheduled] ) Time: [To be scheduled] |
| 21 | ) Place: Courtroom "302" ) 21041 Burbank Blvd. |
| 22 | ) Woodland Hills, CA ) |
| 23 | ) ) |
| 24 | ) ) |
| 25 | |

1

1    Franchise Pictures LLC ("Franchise"), Franchise Pictures, Inc., Franchise Films LLC
2    "Films"), Franchise Entertainment LLC, 3000 Miles Productions, Inc., Alex and Emma
3    Productions, Inc., Auggie Rose Productions, Inc., Battlefield Productions, LLC ("Battlefield"),
4    Carter Productions, LLC, Champs Productions Inc., Conprod, Inc., Heightened Productions Inc.,
5    Nine Yards Productions, LLC, Phoenician Entertainment LLC ("Phoenician"), Pledge
6    Productions, Inc., Rangers Productions, Inc., Seraph Productions, Inc., Split Card Films, Inc.,
7    Suite Productions LLC, Valentine Productions, Inc., VLN Productions, Inc., and TGD
8    Productions, Inc. (collectively, the "Original Debtors") commenced their chapter 11 bankruptcy
9    cases by filing voluntary petitions under the Bankruptcy Code (as defined below) in August
10   2004. With the exception of TGD Productions, Inc., which filed its voluntary petition on August
11   23, 2004, the Original Debtors filed their voluntary petitions under chapter 11 of the Bankruptcy
12   Code on August 18, 2004. The Original Debtors are managing their financial affairs as debtors
13   in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. On September 15,
14   2004, the Honorable Maureen A. Tighe, United States Bankruptcy Judge for the Central District
15   of California, San Fernando Valley Division entered an order approving the joint administration
16   of the Original Debtors' bankruptcy cases under the lead case of Franchise Pictures LLC (case
17   number 1:05-13855-MT).

18   Subsequently, on March 11, 2005, Phoenician Entertainment, Inc., Nordhoff Rentals,
19   Inc., Franchise Classics Pictures, Inc., Franchise Creative Corp. and Franchise Television LLC
20   (the "New Debtors," and, collectively with the Original Debtors, the "Franchise Debtors")
21   commenced their chapter 11 bankruptcy cases by filing voluntary petitions under chapter 11 of
22   the Bankruptcy Code. The New Debtors are all wholly-owned subsidiaries of Franchise. The
23   New Debtors are managing their financial affairs as debtors in possession. The cases of the
24   Franchise Debtors are all being jointly administered (collectively, the "Franchise Cases").

25   Animal Productions, LLC, Captured Productions, Inc., Cinema Holdings, Inc., Desperate,
     Inc., Disorder Productions, Inc., Lost Angels Distributions, Inc., Merciless Movies, Inc., Nine

1   Yards Two Productions, Inc., Rabbitprod, Inc., Restrained Films, Inc., Ripped Films, Inc.,

2   Rumbling Productions, Inc., Saint Mortimer Films, Inc., Seabreeze Productions, Inc., Sever

3   Productions, Inc., Silent Productions, Inc., Snake Eyes Productions, Inc., South Boondock

4   Productions, Inc., Spartan Distribution, Inc., SPE Holding Corp. ("Holding"), Stormy

5   Productions, Inc., Twin Pictures Acquisition Corp., Unbelievable Productions, Inc., VS

6   Productions, Inc., and Zig Zag Productions, Inc. (collectively, the "Original SPE Debtors")

7   commenced their chapter 11 bankruptcy cases by filing voluntary petitions under chapter 11 of

8   the Amended Bankruptcy Code (as defined below) on November 21, 2005. Franchise Studios,

9   LLC (collectively with the Original SPE Debtors, the "SPE Debtors") filed its voluntary petition

10  for relief under chapter 11 of the Amended Bankruptcy Code on December 1, 2005. On January

11  11, 2006, the Court entered an order approving the joint administration of all of the SPE Debtors

12  (together with the Franchise Debtors, collectively, the "Debtors") under the lead case of SPE

13  Holding Corp. (case number 1:05-50077-MT) (collectively, the "SPE Cases"). The SPE Debtors

14  are managing their financial affairs as debtors in possession pursuant to Sections 1107 and 1108

15  of the Amended Bankruptcy Code.

16      Chapter 11 allows the debtor, and, under some circumstances, creditors and other parties

17  in interest, to propose a plan. A plan may provide for the debtor to reorganize by continuing to

18  operate, to liquidate by selling the assets of its estate, or a combination of both.

19      The Debtors are the proponents of this "Amended Joint Plan of Liquidation" (the "Joint

20  Plan") which is described in the Debtors' "Disclosure Statement re Debtors' Amended Joint

21  Plan of Liquidation." This Joint Plan is a liquidating plan. In general, after reserves are

22  established to pay allowed administrative, secured and priority claims, all of the remaining

23  assets, properties, rights, powers and privileges of the Debtors and their estates, including claims

24  and causes of action, will be transferred to a liquidating trust. The trustee of the liquidating

25  trust, as representative of the Debtors' estates, will liquidate the remaining property, claims,

rights and causes of action of the Debtors and their estates. Funds in the liquidating trust will be

1  distributed to creditors holding allowed general unsecured claims.

2  **I.**

3  **DEFINITIONS AND USAGES**

4  **A.**    In addition to any terms specifically defined elsewhere herein, the following

5  terms shall have the following meanings:

6  "Adjusted Recovery" means the division of the Threshold Distribution to holders of

7  Allowed Unsecured Claims, such that the recovery by holders of Allowed General Unsecured

8  Claims shall be 2.2 times the percentage recovery of the holder of the Allowed Intertainment

9  Claim.

10  "Administrative Claim" means a Claim against a Debtor or an Estate (including any

11  Franchise Administrative Claim, but excluding any other Intercompany Claims, and excluding

12  any Administrative Tax Claim) that arises prior to the Effective Date and that is entitled to

13  priority under Section 507(a)(1) of the Bankruptcy Code or Section 507(a)(2) of the Amended

14  Bankruptcy Code (as applicable), including (1) a Claim under Section 503(b) of the Bankruptcy

15  Code or the Amended Bankruptcy Code (as applicable); (2) any fees payable by a Debtor to the

16  OUST for periods up to and including the Effective Date; and (3) any costs payable by a Debtor

17  to the Clerk of the Court prior to the Effective Date; and (4) the Franchise Administrative Claim

18  (if any).

19  "Administrative Claim Reserves" means the segregated accounts maintained by the

20  Chief Restructuring Officer in amounts which, in the applicable Debtors' best estimate after

21  consultation with the Committee, or as estimated by the Court, is sufficient to pay the ultimate

22  amount of Allowed Administrative Claims (including the Franchise Administrative Claims, if

23  any) that are not paid on or before the Effective Date (provided, however, that the aggregate

24  amount that is to be reserved in the Administrative Claim Reserves on account of an

25  Administrative Claim asserted against more than one Debtor shall not exceed the estimated

amount of the Administrative Claim).  There shall be two (2) separate Administrative Claim

4

Reserves, one for the Franchise Debtors, which shall be administered in the Post-Effective Date Estate of Franchise, and one for the SPE Debtors, which shall be administered in the Post-Effective Date Estate of Holding. The Administrative Claim Reserve in the Post-Effective Date Estate of Franchise shall be funded by the Franchise Debtors; the Administrative Claim Reserve in the Post-Effective Date Estate of Holding shall be funded on a by the SPE Debtors; and, to the extent necessary, the Administrative Claim Reserves shall be funded on a consolidated basis by the Debtors.

"Administrative Tax Claim" means a Claim against an Estate that arises prior to the Effective Date and that is a Claim entitled to priority under Section 503(b)(1)(B) or (C) of the Bankruptcy Code or the Amended Bankruptcy Code, as applicable.

"Administrative Tax Claim Reserves" means the segregated accounts maintained by the Chief Restructuring Officer in amounts which, in the applicable Debtors' best estimate after consultation with the Committee, or as estimated by the Court, is sufficient to pay the ultimate amount of Allowed Administrative Tax Claims that are not paid on or before the Effective Date (provided, however, that the aggregate amount that is to be reserved in the Administrative Tax Claim Reserves on account of an Administrative Tax Claim asserted against more than one Debtor shall not exceed the estimated amount of the Administrative Tax Claim). There shall be three (3) separate Administrative Tax Claim Reserves: (1) one for the SPE Debtors, which shall be administered in the Post-Effective Date Estate of Holding and funded by Holding after the merger of the SPE Debtors other than Holding into Holding; (2) one for Franchise, the Franchise Flow-Through Debtor, Franchise Survivor and the Franchise Merger Parties, which shall be administered in the Post-Effective Date Estate of Franchise and funded by Franchise and Franchise Survivor after the merger of the Franchise Flow-Through Debtor into Franchise and the Franchise Merger Parties into Franchise Survivor; and (3) one for Crossover Survivor and the Crossover Merger Parties, which shall be administered in the Post-Effective Date Estate of Crossover Survivor and funded by Crossover Survivor after the merger of the Crossover Merger

5

Parties into Crossover Survivor. To the extent necessary, the Administrative Tax Claim Reserves shall be funded on a consolidated basis by the Debtors.

"Allowed Administrative Claim" means (1) in the case of professionals employed at the expense of the Estates of the Franchise Debtors or the SPE Debtors, an Administrative Claim that has been allowed by Final Order; (2) an obligation of an Estate for goods or services procured by a Debtor in the ordinary course of business after the commencement of its Case and prior to the Effective Date; (3) any fees payable by a Debtor to the OUST for periods up to the Effective Date; (4) any costs payable by a Debtor to the Clerk of the Court prior to the Effective Date; (5) the Franchise Administrative Claims, if any; and (6) any other Administrative Claim, including a request by a member of the Committee or a professional employed by such member for reimbursement of expenses or compensation for professional services and related expenses incurred in the connection with serving on the Committee, that has been allowed by a Final Order or fully resolved in accordance with the Liquidating Trust Agreement..

"Allowed Administrative Tax Claim" means an Administrative Tax Claim that is been allowed by a Final Order or fully resolved in accordance with the Liquidating Trust Agreement.

"Allowed Claim" means a Claim of a Creditor (other than an Allowed Administrative Claim, an Allowed Administrative Tax Claim or an Intercompany Claim) that has been allowed under Section 502 of the Bankruptcy Code or the Amended Bankruptcy Code (as applicable), because (1) such Claim was listed by the applicable Debtor on its Schedules as an undisputed, liquidated and non-contingent obligation and is not superseded by a proof of claim; (2) such Claim is set forth in a proof of claim as to which no objection has been filed; or (3) such Claim has been allowed pursuant to a Final Order or fully resolved in accordance with the Liquidating Trust Agreement. Unless otherwise specified in the Plan, an Allowed Claim shall not include interest on the Claim (including interest after the Effective Date) accruing after the commencement of the applicable Debtor's Case.

"Allowed General Unsecured Claim" means a General Unsecured Claim to the extent it

6

1  is an Allowed Claim.

2      "Allowed Intertainment Claim" means the Allowed Claim of Intertainment in the amount

3  of One Hundred Seventeen Million, Six Hundred and Ninety Thousand Dollars

4  ($117,690,000.00).

5      "Allowed Priority Claim" means a Priority Claim to the extent it is an Allowed Claim.

6      "Allowed Priority Tax Claim" means a Priority Tax Claim to the extent it is an Allowed

7  Claim.

8      "Allowed Secured Claim" means a Secured Claim that is an Allowed Claim, but only to

9  the extent of the value of the Creditor's interest in the Debtor's Estate's interest in the property

10  (or the amount subject to setoff), plus interest, fees and charges that are properly added to the

11  amount of the Allowed Secured Claim under Section 506(b) of the Bankruptcy Code or the

12  Amended Bankruptcy Code (as applicable), if any.

13      "Allowed Unsecured Claims" means Allowed General Unsecured Claims and the

14  Allowed Intertainment Claim.

15      "Amended Bankruptcy Code" means the Bankruptcy Code. including any amendments

16  thereto applicable to the Cases for the SPE Debtors, including amendments made by the

17  Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

18      "Bankruptcy Code" means title 11, United States Code, § 101 *et seq.*, which is applicable

19  to the Cases for the Franchise Debtors.

20      "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and Local

21  Bankruptcy Rules applicable to a Case or some or all of the Cases (as the case may be).

22      "Cases" means the chapter 11 cases of some or all of the Debtors (as the case may be) .

23  Each Debtor's chapter 11 case is referred to as a "Case."

24      "Chief Restructuring Officer" means John P. Brincko, who has been appointed and

25  approved by the Court as chief restructuring officer for each of the Debtors, and who shall

remain in control of the Post-Effective Date Estates of Franchise, Franchise Survivor, Crossover

Survivor and Holding, including the Reserves maintained therein, or any duly appointed and approved successor thereto.

"Claim" means (1) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (2) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

"Comerica Turnover Recovery" means the funds recovered from Comerica Bank in connection with the pre-petition bank account maintained at Comerica Bank, as more particularly described in the Disclosure Statement.

"Commerzbank Action" means the adversary proceeding commenced by the SPE Debtors, bearing the number 1:07-ap-01265-MT, by filing that certain *"Complaint For: (1) Avoidance And Recovery Of Fraudulent Transfers [11 U.S.C. §§ 544(b), 550(a), 551 And Cal. Civ. Code § 3439.05]; (2) Avoidance And Recovery of Fraudulent Transfers [11 U.S.C. §§ 548(a)(1)(B), 550(a), And 551]; And (3) Disallowance Of Any Claims Held By Defendants [11 U.S.C. § 502(d)]"* against Commerzbank Aktiengesellschaft and Commerzbank Group.

"Commerzbank Contingent Recovery" has the meaning ascribed to that term in the Disclosure Statement.

"Committee" means the Official Committee of Unsecured Creditors appointed in the Franchise Cases.

"Confirmation Order" means the order of the Court confirming the Plan in accordance with Section 1129 of the Bankruptcy Code or the Amended Bankruptcy Code (as applicable) in effect on the Effective Date, which shall be reasonably satisfactory to the Debtors and the Committee.

"Court" means the United States Bankruptcy Court for the Central District of California,

1  San Fernando Valley Division, Honorable Maureen A. Tighe presiding, or any other court that
2  properly exercises jurisdiction over the Cases.

3  "Creditor" means any entity that has a Claim against a Debtor that arose prior to the
4  commencement of the Debtor's Case or that has a Claim against a Debtor of a kind specified in
5  Section 502(g), 502(h) or 502(i) of the Bankruptcy Code or the Amended Bankruptcy Code (as
6  applicable).

7  "Crossover Merger Parties" means all of the Original Debtors, other than Crossover
8  Survivor, that are wholly-owned subsidiaries of Holding, namely, 3000 Miles Productions, Inc.,
9  Auggie Rose Productions, Inc., Carter Productions, LLC, Champs Productions, Inc., ConProd,
10 Inc. Heightened Productions, Inc., Nine Yards Productions, LLC, Pledge Productions, Inc.,
11 Rangers Productions, Inc., Seraph Productions, Inc., Split Card Films, Inc., Suite Productions,
12 LLC, TGD Productions, Inc., Valentine Productions, Inc. and VLN Productions, Inc..

13 "Crossover Survivor" means Battlefield Productions, LLC, into which all of the
14 Crossover Merger Parties shall be merged on the Effective Date.

15 "De Minimis Distribution" has the meaning set forth in Article III.A.5(k) hereof.

16 "Disclosure Statement" means the Debtors' Disclosure Statement re Amended Joint Plan
17 of Liquidation, approved by the Court on _____, 2010.

18 "Disputed Priority Claim" means a Priority Claim, or any portion thereof, (1) as to which
19 an objection has been filed, or (2) that is otherwise not an Allowed Priority Claim; provided,
20 however, that a Priority Claim, or any portion thereof, that has been disallowed by a Final Order
21 or in accordance with the Liquidating Trust Agreement is not a Disputed Priority Claim.

22 "Disputed Priority Tax Claim" means a Priority Tax Claim, or any portion thereof, (1) as
23 to which an objection has been filed, or (2) that is otherwise not an Allowed Priority Tax Claim;
24 provided, however, that a Priority Tax Claim, or any portion thereof, that has been disallowed by
25 a Final Order or in accordance with the Liquidating Trust Agreement is not a Disputed Priority
Tax Claim.

9

1    "Disputed Secured Claim" means a Secured Claim, or any portion thereof, (1) as to
2    which an objection has been filed, or (2) that is otherwise not an Allowed Secured Claim;
3    provided, however, that a Secured Claim, or any portion thereof, that has been disallowed by a
4    Final Order or in accordance with the Liquidating Trust Agreement is not a Disputed Secured
5    Claim.

6        "Disputed Secured Claim Reserves" means the segregated accounts maintained by the
7    Chief Restructuring Officer (one for each of the Debtors against which a Secured Claim has
8    been asserted that has not been disallowed by a Final Order) into which cash from each such
9    Debtor's Estate (or other Debtors' estates, if necessary) will be deposited on the Effective Date
10   in an amount which, in the applicable Debtors' best estimate after consultation with the
11   Committee, or as estimated by the Court, is equal to the value of the property of the Estate of the
12   Debtor against which the Secured Claim is asserted (provided, however, that the aggregate
13   amount that is to be reserved in all of the Disputed Secured Claim Reserves on account of a
14   Secured Claim asserted against more than one Debtor shall not exceed the amount of the
15   Secured Claim), which amount shall be disbursed to the holder of a Secured Claim only if and to
16   the extent that such Claim becomes an Allowed Secured Claim, with such disbursement to be
17   made in accordance with the treatment of the Allowed Secured Claim under the Plan.  The
18   separate Disputed Secured Claim Reserves for each of the Franchise Flow-Through Debtor and
19   Franchise, if any, shall be maintained in the Post-Effective Date Estate of Franchise; the separate
20   Disputed Secured Claim Reserves for each of the Franchise Merger Parties and Franchise
21   Survivor, if any, shall be maintained in the Post-Effective Date Estate of Franchise Survivor; the
22   separate Disputed Secured Claim Reserves for the Crossover Merger Parties and Crossover
23   Survivor, if any, shall be maintained in the Post-Effective Date Estate of Crossover Survivor;
24   and the separate Disputed Secured Claim Reserves for the SPE Debtors, if any, shall be
25   maintained in the Post-Effective Date Estate of Holding.

        "Disputed Unsecured Claim" means a General Unsecured Claim, or any portion thereof,

Case 1:05-bk-13855-MT   Doc 1225   Filed 01/09/10   Entered 01/09/10 17:21:14   Desc
Main Document   Page 11 of 107

(1) as to which an objection has been filed, or (2) that is otherwise not an Allowed Unsecured Claim; provided, however, that a General Unsecured Claim, or any portion thereof, that has been disallowed by a Final Order or in accordance with the Liquidating Trust Agreement is not a Disputed Unsecured Claim.

"Disputed Unsecured Claim Reserve" means the segregated account maintained by the Liquidating Trustee into which cash from the Distribution Funds will be deposited at the time of any distribution on Allowed Unsecured Claims, comprised of those funds that would be payable to holders of Disputed Unsecured Claims if such Claims were allowed in full, which shall be based on the face amount of the Disputed Unsecured Claim or, if the face amount is unknown, the Liquidating Trustee's best estimate after consultation with the Oversight Committee of the amount of the Disputed Unsecured Claim that will be allowed, unless otherwise ordered by the Court, which funds shall be disbursed to the holder of a Disputed Unsecured Claim only if and to the extent that such Claim becomes an Allowed Unsecured Claim, with such disbursement to be made in accordance with the treatment of the Allowed Unsecured Claim under the Plan and with the Liquidating Trust Agreement. There shall be one Disputed Unsecured Claim Reserve maintained in the Liquidating Trust.

"Distribution Funds" means, at a given time after the transfer of the Transferred Property to the Liquidating Trust on the Effective Date, all of the cash and cash equivalents in the Liquidating Trust other than funds held or accounted for in any Reserves as permitted herein or in the Liquidating Trust Agreement.

"Driven Arbitration" means that certain arbitration proceeding commenced by Comerica Bank against Intertainment Licensing GmbH, to which certain of the Original Debtors were made parties.

"Effective Date" means the first business day that is not later than thirty (30) days following the date the Confirmation Order becomes a Final Order, when all documents, instruments and agreements to be executed in connection with the Plan have been approved by

11

1  the Bankruptcy Court and executed and delivered by all parties to such documents, instruments
2  and agreements.    Notwithstanding the foregoing, the Debtors, with the consent of the
3  Committee, may declare that the Effective Date has occurred if the Court has entered the
4  Confirmation Order, the Confirmation Order has not been modified in any material way, and
5  there is in effect no stay of the effectiveness of the Confirmation Order.  Written notice that the
6  Effective Date has occurred shall be promptly filed and served as provided in the Confirmation
7  Order.  The Plan will not be consummated or become binding unless and until the Effective Date
8  occurs.

9      "Estate" means the pre-Effective Date estate for each Debtor comprised of all property
10  specified in Section 541 of the Bankruptcy Code and the Estate Claims of such Debtor.  On the
11  Effective Date, the Debtors shall be merged and their Estates consolidated as set forth in this
12  Plan.

13      "Estate Claims" means any and all Claims or causes of action that constitute property of
14  any of the Debtor's Estates just prior to the Effective Date or that may be pursued by a
15  representative of any of the Debtors' Estates just prior to the Effective Date.  Estate Claims also
16  include any rights to seek equitable subordination of any Claim, as well as all objections,
17  defenses, rights of offset, recoupment rights, counterclaims, crossclaims and any and all causes
18  of action that could otherwise be asserted by any Debtor in its capacity as debtor in possession
19  just prior to the Effective Date.

20      "Estate Claims Recoveries" means the cash proceeds from any affirmative Estate Claims
21  received on or after the Effective Date by the Liquidating Trustee.

22      "Excess Distribution" means any cash to be distributed under the Plan to holders of
23  Allowed Unsecured Claims in excess of the Threshold Distribution.

24      "Extension Period" has the meaning set forth in Article III.A.5(n) hereof.

25      "Final Order" means an order of the Court that has been entered upon the docket in any
Case, and as to which (1) the time to appeal, petition for certiorari, or move for reargument or

12

1  rehearing has expired and no appeal, petition for certiorari, or motion for reargument or

2  rehearing shall then be pending, or (2) in the event that an appeal, writ of certiorari, or

3  reargument or rehearing has been timely sought, such order has been affirmed by the highest

4  court to which such order was timely appealed or from which reargument or rehearing was

5  sought, or certiorari has been denied, and the time to take any further appeal, petition for

6  certiorari, or move for reargument or rehearing shall have expired; provided, however, that the

7  possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any

8  analogous rule under the Bankruptcy Rules may be filed with respect to such order shall not

9  cause such order not to be a "Final Order."

10  "Franchise Administrative Claims" means the Claims, if any, of the Franchise Debtors

11  for any funds advanced by the Franchise Debtors to the SPE Debtors after the commencement of

12  the SPE Cases and prior to the Effective Date, plus applicable interest, fees and charges. All

13  Franchise Administrative Claims, if any, are Allowed Administrative Claims.

14  "Franchise Flow-Through Debtor" means Phoenician, which is the Franchise Debtor that

15  is a wholly-owned subsidiary of Franchise and that is treated as a partnerships or disregarded

16  entity for federal income tax purposes.

17  "Franchise Intercompany Claims" means Claims or Estate Claims of any kind or nature

18  between or among any of the Franchise Debtors.

19  "Franchise Merger Parties" means the wholly-owned subsidiaries of Franchise, other

20  than Franchise Survivor, that are treated as corporations for federal income tax purposes, namely

21  Alex and Emma Productions, Inc., Franchise Classic Pictures, Inc., Franchise Creative Corp.,

22  Franchise Entertainment LLC, Franchise Pictures, Inc., Franchise Television LLC. Nordhoff

23  Rentals, Inc. and Phoenician Entertainment, Inc.

24  "Franchise/SPE Intercompany Claims" means Claims or Estate Claims of any kind or

25  nature (other than Franchise Administrative Claims) between or among any of the Franchise

Debtors and any of the SPE Debtors.

"Franchise Survivor" means Films, into which the Franchise Merger Parties shall be merged on the Effective Date.

"General Unsecured Claim" means a Claim of a Creditor that is not an Administrative Claim, an Administrative Tax Claim, an Allowed Secured Claim, a Priority Claim, a Priority Tax Claim, the Allowed Intertainment Claim or an Intercompany Claim, and includes the unsecured or deficiency portion of any Secured Claim.

"Initial Objection Period" means the period from the Effective Date until one hundred eighty (180) days after the Effective Date.

"Intercompany Claims" means the Franchise Intercompany Claims, the Franchise/SPE Intercompany Claims and the SPE Intercompany Claims.

"Internal Revenue Code" means the Internal Revenue Code of 1986, as amended from time to time.

"Intertainment" means Intertainment Licensing GmbH and Intertainment AG, collectively.

"Intertainment Litigation" means the action commenced by Intertainment Licensing GmbH in the United States District Court (Central District of California) alleging, among other things, that certain of the Original Debtors and various other parties had conspired to defraud Intertainment by inflating the budgets of the pictures acquired by Intertainment.

"Intertainment Settlement Agreement" means the settlement agreement between and among the Franchise Debtors, Intertainment and Ruediger Baeres, which was approved by the Court by order entered in the Franchise Cases on March 28, 2008.

"Japanese TV Money" has the meaning ascribed to that term in the Disclosure Statement.

"Liquidating Trust" means the liquidating trust to be created upon the Effective Date in accordance with the terms and provisions of the Liquidating Trust Agreement, which will on the Effective Date acquire all of the Transferred Property, including Estate Claims.

"Liquidating Trust Agreement" means the liquidating trust agreement, substantially in

14

1  the form attached hereto as Exhibit "A," which is to become effective as of the Effective Date.

2  To the extent there are inconsistencies between the Liquidating Trust Agreement and this Plan,

3  the terms of the Plan shall prevail except to the extent that the Plan is inconsistent with the

4  Confirmation Order, in which case the terms of the Confirmation Order shall prevail.

5  "Liquidating Trustee" means Sitrick Brincko Group, LLC, as trustee under the

6  Liquidating Trust Agreement, or any successor appointed in accordance with the Liquidating

7  Trust Agreement, not in their individual capacities, but solely as trustee hereunder.

8  "MPIPHP" means the Motion Picture Industry Pension and Health Plans.

9  "Musicians' Fund" means the Film Musicians' Secondary Market Fund.

10  "OUST" means the Office of the United States Trustee.

11  "Oversight Committee" means the committee that may established upon the Effective

12  Date in accordance with Article III.A.5(e) hereof to fulfill the functions set forth in this Plan and

13  the Liquidating Trust Agreement.

14  "Plan" means the Joint Plan as confirmed and modified by the Confirmation Order. Any

15  inconsistency between the Plan and the Confirmation Order shall be governed by the

16  Confirmation Order, which is incorporated by reference as if fully set forth in the Plan.

17  "Post-Effective Date Estate Reserves" means the segregated accounts maintained by the

18  Chief Restructuring Officer in each of the Post-Effective Date Estates of Franchise, Franchise

19  Survivor, Crossover Survivor and Holding to pay fees and expenses incurred by each Post-

20  Effective Date Estate, including taxes, fees payable to the OUST for periods after the Effective

21  Date, and fees and expenses incurred by the Chief Restructuring Officer.

22  "Post-Effective Date Estates" means the bankruptcy estates of Franchise, Franchise

23  Survivor, Crossover Survivor and Holding after the Effective Date and the consummation of the

24  transactions described in Article III.A.2 of the Plan, which shall consist only of certain Reserves

25  as set forth in the Plan.

"Priority Claim" means a Claim of a Creditor (other than an Intercompany Claim) that is

15

entitled to priority under Section 507 of the Bankruptcy Code or the Amended Bankruptcy Code (as applicable) other than an Administrative Claim, an Administrative Tax Claim or a Priority Tax Claim.

"Priority Claim Reserves" means the segregated accounts maintained by the Chief Restructuring Officer in amounts which, in the applicable Debtors' best estimate after consultation with the Committee, or as estimated by the Court, are sufficient to pay the ultimate amount of Allowed Priority Claims, from which funds shall be disbursed to the holder of a Priority Claim only if and to the extent that such Claim becomes an Allowed Priority Claim, with such disbursement to be made in accordance with the treatment of Allowed Priority Claims under the Plan (provided, however, that the aggregate amount that is to be reserved in the Priority Claim Reserves on account of a Priority Claim asserted against more than one Debtor shall not exceed the estimated amount of the Priority Claim). There shall be two (2) separate Priority Claim Reserves, one for the Franchise Debtors, which shall be administered in the Post-Effective Date Estate of Franchise and, and one for the SPE Debtors, which shall be administered in the Post-Effective Date Estate of Holding. The Priority Claim Reserve in the Post-Effective Date Estate of Franchise shall be funded by the Franchise Debtors; the Priority Claim Reserve in the Post-Effective Date Estate of Holding shall be funded by the SPE Debtors; and, to the extent necessary, the Priority Claim Reserves shall be funded on a consolidated basis by the Debtors.

"Priority Tax Claim" means a Claim of a Creditor that is entitled to priority under Section 507(a)(8) of the Bankruptcy Code or the Amended Bankruptcy Code (as applicable).

"Priority Tax Reserves" means the segregated accounts maintained by the Chief Restructuring Officer in amounts which, in the applicable Debtors' best estimate after consultation with the Committee, or as estimated by the Court, is sufficient to pay the ultimate amount of the Allowed Priority Tax Claims, from which funds shall be disbursed to the holder of a Priority Tax Claim only if and to the extent that such Claim becomes an Allowed Priority

16

1   Tax Claim, with such disbursement to be made in accordance with the treatment of Allowed

2   Priority Tax Claims under the Plan (provided, however, that the aggregate amount that is to be

3   reserved in the Priority Tax Claim Reserves on account of a Priority Tax Claim asserted against

4   more than one Debtor shall not exceed the estimated amount of the Priority Tax Claim). There

5   shall be three (3) separate Priority Tax Reserves: (1) one for the SPE Debtors, which shall be

6   administered in the Post-Effective Date Estate of Holding and funded by Holding after the

7   merger of the SPE Debtors other than Holding into Holding; (2) one for Franchise, the Franchise

8   Flow-Through Debtor, Franchise Survivor and the Franchise Merger Parties, which shall be

9   administered in the Post-Effective Date Estate of Franchise and funded by Franchise and

10  Franchise Survivor after the merger of the Franchise Flow-Through Debtor into Franchise and

11  the Franchise Merger Parties into Franchise Survivor; and (3) one for Crossover Survivor and

12  the Crossover Merger Parties, which shall be administered in the Post-Effective Date Estate of

13  Crossover Survivor and funded by Crossover Survivor after the merger of the Crossover Merger

14  Parties into Crossover Survivor. To the extent necessary, the Priority Tax Reserves shall be

15  funded on a consolidated basis by the Debtors.

16         "Recovered Guild Funds" means those funds ultimately recovered by the Debtors (or any

17  of them) from the funds currently held by the Screen Actors Guild, Inc. ("SAG") or the

18  Directors Guild of America, Inc. ("DGA") as (1) security deposits for the Debtors' potential

19  obligations to SAG and DGA which might arise during the course of the production of certain of

20  the Debtors' films; or (2) reserves for residuals payable to applicable members of SAG and

21  DGA.

22         "Released Person" means each of the Debtors, the Liquidating Trustee, the Chief

23  Restructuring Officer, the Estates, the Post-Effective Date Estates, the Committee, the current

24  and prior members of the Committee, the Oversight Committee, the members of the Oversight

25  Committee, and any of their respective postpetition employees, officers, directors, shareholders,

agents, members and representatives, and the professionals employed or retained by any of

17

them, whether or not by Court order, each solely in their capacities as such in relation to the Cases.

"Reserves" or "Reserve Accounts" means the Administrative Claim Reserves, the Administrative Tax Claim Reserves, the Disputed Secured Claim Reserves, the Disputed Unsecured Claim Reserve, the Post-Effective Date Reserves, the Priority Claim Reserves, the Priority Tax Reserves, the Trust Expense Reserve, the Unclaimed Distributions Reserve and any other reserves established by the Liquidating Trustee in accordance with the Liquidating Trust Agreement.

"Sale Proceeds" means the cash proceeds of the October 2006 sale of substantially all of the Debtors' motion picture-related assets (other than the Japanese TV Money), which remains in any of the Franchise Debtors' accounts on the Effective Date, which the Debtors estimate will be approximately Four Million Three Hundred Thousand Dollars ($4,300,000.00) (assuming that the Effective Date occurs on or about April 1, 2010).

"Schedules" means the Schedules of Assets and Liabilities filed by each of the Debtors in accordance with Rule 1007 of the Federal Rules of Bankruptcy Procedure.

"Secured Claim" means a Claim of a Creditor (other than an Intercompany Claim) against a Debtor that is secured by a valid, duly-perfected and enforceable lien on property in which the Debtor's Estate has an interest, or that is eligible for setoff with respect to a Claim of a Debtor against the Creditor under Section 553 of the Bankruptcy Code or the Amended Bankruptcy Code (as applicable).

"Special Reserves" means the Administrative Claim Reserves, the Administrative Tax Claim Reserves, the Disputed Secured Claim Reserves, the Priority Claim Reserves and the Priority Tax Reserves.

"SPE Intercompany Claims" means Claims or Estate Claims of any kind or nature between or among any of the SPE Debtors.

"Survivor Entities" means Franchise, Franchise Survivor, Holding and Crossover

18

1    Survivor.

2    "Termination Date" has the meaning set forth in Article III.A.5(n) hereof.

3    "Threshold Distribution" means the first Eight Million Dollars ($8,000,000.00) of cash to

4    be distributed under the Plan to holders of Allowed Unsecured Claims.

5    "Transferred Property" means the all of the remaining tangible and intangible assets,

6    property, rights, powers and privileges of the Survivor Entitles (including Estate Claims) after

7    the mergers provided for herein have occurred and after the establishment and funding of the

8    Special Reserves and the Post-Effective Date Estate Reserves in the Post-Effective Date Estates

9    of the Survivor Entities, which assets, property, rights, powers and privileges shall be transferred

10   on the Effective Date to the Liquidating Trust to be administered in accordance with this Plan

11   and the Liquidating Trust Agreement.  The Transferred Property includes (1) the remaining

12   Sales Proceeds and other cash and cash equivalents held by the Debtors, or any of them, or by

13   counsel for the Debtors on behalf of any of the Debtors on the Effective Date, (2) the right to the

14   Estate Claims Recoveries (including the Commerzbank Recovery, the Comerica Turnover

15   Recovery and the Japanese TV Money) to the extent not received by the Debtors prior to the

16   Effective Date, (3) the right to receive, in accordance with this Plan, excess funds remaining

17   after payments are made from the Reserve Accounts held in the Post-Effective Date Estates, and

18   (4) all privileges, including the attorney-client privilege, owned or held by any of the Debtors or

19   their Estates.

20   "Trust Expense Reserve" means the Reserve Account to be maintained by the

21   Liquidating Trustee to pay (1) the fees and expenses, including taxes (if any), incurred by the

22   Liquidating Trust, and (2) other fees and expenses incurred by professionals employed at the

23   expense of the Liquidating Trust after the Effective Date, in accordance with this Plan and the

24   Liquidating Trust Agreement.

25   "Trust Property" means, as of any given date after the transfer of the Transferred

Property to the Liquidating Trust on the Effective Date, all the tangible and intangible assets,

property, rights, powers and privileges that belong to the Liquidating Trust, including the Reserves created by the Liquidating Trustee in accordance with the Plan or the Liquidating Trust Agreement and including the proceeds of (including interest earned with respect to) any Transferred Property or other Trust Property.

"Unclaimed Distributions Reserve" means the Reserve Account maintained by the Liquidating Trustee into which shall be deposited distributions with respect to uncashed checks, undeliverable distributions and De Minimis Distributions in accordance with the Liquidating Trust Agreement.

**B.**    In this Plan, except to the extent that the context otherwise requires:

1.    when a reference is made in this Plan to an Article, such reference is to an Article of this Plan unless otherwise indicated;

2.    the headings and captions used in this Plan are for reference purposes only and do not affect in any way the meaning or interpretation of this Plan;

3.    whenever the words "include," "includes" or "including" are used in this Plan, they are deemed to be followed by the words "without limitation," unless expressly indicated otherwise;

4.    the words "hereof," "herein" and "hereunder" and works of similar import, when used in this Plan, refer to this Plan as a whole and not to any particular provision of this Plan;

5.    all terms defined in this Plan have the same defined meanings when used in any document made or delivered pursuant hereto, unless otherwise defined therein;

6.    the definitions contained in this Plan are applicable to the singular as well as the plural forms of such terms and *vice versa*;

7.    except as otherwise provided, any law defined or referred to herein means such law or statute as from time to time amended, modified or supplemented, to the extent applicable to the situation;

8.      reference to a person or entity is also to his, her or its heirs, executors, administrators, personal representatives, estates and permitted successors and assigns, unless the context otherwise requires;

9.      the use of "or" is not intended to be exclusive unless expressly indicated otherwise;

10.     unless the context otherwise requires, reference to the masculine shall also be deemed to constitute references to the feminine and the neuter, reference to the feminine shall be deemed to constitute reference to the masculine and the neuter, and reference to the neuter shall be deemed to constitute reference to the masculine and the feminine;

11.     except as otherwise provided herein, Federal Rule of Bankruptcy Procedure 9006(a) (effective December 1, 2009) shall apply when computing any time period under the Plan; and

12.     any definition given to a term or provision herein supersedes and controls any different meaning that may be given to that term or provision in the Disclosure Statement.

C.      Any term not specifically defined herein shall have the meaning ascribed to it in the Bankruptcy Code or the Amended Bankruptcy Code (as applicable).

## II.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.      General Overview

As required by the Bankruptcy Code and the Amended Bankruptcy Code (as applicable), the Plan classifies certain Claims and interests in various classes according to their right to priority. The Plan states whether each class of Claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive. A Claim or interest is classified in a particular class only to the extent that it falls within the description of that class. To the extent

21

1   that part of a Claim or interest falls within a different class description, the Claim or interest is
2   classified in that different class.

3       NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN, NO
4   DISTRIBUTION WILL BE MADE TO A HOLDER ON ACCOUNT OF A CLAIM THAT IS
5   NOT ALLOWED OR FULLY RESOLVED IN ACCORDANCE WITH THE LIQUIDATING
6   TRUST AGREEMENT; NO DISTRIBUTION WILL BE MADE ON ACCOUNT OF ANY
7   INTEREST.

8       **B.    Unclassified Claims**

9       Certain types of Claims are not placed into voting classes; instead they are unclassified.
10  They are not considered impaired and they do not vote on the Plan because they are
11  automatically entitled to specific treatment provided for them in the Bankruptcy Code or the
12  Amended Bankruptcy Code (as applicable).    Therefore, the Debtors have not placed
13  Administrative Claims, Administrative Tax Claims or Priority Tax Claims in classes.

14  **1.    Administrative Claims**

15      Administrative Claims are Claims for costs or expenses of administering the Debtors'
16  chapter 11 Cases (other than Administrative Tax Claims) which are entitled to priority under
17  Bankruptcy Code Section 507(a)(1) or Amended Bankruptcy Code Section 507(a)(2).    The
18  Bankruptcy Code and the Amended Bankruptcy Code require that all Allowed Administrative
19  Claims be paid on the Effective Date, unless a particular holder of an Allowed Administrative
20  Claim agrees to a different treatment.

21      On the Effective Date, the Debtors shall deposit into the separate Administrative Claim
22  Reserves for the Franchise Debtors and the SPE Debtors amounts which, in accordance with the
23  applicable Debtors' best estimate after consultation with the Committee, or as estimated by the
24  Court, is sufficient to pay the ultimate amount of Allowed Administrative Claims of the
25  Franchise Debtors and the SPE Debtors, respectively.    The Chief Restructuring Officer shall
    promptly pay from the applicable Administrative Claim Reserve, without a Final Order allowing

1   such Claims, any fees payable by a Debtor to the OUST for any period up to the Effective Date,

2   any cost payable by a Debtor to the Clerk of the Court prior to the Effective Date, any obligation

3   of an Estate for goods or services procured by a Debtor in the ordinary course of business after

4   the commencement of its Case and prior to the Effective Date, and any Franchise Administrative

5   Claims (collectively, "Ordinary Course Administrative Claims"). Any other Administrative

6   Claim shall be paid from the appropriate Administrative Claim Reserve promptly after and only

7   to the extent such Claim becomes an Allowed Administrative Claim.

8        In connection with confirmation of the Plan, the Debtors shall request that the Court fix a

9   bar date by which any requests for payment of Administrative Claims arising after May 22, 2009

10  (other than Claims by professionals employed at the expense of any of the Estates and Ordinary

11  Course Administrative Claims) must be filed. The Debtors intend to request that such bar date

12  be fixed at a date not more than twenty (20) days after the entry of the order confirming the Plan.

13       The following chart lists all of the Debtors' known Administrative Claims, in the

14  amounts the Debtors estimate will be unpaid on the Effective Date (assuming that the Effective

15  Date occurs within thirty (30) days after entry of the order confirming the Plan), and their

16  treatment under the Plan:

| Name | Amount Owed | Treatment |
|---|---|---|
| Clerk's Office Fees | $0 | Paid in full on the Effective Date out of the appropriate Administrative Claim Reserve(s) |
| OUST Fees | $0 | Paid in full on the Effective Date out of the appropriate Administrative Claim Reserve(s) |
| Levene, Neale, Bender, Rankin & Brill L.L.P., bankruptcy counsel for the Franchise Debtors | $150,000 est. in excess of any amounts paid pursuant to Court order prior to the Effective Date. | Paid in full out of the Administrative Claim Reserve for the Franchise Debtors on the later of (1) the Effective Date, or (2) the date the Court allows such fees and expenses by Final Order |
| Levene, Neale, Bender, Rankin & Brill L.L.P., bankruptcy counsel for the SPE Debtors | $100,000 est. in excess of any amounts paid pursuant to Court order prior to the Effective Date. | Paid in full out of the Administrative Claim Reserve for the SPE Debtors on the later of (1) the Effective Date, or (2) the date the Court allows such fees and expenses by Final Order |

| Name | Amount Owed | Treatment |
|------|-------------|-----------|
| John P. Brincko., Chief Restructuring Officer of the Franchise Debtors, and Sitrick Brincko Group, LLC, financial advisor to the Franchise Debtors | $150,000 est. in excess of any amounts paid pursuant to Court order prior to the Effective Date. | Paid in full out of the Administrative Claim Reserve for the Franchise Debtors on the later of (1) the Effective Date, or (2) the date the Court allows such fees and expenses by Final Order |
| John P. Brincko, Chief Restructuring Officer of the SPE Debtors, and Sitrick Brincko Group, LLC, financial advisor to the SPE Debtors | $100,000 est. in excess of any amounts paid pursuant to Court order prior to the Effective Date. | Paid in full out of the Administrative Claim Reserve for the SPE Debtors on the later of (1) the Effective Date, or (2) the date the Court allows such fees and expenses by Final Order |
| Sidley Austin LLP, counsel to the Committee | $75,000 est. in excess of any amounts paid pursuant to Court order prior to the Effective Date. | Paid in full out of the Administrative Claim Reserve for the Franchise Debtors on the later of (1) the Effective Date, or (2) the date the Court allows such fees and expenses by Final Order |
| Latham & Watkins LLP, special litigation counsel to the Franchise Debtors | $0 | Paid in full out of the Administrative Claim Reserve for the Franchise Debtors on the later of (1) the Effective Date, or (2) the date the Court allows such fees and expenses by Final Order |
| Creim Macias Koenig & Frey LLP, former counsel to the SPE Debtors | $25,301 est. in excess of any amounts paid pursuant to Court order prior to the Effective Date. | Paid in full out of the Administrative Claim Reserve for the SPE Debtors on the later of (1) the Effective Date, or (2) the date the Court allows such fees and expenses by Final Order |
| Grobstein Horwath, accountants for the Franchise Debtors | $5,000 est. in excess of any amounts paid pursuant to Court order prior to the Effective Date. | Paid in full out of the Administrative Claim Reserve for the Franchise Debtors on the later of (1) the Effective Date, or (2) the date the Court allows such fees and expenses by Final Order |
| Focus Advisory Services LLC, financial consultant to the Franchise Debtors and the Committee | $5,000 est. in excess of any amounts paid pursuant to Court order prior to the Effective Date. | Paid in full out of the Administrative Claim Reserve for the Franchise Debtors on the later of (1) the Effective Date, or (2) the date the Court allows such fees and expenses by Final Order |
| Focus Advisory Services LLC, financial consultant to the SPE Debtors | $5,000 est. in excess of any amounts paid pursuant to Court order prior to the Effective Date. | Paid in full out of the Administrative Claim Reserve for the SPE Debtors on the later of (1) the Effective Date, or (2) the date the Court allows such fees and expenses by Final Order |

| Name | Amount Owed | Treatment |
|---|---|---|
| Sills & Adelman, accountants and auditors for the Franchise Debtors | $0 | Paid in full out of the Administrative Claim Reserve for the Franchise Debtors on the later of (1) the Effective Date, or (2) the date the Court allows such fees and expenses by Final Order |
| Sindee Levin, special counsel for the Franchise Debtors | $0 | Paid in full out of the Administrative Claim Reserve for the Franchise Debtors on the later of (1) the Effective Date, or (2) the date the Court allows such fees and expenses by Final Order |
| Mark G. Phillips, CPA, tax accountant for the Franchise Debtors | $10,000 est. in excess of any amounts paid pursuant to Court order prior to the Effective Date. | Paid in full out of the Administrative Claim Reserve for the Franchise Debtors on the later of (1) the Effective Date, or (2) the date the Court allows such fees and expenses by Final Order |
| Mark G. Phillips, CPA, tax accountant for the SPE Debtors | $10,000 est. in excess of any amounts paid pursuant to Court order prior to the Effective Date. | Paid in full out of the Administrative Claim Reserve for the SPE Debtors on the later of (1) the Effective Date, or (2) the date the Court allows such fees and expenses by Final Order |
| Administrative Claims of MPIPHP against certain Franchise Debtors and certain SPE Debtors | $146,519 (disputed as to amount and entitlement to priority and allocation among the Debtors, if allowed) | Paid in full out of the appropriate Administrative Claim Reserves on the later of (1) the Effective Date, or (2) the date the Court allows such Administrative Claim, if any, by Final Order or such Claim is fully resolved in accordance with the Liquidating Trust Agreement |
| Reimbursement and compensation requests made by members of the Committee or professionals employed by them | $5,000 est. | Paid in full out of the Administrative Claim Reserve for the Franchise Debtors on the later of (1) the Effective Date, or (2) the date the Court allows such reimbursement requests by Final Order or such Claims are fully resolved in accordance with the Liquidating Trust Agreement |
| TOTAL | $786,289 est. | |

The Administrative Claim amounts set forth above represent only the Debtors' best estimate as to the amount of Allowed Administrative Claims in these Cases, based upon information provided by the administrative claimants or information in the possession or control of the

25

Debtors. The actual amount of Allowed Administrative Claims may be higher or lower.

Bankruptcy Court Approval of Professional Fees and Committee Expenses Required

Before any unpaid fees and expenses of a professional employed at the expense of any of the Estates may be paid, the Bankruptcy Court must approve and allow, on a final basis, all fees and expenses of the professional. For all professional fees and expenses, the professional in question must file and serve a properly noticed final fee application and the Court must rule on the application. Only the amount of fees and expenses allowed by Final Order will be paid under the Plan.

By voting to accept the Plan, Creditors are not acknowledging the validity of, or consenting to the amount of, the Allowed Administrative Claim of any professional employed at the expense of any of the Estates, and Creditors are not waiving any of their rights to object to the allowance of any of the Administrative Claims asserted by such professionals.

**2. Administrative Tax Claims**

Administrative Tax Claims are Claims against an Estate for taxes that arose prior to the Effective Date and that are Claims under Section 503(b)(1)(B) or (C) of the Bankruptcy Code or the Amended Bankruptcy Code (as applicable). The Bankruptcy Code and the Amended Bankruptcy Code require that all Allowed Administrative Tax Claims be paid on the Effective Date, unless a particular holder of an Allowed Administrative Tax Claim agrees to a different treatment.

The Debtors believe that no requests for payment of administrative claim has been filed (and not withdrawn) by any federal, state or local taxing authority. The Debtors also believe that, with respect to Administrative Tax Claims, no federal income taxes are due and that the maximum amount due to the California Franchise Tax Board is the unpaid amount of minimum franchise tax, possibly plus applicable interest and penalties, for each Debtor. The Debtors believe they have filed most of their required federal, state and local tax returns for post-petition taxable years ending on and before December 31, 2008, and will have filed all such returns prior

1    to confirmation of the Plan. The Debtors' federal income tax returns for such years show no
2    federal income tax due. Each of the Debtors' California franchise tax return for such years
3    reported the minimum annual franchise tax due, *i.e.,* $800. However, no payments were remitted
4    to the California Franchise Tax Board for the amounts shown as due on such returns for the SPE
5    Debtors. The aggregate amount of the Administrative Tax Claim relating to the California
6    franchise taxes shown on such returns and not yet paid for such years is $69,616. The Debtors
7    may be subject to applicable penalties and interest for failure to pay amounts shown on the
8    California franchise tax returns as well as applicable federal, state and local penalties and interest
9    for failure to timely file tax returns. The Debtors intend to file any federal income tax returns,
10   California franchise tax returns and other applicable tax returns for the taxable year ending on
11   December 31, 2009 on or before their respective due dates (including any applicable extensions).
12   The estimated amount of the aggregate tax liabilities for all Debtors for the taxable year ending
13   on December 31, 2009 is $20,800.

14   After the Disclosure Statement has been approved, the Debtors intend to take such
15   actions as are necessary or appropriate to have the Court determine the amount of any Allowed
16   Administrative Tax Claims, which may include (a) filing unfiled tax returns for any Debtor, (b)
17   filing a request for payment on behalf of any governmental entity that the Debtors, in the
18   exercise of their sound business judgment and in good faith, believe may have an Administrative
19   Tax Claim against any of the Debtors, and (c) requesting the Court to determine under Section
20   505(b)(2) of the Bankruptcy Code and the Amended Bankruptcy Code (as applicable), or
21   otherwise, the amount and priority of any tax, any interest or penalty relating to a tax, or any
22   addition to a tax that would constitute an Allowed Administrative Tax Claim.

23   On the Effective Date, the Debtors shall deposit into the separate Administrative Tax
24   Claim Reserves for Franchise, Franchise Survivor, Crossover Survivor, and Holding,
25   respectively, an amount which, in accordance with the applicable Debtors' best estimate after
     consultation with the Committee, or as estimated by the Court, is sufficient to pay the ultimate

27

1 amount of Allowed Administrative Tax Claims of (i) Franchise, the Franchise Flow-Through
2 Debtor, Franchise Survivor and the Franchise Merger Parties, (ii) Crossover Survivor and the
3 Crossover Merger Parties, and (iii) the SPE Debtors, respectively.  The Chief Restructuring
4 Officer shall pay from the applicable Administrative Tax Claim Reserve any Administrative Tax
5 Claim promptly after and only to the extent such Claim becomes an Allowed Administrative Tax
6 Claim.

7   **3.   Priority Tax Claims**

8 Except to the extent the holder of a particular Claim has agreed to different treatment, the
9 Bankruptcy Code requires that each holder of an Allowed Priority Tax Claim receive either (i)
10 payment in full on the Effective Date, or (ii) deferred cash payments over a period not exceeding
11 six (6) years after the date of assessment of such Claim of a value, as of the Effective Date, equal
12 to the allowed amount of the Claim.  Except to the extent the holder of a particular Claim has
13 agreed to different treatment, the Amended Bankruptcy Code requires that the holder of a
14 Allowed Priority Tax Claim receive on account of such Claim either (a) payment in full on the
15 Effective Date, or (b) regular installment payments in cash (x) of a total value, as of the Effective
16 Date of the Plan, equal to the allowed amount of such Claim, (y) over a period ending not later
17 than five (5) years after the commencement of a Debtor's case, and (z) in a manner not less
18 favorable than the most favored non-priority unsecured claim provided for under the Plan.

19 After the Disclosure Statement has been approved, the Debtors intend to take such
20 actions as are necessary or appropriate to have the Court determine the amount of any Allowed
21 Priority Tax Claims, which may include (a) filing unfiled tax returns for any Debtor, (b)
22 objecting to filed claims, (c) filing a proof of claim on behalf of any governmental entity that the
23 Debtors, in the exercise of their sound business judgment and in good faith, believe may have a
24 Priority Tax Claim against any of the Debtors, and (d) requesting the Court to determine under
25 Section 505(a)(1) of the Bankruptcy Code and the Amended Bankruptcy Code (as applicable), or
otherwise, the amount and priority of any tax, any interest or penalty relating to a tax, or any

28

1  addition to a tax that would constitute an Allowed Administrative Tax Claim.

2  On the Effective Date, the Debtors shall deposit into the separate Priority Tax Reserves

3  for Franchise and Franchise Survivor, Crossover Survivor, and Holding, respectively, an amount

4  which, in accordance with the applicable Debtors' best estimate after consultation with the

5  Committee, or as estimated by the Court, is sufficient to pay the ultimate amount of Allowed

6  Priority Tax Claims of (i) Franchise, the Franchise Flow-Through Debtor, Franchise Survivor

7  and the Franchise Merger Parties, (ii) Crossover Survivor and the Crossover Merger Parties, and

8  (iii) the SPE Debtors, respectively.    The Chief Restructuring Officer shall pay from the

9  applicable Priority Tax Reserve any Priority Tax Claim promptly after and only to the extent

10  such Claim becomes an Allowed Priority Tax Claim.

11  The following chart lists only the Priority Tax Claims that have been filed against the

12  Debtors (and not withdrawn), together with the treatment of Allowed Priority Tax Claims under

13  the Plan:

| **Description** | **Amount Owed Per Proofs of Claim** | **Treatment** |
| --- | --- | --- |
| United States Treasury, Internal Revenue Service (Franchise Debtors) | $0.00 (claims that were filed were withdrawn) | Paid in full from the applicable Priority Tax Reserve on the later of (1) the Effective Date, or (2) the date the Court allows such Claim by Final Order or such Claim is fully resolved in accordance with the Liquidating Trust Agreement. |
| United States Treasury, Internal Revenue Service (SPE Debtors) | $800 (based solely upon filed claims) | Paid in full from the Priority Tax Reserve for the SPE Debtors on the later of (1) the Effective Date, or (2) the date the Court allows such Claim by Final Order or such Claim is fully resolved in accordance with the Liquidating Trust Agreement. |

| | | |
|---|---|---|
| Franchise Tax Board (Franchise Classic Pictures, Inc. and Franchise Creative Corp.) | $8,522 (based solely upon filed claims) | Paid in full from the Priority Tax Reserve for Franchise Survivor and Franchise Merger Parties on the later of (1) the Effective Date, or (2) the date the Court allows such Claim by Final Order or such Claim is fully resolved in accordance with the Liquidating Trust Agreement. |
| Franchise Tax Board (SPE Debtors) | $10,532 (based solely upon filed claims) | Paid in full from the Priority Tax Reserve for the SPE Debtors on the later of (1) the Effective Date, or (2) the date the Court allows such Claim by Final Order or such Claim is fully resolved in accordance with the Liquidating Trust Agreement. |
| City of Los Angeles (SPE Debtors) | $1,074 (based solely upon filed claim) | Paid in full from the Priority Tax Reserve for the SPE Debtors on the later of (1) the Effective Date, or (2) the date the Court allows such Claim by Final Order or such Claim is fully resolved in accordance with the Liquidating Trust Agreement. |
| Any other Section 507(a)(8) Priority Tax Claims against any of the Debtors | None | Paid in full from the applicable Priority Tax Reserve(s) on the later of (1) the Effective Date, or (2) the date the Court allows such Claim by Final Order or such Claim is fully resolved in accordance with the Liquidating Trust Agreement. |
| **Total** | **$20,928** | |

The amount of Allowed Priority Tax Claims is not known, and may be significantly higher or lower than the amounts shown in the chart.

C.    **Classified Claims and Interests**

1.    **Classes of Secured Claims**

On the Effective Date, the Debtors shall deposit into a separate Disputed Secured Claim Reserve for each Debtor against which proofs of claim asserting Secured Claims an amount which, in accordance with the applicable Debtor's best estimate after consultation with the

30

Committee, or as estimated by the Court, is sufficient to pay the ultimate amount of Allowed Secured Claims against such Debtor. The Chief Restructuring Officer shall pay from the applicable Disputed Secured Claim Reserve any Secured Claim promptly after and only to the extent such Claim becomes an Allowed Secured Claim.

The following chart lists all of the Secured Claims filed against the Debtors, or not filed, but scheduled by any of the Debtors as undisputed, liquidated and non-contingent, that have not been disallowed by a Final Order, whether the Creditor is an insider, whether the Claim is impaired, and the treatment of the Allowed Secured Claim (if any) under the Plan.

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | Alleged Secured Claim of: ACTRA Performers Rights Society ("ACTRA") filed against Franchise but allegedly based upon security agreement between ACTRA and Avenging Film Productions Limited.<br><br>Alleged Collateral: Disputed<br><br>Alleged Value of Collateral: None<br><br>Alleged Priority of Security Interest: Disputed<br><br>Alleged Amount of Claim: $500,000 (disputed and untimely filed) | N | N<br><br>Not impaired; not entitled to vote on the Plan. | ACTRA's Allowed Secured Claim, if any, will be paid in cash from the Disputed Secured Claim Reserve for Franchise on the later of (i) the Effective Date, or (ii) the date upon which the Court allows such Claim by Final Order or such Claim is fully resolved in accordance with the Liquidating Trust Agreement. |

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 2 | Alleged Secured Claim of: Technicolor, Inc. ("Technicolor") filed against Franchise<br><br>Alleged Collateral: Physical film elements owned by Franchise (disputed)<br><br>Alleged Value of Collateral: None<br><br>Alleged Priority of Security Interest: Disputed<br><br>Alleged Amount of Claim: $314,296 (disputed) | N | N<br><br>Not impaired; not entitled to vote on the Plan. | Technicolor's Allowed Secured Claim, if any, will be paid in cash from the Disputed Secured Claim Reserve for Franchise on the later of (i) the Effective Date, or (ii) the date upon which the Court allows such Claim by Final Order or such Claim is fully resolved in accordance with the Liquidating Trust Agreement. |
| 3 | Alleged Secured Claim of: Los Angeles County Treasurer and Tax Collector ("LA County") filed against Nine Yards Two Productions, Inc. but relating to Nine Yards Entertainment<br><br>Alleged Collateral: Unspecified assets of Nine Yards Two Productions, Inc.<br><br>Alleged Value of Collateral: None<br><br>Alleged Priority of Security Interest: Disputed<br><br>Alleged Amount of Claim: $1,882 (disputed) | N | N<br><br>Not impaired; not entitled to vote on the Plan. | LA County's Allowed Secured Claim, if any, will be paid in cash from the Disputed Secured Claim Reserve for Nine Yards Two Productions, Inc. on the later of (i) the Effective Date, or (ii) the date upon which the Court allows such Claim by Final Order or such Claim is fully resolved in accordance with the Liquidating Trust Agreement. |

Case 1:05-bk-13855-MT    Doc 1225    Filed 01/09/10    Entered 01/09/10 17:21:14    Desc
Main Document    Page 33 of 107



| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|----------------|-----------|
| 4 | Alleged Secured claim of: Any other entity claiming a lien upon or security interest in any remaining assets any of the Franchise Debtors. Alleged Collateral: Unknowu Alleged Value of Collateral: Unknown Alleged Priority of Security Interest: Unknown Alleged Amount of Claim: Unknown | N | N Not impaired; not entitled to vote on the Plan. | To the extent there are any Class 4 Claims and any such Claims are determined by Final Order of the Court to be Allowed Secured Claims, each such Class 4 Claim will be deemed to have been placed in a separate subclass within Class 4, and each Allowed Secured Claim, if any, will be paid in cash from the Disputed Secured Claim Reserve(s) applicable to the Debtor(s) against which the holder of a Class 4 Claim is found to hold an Allowed Secured Claim on the later of (i) the Effective Date, or (ii) the date upon which the Court allows such Claim by Final Order or such Claim is fully resolved in accordance with the Liquidating Trust Agreement. To the extent any Class 4 Claim is allowed as a General Unsecured Claim, such Class 4 Claim will be paid in accordance with the treatment of other General Unsecured Claims as set forth below. |

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 5 | Alleged Secured claim of: Any other entity claiming a lien upon or security interest in any remaining assets of any of the SPE Debtors. Alleged Collateral: Unknown Alleged Value of Collateral: Unknown Alleged Priority of Security Interest: Unknown Alleged Amount of Claim: Unknown | N | N Not impaired; not entitled to vote on the Plan. | To the extent there are any Class 5 Claims and any such Claims are determined by Final Order of the Court to be Allowed Secured Claims, each such Class 5 Claim will be deemed to have been placed in a separate subclass within Class 5, and each Allowed Secured Claim, if any, will be paid in cash from the Disputed Secured Claim Reserve(s) applicable to the Debtor(s) against which the holder of a Class 5 Claim is found to hold an Allowed Secured Claim on the later of (i) the Effective Date, or (ii) the date upon which the Court enters a Final Order determining the allowed amount, if any, of the relevant Class 5 Secured Claim. To the extent any Class 5 Claim is allowed as a General Unsecured Claim, such Class 5 Claim will be paid in accordance with the treatment of other General Unsecured Claims as set forth below. |

## 2. Classes of Priority Claims

Allowed Priority Claims are entitled to treatment as follows: the Bankruptcy Code and the Amended Bankruptcy Code both require that each holder of such a Claim receives cash on the Effective Date equal to the allowed amount of such Claim. However, a class of Priority Claims may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the amount of each such Allowed Priority Claim.

On the Effective Date, the Debtors shall deposit into the separate Priority Claim Reserves for the Franchise Debtors and the SPE Debtors, respectively, an amount which, in accordance with the applicable Debtors' best estimate after consultation with the Committee, or as estimated

by the Court, is sufficient to pay the ultimate amount of Allowed Priority Claims of the Franchise Debtors and the SPE Debtors, respectively. The Chief Restructuring Officer shall pay from the applicable Priority Claim Reserve any Priority Claim promptly after and only to the extent such Claim becomes an Allowed Priority Claim.

The following chart lists all of the Priority Claims filed against the Debtors, or not filed but scheduled by any of the Debtors as undisputed, liquidated and non-contingent, that have not been disallowed by a Final Order, whether the Creditor is an insider, whether the Claim is impaired, and the treatment of Allowed Priority Claims (if any) under the Plan:

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 6 | Priority Claims of MPIPHP against the certain Franchise Debtors and certain SPE Debtors<br><br>Alleged Amount of Priority Claims: $272,796 (disputed as to amount and entitlement to priority and allocation among the Debtors, if allowed) | N | N<br><br>Not impaired; not entitled to vote on the Plan. | To the extent there are any Allowed Priority Claims of MPIPHP, such Allowed Class 6 Claim will be paid in full from the appropriate Priority Claim Reserve(s) on the later of (1) the Effective Date, or (2) the date the Court allows such Claim by Final Order or such Claim is fully resolved in accordance with the Liquidating Trust Agreement. |
| 7 | Priority Claims of Film Musicians against certain Franchise Debtors and certain SPE Debtors<br><br>Alleged Amount of Priority Claims: $417,303 (disputed as to amount and entitlement to priority and allocation among the Debtors, if allowed) | N | N<br><br>Not impaired; not entitled to vote on the Plan | To the extent there are any Allowed Priority Claims of the Film Musicians, each such Allowed Class 7 Claim will be paid in full from the appropriate Priority Claim Reserve(s) on the later of (1) the Effective Date, or (2) the date the Court allows such Claim by Final Order or such Claim is fully resolved in accordance with the Liquidating Trust Agreement. |

| 8 | Priority Claim of Mitchell Kapner ("Kapner") against Nine Yards Productions, LLC<br><br>Estimated Amount of Priority Claim:<br>$542,000 (disputed as to amount and entitlement to priority) | N | N<br><br>Not impaired; not entitled to vote on the Plan | To the extent there is any Allowed Priority Claim of Kapner, such Allowed Class 8 Claim will be paid in full from the Priority Plan Reserve for the Franchise Debtors on the later of (1) the Effective Date, or (2) the date the Court allows such Claim by Final Order or such Claim is fully resolved in accordance with the Liquidating Trust Agreement. |

## 3. Classes of Allowed Unsecured Claims

The following chart describes the Plan's treatment of the classes containing the Debtors'

Allowed Unsecured Claims:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 9 | All General Unsecured Claims against any of the Debtors.<br><br>Estimated Aggregate Amount of Class 10 Allowed General Unsecured Claims:<br>$ 20,000,000 est.[1] | Y<br><br>Impaired; Allowed Claims in this class are entitled to vote on the Plan. | Allowed General Unsecured Claims will be paid by the Liquidating Trustee on a pro rata basis from the Distribution Funds as described below in the treatment of Class 10. |
| 10 | The Allowed Intertainment Claim<br><br>Amount:<br>$117,690,000 (per Intertainment Settlement Agreement) | Y<br><br>Impaired; allowed claims in this class are entitled to vote on the Plan. | On the Effective Date, the Allowed Intertainment Claim shall be allowed, and any and all other claims of Intertainment against any of the Debtors other than the Allowed Intertainment Claim shall be disallowed.<br><br>The Allowed Intertainment Claim shall be paid from the Distribution Funds. The Threshold Distribution shall be divided so that the percentage recovery on the Allowed General Unsecured Claims (Class 10) shall be 2.2 times the percentage recovery on the Allowed Intertainment Claim to result in the |

---

[1] There have been many claims filed by parties asserting a right to payment based upon participation in the profits of specific films. Most, if not all, of these participation claims are unliquidated and contingent and relate to the profitability of individual films. Based upon the facts available to the Debtors, it is unlikely that these claimants will be entitled to any recovery based upon their respective participation rights due to the lack of profitability of the films to which they relate, and the Debtors have successfully objected to several of these claims.

Adjusted Recovery.

In the event that the amount of cash available for distribution to Allowed Unsecured Claims under the Plan results in an Excess Distribution, the Excess Distribution shall be distributed to holders of Allowed General Unsecured Claims in Class 9 and the Class 10 Allowed Intertainment Claim on a *pro rata* basis without adjustment.

Prior to making any distribution on Allowed Unsecured Claims, the Liquidating Trustee shall comply with Section 1.b(v) of the Intertainment Settlement Agreement.

On the Effective Date, the releases set forth in Section 2.a and b of the Intertainment Settlement Agreement shall become effective and shall apply to and be given by and to the SPE Debtors to the same extent as the Franchise Debtors. Intertainment shall dismiss any litigation (including arbitration) claims then pending against any of the Debtors. This shall include but is not limited to any claims brought by Intertainment against any of the Franchise Debtors in the Driven Arbitration. Likewise, the Debtors shall dismiss any litigation (including arbitration) claims then pending which were brought by any of the Debtors against Intertainment or Ruediger Baeres. With respect to the Intertainment Litigation, Intertainment and the Franchise Debtors that are parties thereto shall dismiss any and all pending post-judgment motions or appeals and take no further action to prosecute the Intertainment Litigation. All other provisions of the Intertainment Settlement Agreement that are contingent upon the Effective Date occurring shall be immediately implemented on the Effective Date with no further action by any party to the Intertainment Settlement Agreement, the Debtors or the Court.

### 4.    **Classes of Intercompany Claims**

The Debtors shall request, in conjunction with the Court's consideration of confirmation

1  of the Plan, that the Court make findings and conclusions that, on or before the date the Original

2  Debtors filed their chapter 11 petitions, (a) the activities of the Debtors in developing, producing

3  and distributing filmed entertainment were controlled by Franchise and were conducted on

4  behalf of Franchise; (b) separate books and records were not kept for the various Debtors other

5  than Franchise; (c) all activities of the Debtors other than Franchise should be treated as the

6  activities of Franchise and recorded on Franchise's books and records; and, accordingly, (d)

7  there are no Intercompany Claims among the Debtors.

8      Based thereon, the following chart describes the Plan's treatment of the classes

9  containing all of the Intercompany Claims:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 11 | Franchise Intercompany Claims, if any<br><br>Estimated Amount of Class 11 Intercompany Claims: Unknown | Y<br><br>Impaired; holders of Claims in this class are not entitled to vote on the Plan because they are deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code. | On the Effective Date, all Franchise Intercompany Claims shall be extinguished and the holders of Franchise Intercompany Claims shall receive nothing on account of such Claims. |
| 12 | SPE Intercompany Claims, if any<br><br>Estimated Amount of Class 12 Intercompany Claims: Unknown | Y<br><br>Impaired; holders of Claims in this class are not entitled to vote on the Plan because they are deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code. | On the Effective Date, all SPE Intercompany Claims shall be extinguished and the holders of SPE Intercompany Claims shall receive nothing on account of such Claims. |

| 13 | Franchise/SPE Intercompany Claims, if any<br><br>Estimated Amount of Class 13 Intercompany Claims: Unknown | Y<br><br>Impaired; holders of Claims in this class are not entitled to vote on the Plan because they are deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code. | On the Effective Date, all Franchise/SPE Intercompany Claims shall be extinguished, and the holders of Franchise/SPE Intercompany Claims shall receive nothing on account of such Claims. |

## 5.    Classes of Interest Holders

Interest holders are the entities that hold an ownership interest (i.e., equity interest) in any of the Debtors. The following chart describes the Plan's treatment of the classes of interests:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 14 | Equity interests in any of the Franchise Merger Parties | Y<br><br>Impaired; holders of Class 14 interests are not entitled to vote on the Plan because they are deemed to have not accepted the Plan pursuant to Section 1126(g) of the Bankruptcy Code. | Class 14 interest holders will not receive any distribution or retain any property under the Plan on account of their interests. On the Effective Date, all Class 14 interests shall be cancelled and the Franchise Merger Parties will be merged into Franchise Survivor notwithstanding any provision of otherwise applicable non-bankruptcy law that would restrict or condition such merger upon the taking of any action, the maintenance of the corporate status of any of the Franchise Merger Parties or Franchise Survivor, the filing of any document with any governmental agency, or for any other reason. |

| 15 | Equity interests in any of the SPE Debtors other than Holding. | Y<br><br>Impaired; holders of Class 15 interests are not entitled to vote on the Plan because they are deemed to have not accepted the Plan pursuant to Section 1126(g) of the Amended Bankruptcy Code. | Class 15 interest holders will not receive any distribution or retain any property under the Plan on account of their interests. On the Effective Date, all Class 15 interests will be cancelled and the SPE Debtors (other than Holding) will be merged into Holding notwithstanding any provision of otherwise applicable non-bankruptcy law that would restrict or condition such merger upon the taking of any action, the maintenance of the corporate status of any of the SPE Debtors, the filing of any document with any governmental agency, or for any other reason. |
|---|---|---|---|
| 16 | Equity Interests in any of the Crossover Merger Parties | Y<br><br>Impaired; holders of Class 16 interests are not entitled to vote on the Plan because they are deemed to have not accepted the Plan pursuant to Section 1126(g) of the Amended Bankruptcy Code. | Class 16 interest holders will not receive any distribution or retain any property under the Plan on account of their interests. On the Effective Date, all Class 16 interests shall be cancelled and the Crossover Merger Parties will be merged into Crossover Survivor notwithstanding any provision of otherwise applicable non-bankruptcy law that would restrict or condition such merger upon the taking of any action, the maintenance of the corporate status of any of the Crossover Merger Parties or Crossover Survivor, the filing of any document with any governmental agency, or for any other reason. |
| 17 | Equity Interests in Franchise Flow-Through Debtor | Y<br><br>Impaired; holders of Class 17 interests are not entitled to vote on the Plan because they are deemed to have not accepted the Plan pursuant to Section 1126(g) of the Amended Bankruptcy Code. | Class 17 interest holders will not receive any distribution or retain any property under the Plan on account of their interests. On the Effective Date, all Class 17 interests shall be cancelled and the Franchise Flow-Through Debtor will be merged into Franchise notwithstanding any provision of otherwise applicable non-bankruptcy law that would restrict or condition such merger upon the taking of any action, the maintenance of the corporate status of any of the Franchise Flow-Through Debtor or Franchise, the filing of any document with any governmental agency, or for any other reason. |

| 18 | Equity Interests in Crossover Survivor | Y<br><br>Impaired; holders of Class 18 interests are not entitled to vote on the Plan because they are deemed to have not accepted the Plan pursuant to Section 1126(g) of the Amended Bankruptcy Code. | Class 18 interest holders will not receive any distribution or retain any property under the Plan on account of their interests. On the Effective Date, all Class 19 interests shall be cancelled. As soon as practicable after substantial consummation of the Plan, Crossover Survivor shall be dissolved. |
|---|---|---|---|
| 19 | Equity Interests in Franchise Survivor | Y<br><br>Impaired; holders of Class 19 interests are not entitled to vote on the Plan because they are deemed to have not accepted the Plan pursuant to Section 1126(g) of the Amended Bankruptcy Code. | Class 19 interest holders will not receive any distribution or retain any property under the Plan on account of their interests. On the Effective Date, all Class 19 interests shall be cancelled. As soon as practicable after substantial consummation of the Plan, Franchise Survivor shall be dissolved. |
| 20 | Equity Interests in Franchise | Y<br><br>Impaired; holders of Class 20 interests are not entitled to vote on the Plan because they are deemed to have not accepted the Plan pursuant to Section 1126(g) of the Amended Bankruptcy Code. | Class 20 interest holders will not receive any distribution or retain any property under the Plan on account of their interests. On the Effective Date, all Class 20 interests shall be cancelled. As soon as practicable after substantial consummation of the Plan, Franchise shall be dissolved. |
| 21 | Equity Interests in Holding | Y<br><br>Impaired; holders of Class 21 interests are not entitled to vote on the Plan because they are deemed to have not accepted the Plan pursuant to Section 1126(g) of the Amended Bankruptcy Code. | Class 21 interest holders will not receive any distribution or retain any property under the Plan on account of their interests. On the Effective Date, all Class 21 interests shall be cancelled. As soon as practicable after substantial consummation of the Plan, Holding shall be dissolved. |

41

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

### III.

### MEANS OF EFFECTUATING THE PLAN

**A.    Implementation of the Plan**

    **1.    Funding for the Plan**

All disbursements under the Plan on account of Allowed Administrative Claims, Allowed Administrative Tax Claims, Allowed Priority Tax Claims, Allowed Secured Claims and Allowed Priority Claims will be made by the Chief Restructuring Officer from the Special Reserve Accounts and all disbursements under the Plan on account of Allowed Unsecured Claims will be made by the Liquidating Trustee from the Trust Property. As of the date hereof, the principal Estate Claims that remain are the claims of some of the Debtors to receive the Japanese TV Money, the claims of some or all of the Debtors to the Comerica Turnover Recovery, the claims of some or all of the Debtors to the Recovered Guild Funds, and the claims of the SPE Debtors to the Commerzbank Contingent Recovery. Due to the uncertain nature of litigation, including the time and expense related thereto, the Debtors cannot reasonably estimate the Estate Claims Recoveries at this time or the date upon which they will be recovered. However, the Estate Claims Recoveries will be deposited in the Liquidating Trust and, subject to the terms of this Plan and the Liquidating Trust Agreement, shall be available for distributions to Creditors holding Allowed Unsecured Claims.

    **2.    Mergers and Consolidations; Immediate Closing of Certain Debtors'**
    **Cases**

The Debtors shall continue to operate as debtors and debtors in possession, subject to the control of the Chief Restructuring Officer, during the period from entry of the order confirming the Plan until the Effective Date. On the Effective Date, the following transactions shall occur and shall be deemed to occur in the following order.

First, the Debtors shall establish in the Post-Effective Date Estate of each applicable Debtor, and fund as provided in the Plan, a Disputed Secured Claim Reserve.

1    Second, notwithstanding any otherwise applicable non-bankruptcy law, pursuant to

2    Section 1123(a)(5)(C) of the Bankruptcy Code or the Amended Bankruptcy Code (as

3    applicable), the following mergers shall occur and be effective:

4    (1)    all of the Franchise Merger Parties shall be merged into Franchise

5    Survivor;

6    (2)    the Franchise Flow-Through Debtor shall be merged into

7    Franchise;

8    (3)    all of the SPE Debtors other than Holding shall be merged into

9    Holding; and

10    (4)    all of the Crossover Merger Parties shall be merged into Crossover

11    Survivor.

12    Pursuant to Section 1123(a)(5)(C) of the Bankruptcy Code and the Amended Bankruptcy Code

13    (as applicable), the mergers described above shall occur and be effective on the Effective Date

14    notwithstanding any otherwise applicable nonbankruptcy law, and the Confirmation Order shall

15    require all governmental agencies, at the written request of the Chief Restructuring Officer on

16    behalf of the Debtors, to take any and all actions necessary or appropriate to reflect and further

17    effectuate the mergers as of the Effective Date as a matter of applicable nonbankruptcy law.

18    After the above-described mergers: (a) all of the property, assets, rights, powers and

19    privileges, including the Estate Claims and the Disputed Secured Claim Reserves, of the

20    Franchise Merger Parties shall belong to Franchise Survivor, and all Claims against the Estates

21    of the Franchise Merger Parties shall be Claims against the Estate of Franchise Survivor; (b) all

22    of the property, assets, rights, powers and privileges, including the Estate Claims and the

23    Disputed Secured Claim Reserves, of the Franchise Flow-Through Debtor shall belong to

24    Franchise, and all Claims against the Estates of the Franchise Flow-Through Debtor shall be

25    Claims against the Estate of Franchise; (c) all of the property, assets, rights, powers and

privileges, including the Estate Claims and the Disputed Secured Claim Reserves, of the SPE

43

1  Debtors other than Holding shall belong to Holding, and all Claims against the Estates of the
2  SPE Debtors other than Holding shall be Claims against the Estate of Holding; and (d) all of the
3  property, assets, rights, powers and privileges, including the Estate Claims and the Disputed
4  Secured Claim Reserves, of the Crossover Merger Parties shall belong to Crossover Survivor,
5  and all claims against the Estates of the Crossover Merger Parties shall be Claims against the
6  Estate of Crossover Survivor.

7       Third, Franchise (for itself and Franchise Survivor), Crossover Survivor and Holding
8  shall establish an Administrative Tax Claim Reserve and a Priority Tax Reserve in their
9  respective Post-Effective Date Estates, which shall be funded as provided in the Plan.

10       Fourth, Franchise and Holding shall establish an Administrative Claim Reserve and
11  Priority Claim Reserve in their respective Post-Effective Date Estates, which shall be funded as
12  provided in the Plan,.

13       Fifth, each of the Survivor Entities shall establish a Post-Effective Date Estate Reserve in
14  its Post-Effective Date Estate, which shall be funded as provided in the Plan. In the event a Post-
15  Effective Date Estate Reserve does not hold sufficient funds to pay in full the fees and expenses
16  incurred and payable by the Post-Effective Date Estate in accordance with the Bankruptcy Code
17  or the Amended Bankruptcy Code (as applicable) and the Bankruptcy Rules,, the Liquidating
18  Trustee shall transfer into such Post-Effective Date Estate Reserve from the Trust Property an
19  amount sufficient to pay such fees and expenses.

20       Sixth, the Liquidating Trust shall be established and, after establishment and funding of
21  the Special Reserves and the Post-Effective Date Estate Reserves, the Survivor Entities shall
22  transfer all of their remaining property, assets, rights, powers and privileges, including all of the
23  Estate Claims, to the Liquidating Trust to be administered in accordance with this Plan and the
24  Liquidating Trust Agreement.

25       As a consequence thereof and of this provision and other provisions of this Plan, after the
Effective Date, among other things:

a.      All Intercompany Claims (except the Franchise Administrative Claims, if any) shall be extinguished;

b.      All Administrative Claims, Administrative Tax Claims, Priority Tax Claims, Secured Claims, Priority Claims and Priority Tax Claims asserted against Franchise or the Franchise Flow-Through Debtor shall be resolved in the Case for Franchise; all Administrative Claims, Administrative Tax Claims, Priority Tax Claims, Secured Claims, Priority Claims and Priority Tax Claims asserted against any of Franchise Survivor or the Franchise Merger Parties shall be resolved in the Case for Franchise Survivor; all Administrative Claims, Administrative Tax Claims, Priority Tax Claims, Secured Claims, Priority Claims and Priority Tax Claims asserted against any of Crossover Survivor or the Crossover Merger Parties shall be resolved in the Case for Crossover Survivor; and all Administrative Claims, Administrative Tax Claims, Priority Tax Claims, Secured Claims, Priority Claims and Priority Tax Claims asserted against any of the SPE Debtors shall be resolved in the Case for Holding;

c.      all General Unsecured Claims shall be resolved in the Case for Franchise;

d.      no Allowed Secured Claim shall be improved as a result of the mergers and consolidations provided for herein and, therefore, any Secured Claim asserted against one or more of the Debtors shall be allowed and treated as an Allowed Secured Claim on a Debtor-by-Debtor basis, *i.e.,* based only on the value of the property (or debt subject to setoff) securing such Claim that is the property of the Estate of the Debtor (immediately prior to the Effective Date) as to which such Secured Claim is an Allowed Secured Claim; provided further that, if a Secured Claim is asserted against more than one Debtor, the total amount that may be distributed under the Plan on account of such Allowed Secured Claim, shall be limited by the amount that would be payable if the Debtors were treated as one entity with a single debt;

e.      any Administrative Claim or Priority Claim against one or more of the Franchise Debtors shall be allowed and treated as a single Administrative Claim or Priority

45

1   Claim against all of the Franchise Debtors, and any Administrative Claim asserted against one or

2   more of the SPE Debtors shall be allowed and treated as a single Administrative Claim or

3   Priority Claim against all of the SPE Debtors; provided further that, if an Administrative Claim

4   or a Priority Claim is asserted against more than one Debtor, the aggregate amount that may be

5   distributed under the Plan on account of that Administrative Claim or Priority Claim shall not

6   exceed the amount that would be payable if that Administrative Claim or Priority Claim were

7   allowed against only one of the Debtors;

8         f.  any Administrative Tax Claim or Priority Tax Claim against one or

9   more of the (i) SPE Debtors, (ii) Franchise, the Franchise Flow-Through Debtor, Franchise

10  Survivor and the Franchise Merger Parties, or (iii) Crossover Survivor and the Crossover Merger

11  Parties shall be allowed and treated as a single Priority Tax Claim against all of the SPE Debtors,

12  Franchise, the Franchise Flow-Through Debtor, Franchise Survivor and the Franchise Merger

13  Parties, or Crossover Survivor and the Crossover Merger Parties, as the case may be; provided,

14  however, that if an Administrative Tax Claim or a Priority Tax Claim is asserted against more

15  than one Debtor, the aggregate amount that may be distributed under the Plan on account of the

16  Administrative Tax Claim or the Priority Tax Claim shall not exceed the amount that would be

17  payable if that Allowed Administrative Tax Claim or the Allowed Priority Tax Claim, as the case

18  may be, were allowed against only one of the Debtors;

19        g.  any General Unsecured Claim or the Allowed Intertainment Claim

20  against one or more of the Debtors shall be allowed and treated as a single Claim in the allowed

21  amount of the General Unsecured Claim or the Allowed Intertainment Claim against one of the

22  Debtors and shall be paid by the Liquidating Trust from the Distribution Funds, the Disputed

23  Unsecured Claim Reserve or the Unclaimed Distributions Reserve, as appropriate;

24        h.  all equity interests in the Debtors shall be cancelled;

25        i.  the Cases for the Franchise Merger Parties, the Crossover Merger

Parties, the Franchise Flow-Through Debtor and the SPE Debtors other than Holding shall be

46

1  closed as soon as practicable after the Effective Date;

2        j.    the Liquidating Trust shall be administered in the Case for
3  Franchise;

4        k.    fees payable to the OUST for any period after the Effective Date
5  shall be paid by the Chief Restructuring Officer from the Post-Effective Date Estate Reserves in
6  the Cases for Franchise, Franchise Survivor, Crossover Survivor and Holding based on
7  distributions made by the Chief Restructuring Officer from those Post-Effective Date Estates,
8  respectively;

9        l.    the Cases for Franchise, Franchise Survivor, Crossover Survivor
10  and Holding shall be jointly administered;

11        m.    the Case for each of Franchise Survivor, Crossover Survivor and
12  Holding shall remain open and their respective Post-Effective Date Estates shall remain open
13  therein until all Claims to be paid from the Special Reserves maintained in their respective Post-
14  Effective Date Estates have been fully resolved and the allowed amounts thereof paid.  When all
15  such Claims have been finally resolved and all of the allowed Claims have been paid from a
16  Special Reserve, then any funds remaining in the Special Reserve shall be transferred to the
17  Liquidating Trust, and when the fees and expenses incurred by the Post-Effective Date Estate
18  have been paid from the applicable Post-Effective Date Estate Reserve in a Case, then any funds
19  remaining in the Post-Effective Date Estate Reserve or otherwise in the Post-Effective Date
20  Estate shall be transferred to the Liquidating Trust.  When all such payments and transfers have
21  been made, each Case shall be closed;

22        n.    the Case for Franchise shall remain open and its Post-Effective
23  Date Estate shall remain open therein until all Claims to be paid from the Special Reserves
24  maintained in the Post-Effective Date Estate of Franchise have been fully resolved and the
25  allowed amounts thereof paid, the fees and expenses incurred by the Post-Petition Estate have
been paid from the Post-Effective Reserve in the Case for Franchise, and all Disputed Unsecured

47

1  Claims have been finally resolved.  When all Claims to be paid from a Special Reserve have

2  been finally resolved and the allowed Claims have been paid from the Special Reserve, then any

3  funds remaining in the Special Reserve shall be transferred to the Liquidating Trust, and when

4  the fees and expenses incurred by the Post-Effective Date Estate have been paid from the Post-

5  Effective Date Estate Reserve, then any funds remaining in the Post-Effective Date Estate

6  Reserve or otherwise in the Post-Effective Date Estate shall be transferred to the Liquidating

7  Trust.  When all such payments and transfers have been made and all Disputed Unsecured

8  Claims have been fully resolved, the Case shall be closed;

9       The Debtors believe that the above-described mergers and consolidation of the Debtors,

10  as described herein – whereby all of the assets, property, rights, powers and privileges of all of

11  the Debtors are available to all pay allowed Claims against any of the Debtors in accordance with

12  their priorities -- is appropriate under the facts and circumstances of these Cases and applicable

13  legal authorities.

14              **3.    Distributions.**

15       Only holders of Allowed Administrative Claims, Allowed Administrative Tax Claims

16  and Allowed Claims shall receive distributions under the Plan.  Allowed Administrative Claims

17  shall be paid by the Chief Restructuring Officer from the Administrative Claim Reserves,

18  Allowed Administrative Tax Claims shall be paid by the Chief Restructuring Officer from the

19  Administrative Tax Claim Reserves, Allowed Priority Tax Claims shall be paid by the Chief

20  Restructuring Officer from the Priority Tax Reserves, Allowed Secured Claims shall be paid by

21  the Chief Restructuring Officer from the Secured Claim Reserves, and Allowed Priority Claims

22  shall be paid by the Chief Restructuring Officer from the Priority Claim Reserves.  In the event a

23  Special Reserve does not hold sufficient funds to pay in full an allowed Claim entitled to

24  payment therefrom, the Liquidating Trustee shall transfer into such reserve from the Trust

25  Property an amount sufficient to pay such Claim.  Allowed Unsecured Claims shall be paid by

the Liquidating Trustee from the Distribution Funds, the Disputed Unsecured Claim Reserve or

1 | the Unclaimed Distributions Reserve, as appropriate.

2 |     Distributions under the Plan shall be made in United States dollars, by check drawn on a
3 | bank located in the United States or, at the option of the Chief Restructuring Officer or the
4 | Liquidating Trustee, as the case may be, by wire transfer. The delivery of distributions by check
5 | to a holder of an Allowed Claim shall be made by first class United States mail at the address set
6 | forth on the proof of claim filed by such holder or as listed in the Schedules if no proof of claim
7 | has been filed, or another address if the holder of the Claim has notified the Debtor (on or before
8 | the Effective Date) or the Chief Restructuring Officer and the Liquidating Trustee (as
9 | appropriate) (after the Effective Date) of a change of address in a writing received by the proper
10 | party at least thirty (30) days prior to the distribution.

11 |     Any and all checks issued by the Chief Restructuring Officer in respect of Allowed
12 | Claims, Allowed Administrative Claims or Allowed Administrative Tax Claims shall be null and
13 | void if not cashed within six (6) months of the date of issuance thereof. Any and all checks
14 | issued by the Liquidating Trustee in respect of Allowed Unsecured Claims shall be null and void
15 | if not cashed by the earlier of six (6) months after the date of issuance thereof and thirty (30)
16 | days before the final distribution to holders of Allowed Unsecured Claims from the Liquidating
17 | Trust. The holder of the Claim with respect to which such check was originally issued may
18 | make a written request to the Liquidating Trustee or the Chief Restructuring Officer (as
19 | appropriate) for re-issuance of any check; provided, however, that any such request must be
20 | made to the Chief Restructuring Officer on or before six (6) months after issuance of the first
21 | check or to the Liquidating Trustee in accordance with the provisions of the Liquidating Trust
22 | Agreement.     When the applicable deadline has passed, any Allowed Claim, Allowed
23 | Administrative Claim or Allowed Administrative Tax Claim with respect to which any uncashed
24 | check has been issued shall be discharged and forever barred from any distributions under the
25 | Plan, and the cash represented by the null and void check shall be transferred to the Liquidating
    Trust by the Chief Restructuring Officer (if applicable) and treated in accordance with the

49

1   Liquidating Trust Agreement.

2        If any distribution to the holder of an Allowed Claim, Allowed Administrative Claim or
3   Allowed Administrative Tax Claim is returned as undeliverable, then no further distributions to
4   such holder shall be made unless and until the holder notifies the Chief Restructuring Officer or
5   the Liquidating Trustee, as appropriate, in writing of such holder's current address, at which time
6   all missed distributions on account of such Claim shall be made to such holder without interest;
7   provided, however, that any such notification must be made to the Chief Restructuring Officer on
8   or before six (6) months after the date of distribution at issue or to the Liquidating Trustee in
9   accordance with the provisions of the Liquidating Trust Agreement.  Neither the Liquidating
10  Trustee nor the Chief Restructuring Officer shall be required to attempt to locate any holder of a
11  Claim.  When the applicable deadline has passed, any Allowed Claim, Allowed Administrative
12  Claim or Allowed Administrative Tax Claim in respect of the undeliverable distribution shall be
13  discharged and forever barred from any distributions under the Plan and the funds involved in
14  the undeliverable distribution shall be transferred to the Liquidating Trust by the Chief
15  Restructuring Officer (if applicable) and treated in accordance with the Liquidating Trust
16  Agreement.

17       After (i) the Court, to the extent necessary, enters Final Orders determining the amount, if
18  any, of all Allowed Administrative Claims, Allowed Administrative Tax Claims or Allowed
19  Claims, as applicable, to be paid from an Administrative Claim Reserve, an Administrative Tax
20  Claim Reserve, a Priority Tax Reserve, a Secured Claim Reserve or a Priority Claim Reserve, or
21  such Claims are otherwise fully resolved as set forth in the Liquidating Trust Agreement and (ii)
22  payments have been made on all Allowed Claims to be paid from such Reserve, any portion of
23  such Reserve remaining shall be removed from such Reserve and transferred by the Chief
24  Restructuring Officer to the Liquidating Trust as part of the Trust Property.

25       Distributions to holders of Allowed Unsecured Claims shall be made by the Liquidating
    Trustee from the Distribution Funds, the Disputed Unsecured Claim Reserve or the Unclaimed

1  Distributions Reserve, as provided in the Liquidating Trust Agreement.  Distributions that would

2  otherwise be made to any holder of a Disputed Unsecured Claim, based upon the amount that

3  would be payable if such Disputed Unsecured Claim were allowed in full based on the amount

4  that would be payable if such Disputed Unsecured Claim were allowed in full, which shall be

5  based on the face amount of the Disputed Unsecured Claim or, if the face amount is unknown,

6  the Liquidating Trustee's best estimate after consultation with the Oversight Committee of the

7  amount of the Disputed Unsecured Claim that will be allowed, unless otherwise ordered by the

8  Court shall be placed in the Disputed Unsecured Claim Reserve pending entry of a Final Order

9  by the Bankruptcy Court, or other final resolution as permitted under the Liquidating Trust

10  Agreement, determining the allowed amount, if any, of such Disputed Unsecured Claim.  Once

11  the allowed amount, if any, of a Disputed Unsecured Claim is so determined, those funds

12  allocable to the payment of such Allowed Unsecured Claim (or a lesser *pro rata* amount if the

13  amount of the Allowed Unsecured Claim is less than the amount based on which cash was

14  reserved in the Disputed Unsecured Claim Reserve) shall be released from the Disputed

15  Unsecured Claim Reserve and paid to the holder of such Allowed Unsecured Claim in

16  accordance with the Liquidating Trust Agreement.  Any additional amount held in the Disputed

17  Unsecured Claim Reserve on account of such Disputed Unsecured Claim that is remaining in the

18  Disputed Unsecured Claim Reserve after payment on account of such Allowed Unsecured Claim

19  shall be removed from the Disputed Unsecured Claims Reserve and become part of the Trust

20  Property available for other permitted purposes in accordance herewith and the Liquidating Trust

21  Agreement, including distribution to holders of Allowed Unsecured Claims.

22  **4.    Disbanding of Committee**

23  Upon the Effective Date, the Committee shall be released and discharged from its rights

24  and duties relating to the Franchise Cases, except with respect to final applications for fees and

25  expenses of professionals employed at the expense of any of the Estates and applications by

Committee members or professionals retained by them for reimbursement of expenses or

51

compensation. The professionals retained solely by the Committee shall not be entitled to compensation for any services rendered or expenses incurred after the Effective Date in their capacities as professionals for the Committee, except for those in connection with any final applications for fees and expenses by such professionals or any other professionals employed at the expense of the Estates or by Committee members or professionals employed by them for reimbursement of expenses or compensation. On or after the Effective Date, the Liquidating Trustee (subject to the provisions of the Liquidating Trust Agreement) or the Chief Restructuring Officer may retain any professional that has been employed by the Committee, and the Committee and the Debtors have waived any actual or potential conflict of interest that exists or could exist by virtue of the prior existence of the Committee or such professional's employment by the Committee.

5.    **Post-Confirmation Management**

(a)    **Management of Post-Effective Date Estates of Survivor Entities by the Chief Restructuring Officer**

On and after the Effective Date, in accordance with Article III.A.2 of the Plan, the bankruptcy estates of the Survivor Entities shall remain open as their respective Post-Effective Date Estates, consisting only of the Special Reserves and the Post-Effective Date Estate Reserves established pursuant to this Plan, all other assets, property, rights, powers and privileges of the Estates, including all of the Estate Claims, having been transferred to the Liquidating Trust. The Chief Restructuring Officer shall remain in control of the Post-Effective Date Estates of the Survivor Entities, subject to the terms of this Plan.

The Chief Restructuring Officer is responsible for the timely reporting with respect to, and payment of, fees incurred by the Post-Effective Date Estates for Franchise Survivor, Crossover Survivor and Holding pursuant to 28 U.S.C. § 1930(a)(6). The Chief Restructuring Officer shall prepare and distribute any reports or other information that may be required by the Court, the OUST or the Bankruptcy Rules or that the Chief Restructuring Officer or the

52

1   Liquidating Trustee determines are necessary or appropriate. If requested by the Liquidating

2   Trustee, the Chief Restructuring Officer shall cooperate with and assist the Liquidating Trustee

3   in connection the Liquidating Trustee's performance of its duties and exercise of its rights under

4   this Plan and the Liquidating Trust Agreement, including the preparation of any financial

5   statements or reports to be prepared or provided by the Liquidating Trustee. The Chief

6   Restructuring Officer shall serve the OUST with any and all pleadings, reports or documents that

7   it files with the Court after the Effective Date.

8                    **(b)    Creation of the Liquidating Trust.**

9           On the Effective Date, the Liquidating Trust Agreement shall be executed by all parties

10  thereto and, in accordance with Article III.A.2 above, (1) the Liquidating Trust shall be

11  established and (2) after the establishment and funding of the Special Reserves and the Post-

12  Effective Date Estate Reserves as provided herein, all of the Survivor Entities shall transfer all of

13  their respective remaining assets, property, rights, powers and privileges, including all of the

14  Estate Claims, to the Liquidating Trust to be administered in accordance with the Plan and the

15  Liquidating Trust Agreement for the benefit of holders of Allowed Unsecured Claims. The

16  Liquidating Trust is intended (i) to be treated, for federal income tax purposes, as a liquidating

17  trust within the meaning of Treasury Regulations section 301.7701-4(d) and Section 671 and 677

18  of the Internal Revenue Code, and (ii) to comply with the requirements of Revenue Procedure

19  94-45 (1994-2 CB 684) with no objective or authority to engage in the conduct of a trade or

20  business. The Liquidating Trust will be organized for the purpose of liquidating the Transferred

21  Assets and other Trust Property, including all of the Estate Claims, and pursuing the Estate

22  Claims, with no objective to continue or engage in the conduct of a trade or business. The

23  Liquidating Trust shall liquidate and distribute the Transferred Property and other Trust Property

24  in accordance with the Liquidating Trust Agreement as promptly as is reasonably practicable, in

25  an expeditious but orderly manner. As set forth in greater detail elsewhere in the Plan and in the

Liquidating Trust Agreement, the Liquidating Trust is not a successor to the Debtors for

1  purposes of incurring its liabilities.

2              (c)    **Appointment of the Liquidating Trustee.**

3          On the Effective Date, Sitrick Brincko Group, LLC shall become the Liquidating Trustee

4  and as such the manager, trustee and liquidating agent of the Liquidating Trust. The Liquidating

5  Trustee's compensation shall be based upon the number of hours spent by the officers and

6  employees of the Liquidating Trustee multiplied by the hourly rate normally charged by the

7  Liquidating Trustee for that officer's or employee's services.

8          The Liquidating Trustee shall administer the Liquidating Trust pursuant to the Plan and

9  the Liquidating Trust Agreement. The Liquidating Trustee shall act in accordance with the Plan

10  and the Liquidating Trust Agreement.    The Liquidating Trustee shall perform all of the

11  obligations of the Liquidating Trustee under the Plan and the Liquidating Trust Agreement. The

12  Liquidating Trustee shall have all of the rights, powers and duties set forth in the Plan or in the

13  Liquidating Trust Agreement.    The Liquidating Trustee shall serve for the duration of the

14  Liquidating Trust, subject to earlier resignation, removal or replacement as provided in the

15  Liquidating Trust Agreement.    The Liquidating Trustee shall serve without any bond.    If

16  requested by the Chief Restructuring Officer, the Liquidating Trustee shall cooperate with and

17  assist the Chief Restructuring Officer in connection the Chief Restructuring Officer's

18  performance of its duties and exercise of its rights under this Plan.

19              (d)    **Transfer of Property, Claims, Rights and Causes of Action to**

20                     **the Liquidating Trust.**

21          On the Effective Date, the Transferred Property shall be deemed to have been distributed

22  to the holders of Allowed Unsecured Claims and thereafter transferred to, and vested in, the

23  Liquidating Trust free and clear of any and all liens, Claims, encumbrances and interests of any

24  kind or nature, and shall be held in trust for the benefit of holders of Allowed Unsecured Claims,

25  subject to the provisions of the Plan and the Liquidating Trust Agreement. None of the Debtors,

their Estates or their Post-Effective Date Estates shall retain or hold any interest in the

1  Transferred Property, the Trust Property or the Liquidating Trust.

2            **(e)     Creation of the Oversight Committee.**

3            On the Effective Date, the Committee shall have the right to select two (2) or three (3)
4  persons (not necessarily existing Committee members), including Intertainment AG, to serve on
5  the Oversight Committee.  In the event the Committee is unable to name one (1) person willing
6  to serve on the Oversight Committee other than Intertainment AG, the Liquidating Trustee may,
7  with the written consent of Intertainment AG, waive the establishment of the Oversight
8  Committee.  The Oversight Committee shall have the rights, powers and duties set forth in this
9  Plan or the Liquidating Trust Agreement.

10           **(f)     Use, Sale or Other Disposition of Property.**

11           After the Effective Date, subject to oversight by the Oversight Committee as set forth
12 herein or in the Liquidating Trust Agreement, the Liquidating Trustee on behalf of the
13 Liquidating Trust may use, acquire, sell or otherwise dispose of the Transferred Property and the
14 Trust Property without supervision of, or approval by, the Court or the OUST and free of any
15 restrictions in the Bankruptcy Code, the Amended Bankruptcy Code or the Bankruptcy Rules,
16 except as otherwise set forth in the Plan or the Liquidating Trust Agreement.  Subject to an
17 alternative order of the Court, after notice and a hearing, (1) the Liquidating Trustee shall
18 preserve all of the Debtors' books and records until the later of (i) three (3) years following the
19 Effective Date and (ii) ninety (90) days after the final distribution from the Liquidating Trust is
20 made to the Holders, and (2) the Liquidating Trustee shall maintain and preserve the books and
21 records of the Liquidating Trust until four (4) years following the end of the taxable year in
22 which the final distribution from the Liquidating Trust is made to the Holders.

23           **(g)     Investigation and Prosecution of Claims and Objections to**
24                    **Claims.**

25           All Estate Claims are hereby retained and preserved and vested in the Liquidating Trust
as the representative of the Debtors' Estates under Section 1123(b)(3)(B) of the Bankruptcy

55

1  Code and the Amended Bankruptcy Code. The Liquidating Trustee shall investigate Estate
2  Claims and, subject to oversight by the Oversight Committee as set forth herein or in the
3  Liquidating Trust Agreement, the Liquidating Trustee shall have the authority, in its sole
4  discretion, to make decisions as to the pursuit, compromise or settlement of Estate Claims and
5  objections to Claims against any of the Debtors or their Estates without supervision of, or
6  approval by, the Court or the OUST; provided, however, that the Liquidating Trustee, in its sole
7  discretion, may seek Court authority to enter into any compromise or settlement of any Estate
8  Claims or objections to Claims.

9              **(h)    Bankruptcy Powers.**

10             The Liquidating Trust, as representative of the Debtors' Estates under Section
11  1123(b)(3)(B) of the Bankruptcy Code and the Amended Bankruptcy Code, shall have all of the
12  rights and remedies of the Debtors and their Estates under Sections 363, 365 and 501 to 558,
13  inclusive, of the Bankruptcy Code and the Amended Bankruptcy (as applicable), including all of
14  the Estate Claims. After the Effective Date, all rights, remedies, claims, powers, objections,
15  counterclaims, defenses, setoffs and causes of actions of the Debtors or their Estates, including
16  the Estate Claims, shall be filed and prosecuted in the name of the Liquidating Trustee on behalf
17  of the Liquidating Trust, provided, however, that any actions or matters initiated by any of the
18  Debtors before the Effective Date may, to the extent necessary, continue in the name of such
19  Debtor(s), but under the control of the Liquidating Trustee for the benefit of the Liquidating
20  Trust, and that the Liquidating Trustee may take any actions required by the Asset Purchase
21  Agreement between the SPE Debtors and MH Media Holding GmbH, dated as of October 28,
22  2009, in the name of Holding for itself or as successor of the other SPE Debtors. The mergers,
23  consolidations, transfers of property, assets, rights, powers and privileges, windings-up,
24  liquidations or dissolutions of the Debtors, their Estates or the Cases contemplated by the Plan
25  shall not: (i) create any Claim, including any Claim, right or cause of action, or any
    counterclaim, defense or objection that did not exist prior to such events; or (ii) eliminate any

Claim, including any Claim, right or cause of action, or any counterclaim, defense or objection, including the Estate Claims, or undo any merger or consolidation that existed prior to such events, except as set forth in the Plan.

### (i)    Employment of Employees and Professionals.

On and after the Effective Date, the Liquidating Trust shall employ and compensate such professionals, including any professionals employed prior to the Effective Date at the expense of the Estates, representatives and agents, including disbursing agents, as the Liquidating Trustee determines is necessary or appropriate to implement all of the provisions of the Plan and the Liquidating Trust Agreement, without any supervision of, or approval by, the Court or the OUST, except for oversight by the Oversight Committee as set forth herein or in the Liquidating Trust Agreement. In accordance with the Liquidating Trust Agreement, including oversight by the Oversight Committee as set forth herein or in the Liquidating Trust Agreement, the Liquidating Trustee shall be allowed to pay the fees and costs of professionals, representatives and agents employed by the Liquidating Trust without the requirement to file fee applications or seek approval of the Court.

### (j)    Review of and Objections to Claims.

From and after the Effective Date, the Liquidating Trustee, on behalf of the Liquidating Trust, shall be the sole party entitled to review and, where necessary or appropriate, object to Administrative Claims, Administrative Tax Claims or Claims of Creditors (other than Administrative Claims of professionals employed at the expense of any of the Debtors' Estates, as to which any party in interest may object), which shall thereafter be resolved in accordance with the Bankruptcy Code or the Amended Bankruptcy Code (as applicable) and the Bankruptcy Rules. However, for good cause shown, after notice and a hearing, other parties in interest (including the Oversight Committee) may be authorized by the Court to object to specific Claims asserted against any of the Debtors or their Estates.

Any and all objections to Claims against the Debtors or their Estates shall be bought

1   within the Initial Objection Period (subject to extension as described below). The Liquidating

2   Trustee shall use its best efforts to bring any and all objections to such Claims within the Initial

3   Objection Period. However, subject to oversight by the Oversight Committee as provided herein

4   or in the Liquidating Trust Agreement, the Liquidating Trustee may, prior to the expiration of the

5   Initial Objection Period and without order of the Court, extend the deadline by which the

6   Liquidating Trustee must bring objections to Claims by up to an additional ninety (90) days by

7   filing with the Court and serving a notice of such extension on the holders of Allowed Unsecured

8   Claims; provided, however, that failure to serve as provided shall not adversely affect the

9   effectiveness of the extension. With the approval of the Court, after notice and a hearing, the

10  Liquidating Trustee may obtain extensions of the period within which to object to Claims.

11                    **(k)      Creation of Reserves, Investment of Cash, and Distribution of**

12                    **Cash.**

13        All cash held in the Liquidating Trust shall be invested only in investments permitted

14  under the Liquidating Trust Agreement. After the Effective Date, in accordance with the

15  Liquidating Trust Agreement, including oversight by the Oversight Committee as provided

16  herein or in the Liquidating Trust Agreement, the Liquidating Trustee shall: (i) pay or provide

17  for all expenses of the Liquidating Trust from property in the Liquidating Trust, (ii) establish and

18  maintain the Trust Expense Reserve, (iii) establish and maintain the Unclaimed Distributions

19  Reserve and the Disputed Unsecured Claim Reserve, (vi) establish any other reserves or accounts

20  it deems necessary or appropriate, and (vi) make distributions of cash to the holders of Allowed

21  Unsecured Claims from the Liquidating Trust in accordance with the Plan and the Liquidating

22  Trust Agreement; provided, however, that, the Liquidating Trustee shall not be required to make

23  any distribution to the holder of an Allowed Unsecured Claim where the amount of that

24  distribution would be Twenty-Five Dollars ($25.00) or less ("De Minimis Distribution"). De

25  Minimis Distributions shall be retained by the Liquidating Trustee in the Unclaimed

    Distributions Reserve and shall be paid to the holders of the Allowed Unsecured Claims to which

1  they relate when the distribution that would otherwise be made to such a holder, together with

2  the De Minimis Distribution(s) that have been reserved for such holder, is greater than Twenty-

3  Five Dollars ($25.00). If a holder of an Allowed Unsecured Claim is not entitled to a

4  distribution of more than Twenty-Five Dollars ($25.00) in the final distribution to be made from

5  the Liquidating Trust, then the amount that would be payable to such holder, including any

6  amounts held in the Unclaimed Distributions Reserve on account of prior De Minimis

7  Distribution(s) to such holder, shall be reallocated to the payment of all Allowed Unsecured

8  Claims other than those Allowed Unsecured Claims that would result in De Minimis

9  Distributions. No distributions in fractions of cents (i.e., fractions of hundredths of U.S. Dollars)

10 shall be made by the Liquidating Trustee. Any distribution to that would include a fraction of a

11 cent shall be rounded down to the nearest whole cent. The aggregate amount of fractions of

12 cents that are not distributed in the final distribution from the Liquidating Trust to holders of

13 Allowed Unsecured Claims shall treated as set forth in the Liquidating Trust Agreement.

14        **(l)     Trust Interests.**

15        The interests of the holders of Allowed Unsecured Claims in the Liquidating Trust will

16 not be evidenced by any certificate or other instrument or document. No transfer or assignment

17 shall be effective until and unless the Liquidating Trustee receives written notice thereof from

18 the transferor or assignor at least thirty (30) days prior to the next distribution to holders of

19 Allowed Unsecured Claims.

20        **(m)    No Action Against the Liquidating Trust, Liquidating Trustee**

21                 **or Oversight Committee Without Bankruptcy Court Approval.**

22        From and after the Effective Date, except as expressly set forth in the Plan or the

23 Liquidating Trust Agreement, no action or proceeding may be commenced or continued by any

24 entity, other than the Liquidating Trustee, in any court or other tribunal other than the Court,

25 against the Liquidating Trust, the Liquidating Trustee or the Oversight Committee, or any of

   their respective members, employees, professionals, agents or representatives, for any activities

undertaken by such entities under the Plan or the Liquidating Trust Agreement, without the prior approval of the Court in a Final Order. On and after the Effective Date, no act to collect or recover from, or offset against, or to create, perfect or enforce any right, claim, interest or remedy by any entity, other than the Liquidating Trustee, against the Liquidating Trust, the Liquidating Trustee or the Oversight Committee, or any of their respective members, employees, professionals, agents or representatives, may be taken in any court or other tribunal other than the Court without the prior approval of the Court in a Final Order. This provision of the Plan does not require that a defendant in a proceeding or matter filed by the Liquidating Trustee obtain the approval of the Court to assert any defense, counterclaim or setoff in such proceeding.

### (n) Termination of the Liquidating Trust.

The Liquidating Trust shall be irrevocable. The Liquidating Trust shall terminate and be dissolved upon the first to occur of the following (the "Termination Date"):

(i) the determination by the Liquidating Trustee to dissolve the Liquidating Trust upon performance and completion of all obligations and duties of the Liquidating Trust and the Liquidating Trustee under the Plan, the Confirmation Order and the Liquidating Trust Agreement, including, without limitation, the liquidation and distribution of all of the Trust Property; or

(ii) the date which is three (3) years from and after the Effective Date; provided, however, that if, in the reasonable determination of the Liquidating Trustee, in light of existing facts and circumstances, the liquidation or final distribution of the Trust Property will not be completed prior to the Termination Date, then, not more than ninety (90) days prior to the Termination Date, the Liquidating Trustee, subject to oversight by the Oversight Committee as provided herein and in the Liquidating Trust Agreement, may amend the Liquidating Trust Agreement to provide that the Termination Date shall be extended for an additional period of up to one (1) year (the "Extension Period"). The Liquidating Trustee shall give written notice of such extension to the holders of Allowed Unsecured Claims, but failure to

1   give notice shall not affect the extension. Prior to the expiration of the Termination Date or the

2   Extension Period or any subsequent extension of the Termination Date, the Liquidating Trustee

3   may seek and, for cause shown, obtain an order from the Court extending the Termination Date

4   for any additional time the Court deems necessary or appropriate, after notice and opportunity

5   for a hearing have been provided to the Oversight Committee, the holders of Allowed Unsecured

6   Claims and the holders of Disputed Unsecured Claims that have not been fully resolved, and

7   provided that any such extension(s) do not alter the tax treatment of the Liquidating Trust as a

8   "liquidating trust" or a grantor trust for federal income tax purposes under the Internal Revenue

9   Code and relevant Internal Revenue Service rules and guidelines or any other relevant statute.

10                         **(o)    Reports By the Liquidating Trustee.**

11          The fiscal year of the Liquidating Trust shall end on December 31 of each year. In

12   accordance with the Plan and the Liquidating Trust Agreement, in addition to any other reports

13   required herein or in the Liquidating Trust Agreement or by the Court, in conjunction with any

14   interim or final distribution to the holders of Allowed Unsecured Claims, but in any event, at

15   least once in every twelve (12) month period following the Effective Date, the Liquidating

16   Trustee shall serve the following unaudited annual financial statements prepared in accordance

17   with generally accepted accounting principles on a cash basis and the following unaudited

18   written reports on the holders of beneficial interests in the Liquidating Trust and the holders of

19   Disputed Unsecured Claims that have not been fully resolved: (a) financial statements showing

20   the assets and liabilities of the Liquidating Trust, including the Trust Expense Reserve, the

21   Disputed Unsecured Claim Reserve, the Unclaimed Distributions Reserve and any other

22   Reserves maintained in the Liquidating Trust at the end of the fiscal year period, (b) financial

23   statements showing the receipts and disbursements of the Liquidating Trust during the fiscal year

24   period, (c) a written report from the Liquidating Trustee about the disposition of any Trust

25   Property, receipts of funds from or payment of funds to the Reserves maintained by the Chief

     Restructuring Officer in the Post-Effective Date Estates, the allowance or disallowance of any

1    Administrative Claims, Administrative Tax Claims, Priority Tax Claims, Secured Claims,
2    Priority Claims and General Unsecured Claims, distributions that the Liquidating Trustee has
3    made, and any pending actions or matters (including objections to Claims) since the last such
4    written report, (d) a written report from the Liquidating Trustee showing the number and amount
5    of beneficial interests in the Liquidating Trust (*i.e.*, the number and amount of Allowed
6    Unsecured Claims) and the number and alleged amount of Disputed Unsecured Claims, and
7    changes since the last such written report, and (e) any other written reports the Liquidating
8    Trustee elects to include or the Oversight Committee reasonably requests the Liquidating Trustee
9    to include. If the Oversight Committee requests any written report that the Liquidating Trustee
10   deems to be unreasonable or overly burdensome, the Liquidating Trustee or the Oversight
11   Committee may seek a determination from the Court, after notice and a hearing, regarding the
12   need for such report and, unless otherwise ordered by the Court, shall not be required to provide
13   such report. Until the Case for Franchise is closed, a copy of the financial statements and written
14   reports shall be filed with the Court and served on the OUST. The Liquidating Trust shall serve
15   the OUST with any and all pleadings, reports or documents that it files with the Court after the
16   Effective Date.

17              **(p)    No Recourse Against the Liquidating Trustee or the Oversight**
18                       **Committee for Liabilities of Debtors.**

19         No recourse shall ever be had, directly or indirectly, with respect to any liabilities of the
20   Debtors, or by virtue of any indebtedness of the Debtors, their respective Estates or Post-
21   Effective Date Estates or the Liquidating Trust, against the Liquidating Trustee personally or the
22   Oversight Committee, or any of their respective members, officers, employees, professionals,
23   agents or representatives, whether by legal, equitable or other proceedings, by virtue of any law,
24   statute, regulation or otherwise, it being expressly understood and agreed that all liabilities of the
25   Debtors that become liabilities of the Liquidating Trust shall be enforceable only against and be
     satisfied only out of the Trust Property or shall be evidence only of a right to payment out of

1   such assets in the Liquidating Trust, as the case may be.

2   **(q)    Powers of Oversight Committee.**

3       The Oversight Committee shall meet with the Liquidating Trustee at such times and
4   places, including telephonically, as the Liquidating Trustee and the Oversight Committee may
5   agree, but in any event, at least once per quarter following the Effective Date.

6       Any member of the Oversight Committee may resign at any time following the Effective
7   Date. In the event of the resignation of any member of the Oversight Committee, the remaining
8   member or members of the Oversight Committee, after consulting with the Liquidating Trustee,
9   may elect to replace or not replace such resigning member without any supervision of, or
10  approval by, the Court or the OUST. If there is only one (1) member of the Oversight
11  Committee and such member does not replace at least one (1) of the member or members that
12  has or have resigned within a reasonable time, then the Oversight Committee shall be disbanded
13  and released from its duties and powers under the Plan. Notice of the disbanding of the
14  Oversight Committee shall be filed with the Court and served on the holders of Allowed
15  Unsecured Claims.

16      The Liquidating Trustee shall consult with the Oversight Committee concerning the
17  administration of the Liquidating Trust, including any matter that could have a material effect on
18  the amount available to distribute to holders of Allowed Unsecured Claims, and shall provide the
19  Oversight Committee with any written or oral report reasonably requested by the Oversight
20  Committee. The Liquidating Trustee shall seek the approval of the Oversight Committee before
21  it (1) pays any professional fees incurred on or after the Effective Date, (2) employs any
22  professional that was not employed by a Debtor just prior to the Effective Date, (3) settles any
23  dispute or otherwise accedes to the allowance of a Claim that will result in an Allowed
24  Administrative Claim, Allowed Administrative Tax Claim, Allowed Priority Tax Claim,
25  Allowed Priority Claim or Allowed Secured Claim of more than $25,000, (4) settles any dispute
    or otherwise accedes to the allowance of a Claim that will result in an Allowed General

1   Unsecured Claim of more than $500,000, (5) settles any affirmative Estate Claim, (6) otherwise
2   disposes (including by abandonment) of any Estate Claim or other Trust Property, (7) establishes
3   a new Reserve Account or deposits additional funds into any Reserve Account other than the
4   funds required by the Plan to be deposited in the Disputed Unsecured Claim Reserve or the
5   Unclaimed Distributions Reserve, (8) extends the Initial Objection Period, (9) defers a required
6   distribution to holders of Allowed Unsecured Claims, (10) purchases or maintain insurance
7   otherwise permitted under the Liquidating Trust Agreement, or (11) extends the Termination
8   Date of the Liquidating Trust by the Extension Period. Unless two (2) members of the Oversight
9   Committee disapprove an action, the Oversight Committee shall be deemed to have approved the
10  action. In addition, the Oversight Committee shall be deemed to have approved an action if the
11  Liquidating Trustee provides the members of the Oversight Committee with a written
12  explanation and justification for such action, and the Oversight Committee fails to disapprove or
13  request additional information in writing within ten (10) business days after receipt of such
14  written explanation or justification. If the Oversight Committee does not approve, then before
15  taking such action, the Liquidating Trustee must seek Court approval of such action, after notice
16  and a hearing.

17          For cause, after notice and a hearing, at the request of the Oversight Committee, the
18  Court may authorize and appoint the Oversight Committee, in place of the Liquidating Trustee,
19  as representative of the Debtors' Estates under Section 1123(b)(3) of the Bankruptcy Code and
20  the Amended Bankruptcy Code, to pursue any Estate Claims or other Claims, including
21  objections to Claims, for the benefit of the beneficiaries of the Liquidating Trust.

22          The Oversight Committee may consult with and rely on the advice of the Liquidating
23  Trustee and the professionals retained by the Liquidating Trustee on behalf of the Liquidating
24  Trust. If, after consulting with the Liquidating Trustee and the professionals retained by the
25  Liquidating Trustee, the Oversight Committee determines that it needs the assistance of counsel
    or other professional(s) in order to perform any of its duties under the Plan or the Liquidating

1  Trust Agreement, the Oversight Committee may employ counsel or other professionals at the
2  expense of the Liquidating Trust without any supervision of, or approval by, the Court, the
3  OUST or the Liquidating Trustee. The Liquidating Trustee shall pay the fees and costs of any
4  professional retained by the Oversight Committee from the Trust Expense Reserve or other funds
5  in the Liquidating Trust within ten (10) calendar days after receipt of such professional's
6  statement (approved by the Oversight Committee), without the requirement to file fee
7  applications or seek approval of the Court.    If the Liquidating Trustee disputes the
8  reasonableness of any portion of the fees or costs of such professional, it shall, within such ten
9  (10) calendar day period, seek a hearing before the Court thereon, on notice to the Oversight
10 Committee and the professional whose fees or costs are at issue, and shall not be required to pay
11 any disputed portion of such fees and costs (but shall pay any undisputed portion) pending a
12 ruling by the Court.

13      During the first year following the Effective Date, members of the Oversight Committee
14 shall, within five (5) business days following the conclusion of each three (3) month period after
15 the Effective Date, be paid the sum of One Thousand Dollars ($1,000.00) for serving on the
16 Oversight Committee during that period. If an Oversight Committee member resigns from the
17 Oversight Committee, such former member of the Oversight Committee shall not be paid for the
18 period in which such member resigns. Members of the Oversight Committee are expected to use
19 these payments to cover their out-of-pocket expenses and other costs incurred in serving on the
20 Oversight Committee.

21      After the first (1st) anniversary of the Effective Date, the Liquidating Trustee and the
22 members of the Oversight Committee may agree on different terms for payment to the members
23 of the Oversight Committee for their service on the Oversight Committee; provided, however,
24 that in no event shall the payment to members of the Oversight Committee exceed One
25 Thousand Dollars ($1,000.00) per three (3) month period.

1

### 6.    Exculpation and Indemnification.

2        To the maximum extent permitted by law, no Released Person shall have or incur liability

3   to any person or entity for an act taken or omission made in good faith in connection with, in any

4   way related to or arising out of the Cases, including the marketing and sale of assets of the

5   Debtors, the negotiation or formulation of the Plan, the Disclosure Statement, the Liquidating

6   Trust Agreement or any other contract, instrument, release, agreement or document created in

7   connection therewith, the solicitation of acceptances for or confirmation of the Plan, or the

8   consummation, administration or implementation of the Plan or the Liquidating Trust Agreement

9   and the transactions contemplated herein or therein, except for gross negligence or willful

10  misconduct.  Without limiting the generality of the foregoing, no Released Person shall have or

11  incur liability to any entity entitled to a distribution under this Plan if insufficient funds are

12  present to pay the entity that to which it is entitled under the Plan.  Each Released Person shall in

13  all respects be entitled to reasonably rely on the advice of counsel.  From and after the Effective

14  Date, no action or proceeding may be commenced or continued by any entity in any court or

15  other tribunal, other than the Court, against any Released Party for an act taken or omission made

16  in connection with or related to the Cases, including the formulation of the Plan, the Disclosure

17  Statement, the Liquidating Trust Agreement or any other contract, instrument, release, agreement

18  or document created in connection therewith, the solicitation of acceptances for or confirmation

19  of the Plan, or the consummation and implementation of the Plan and the Liquidating Trust

20  Agreement and the transactions contemplated herein and therein, without the prior approval of

21  the Court in a Final Order.  The Liquidating Trust will indemnify, hold harmless and reimburse

22  the Released Persons from and against any and all losses, Claims, causes of action, damages,

23  fees, expenses, liabilities, and actions for which liability is limited pursuant to this section.

24       ### 7.    Injunctions.

25       **The Confirmation Order shall enjoin the prosecution, whether directly, derivatively
or otherwise, of any Claim, obligation, suit, judgment, damage, demand, debt, right, cause**

1 of action, liability or interest released, extinguished or terminated pursuant to the Plan.

2    Except as provided in the Plan or the Confirmation Order, from and after the
3 Effective Date, all entities that have held, currently hold or may hold a Claim or other debt
4 or liability that is dealt with under the terms of the Plan or an interest or other right of an
5 interest holder that is cancelled pursuant to the terms of the Plan are permanently enjoined
6 from taking any of the following actions against any of the Debtors' Estates, the Post-
7 Effective Date Estates, the Chief Restructuring Officer, the Liquidating Trust, the
8 Liquidating Trustee, the Committee or its past or current members or the Oversight
9 Committee or its members, each of the above solely in its capacity as such, or their
10 respective property, on account of any such Claims, debts, liabilities, interests or rights: (i)
11 enforcing, attaching, collecting or recovering in any manner any judgment, award, decree
12 or order other than as provided in the Plan; (ii) creating, perfecting or enforcing any lien
13 or encumbrance other than as provided in the Plan; (iii) asserting a setoff, right of
14 subrogation or recoupment of any kind against any debt, liability or obligation due to the
15 Debtors other than as provided in the Plan; and (iv) commencing or continuing any action
16 in any manner, in any place or manner that does not comply with or is inconsistent with
17 the provisions of the Plan.

18    By accepting a distribution pursuant to the Plan, each holder of an Allowed
19 Administrative Claim, Allowed Administrative Tax Claim or Allowed Claim will be
20 deemed to have specifically consented to the injunctions set forth in this Article III.A.7.

21                              IV.

22                   OTHER PROVISIONS OF THE PLAN

23    A.    Executory Contracts and Unexpired Leases.

24         1.    Assumptions.

25    The Debtors will not assume any of their pre-petition unexpired leases or executory
contracts under the Plan.

67

1
         **2.    Rejections.**

2
        On the Effective Date, all unexpired pre-petition leases and executory contracts to which

3
any Debtor is or was a party and which were not previously assumed, assumed and assigned,

4
transferred to a third party, or rejected shall be rejected, and the Confirmation Order shall also

5
constitute an order approving such rejection, which shall be effective on the Effective Date.

6
THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING

7
FROM THE REJECTION OF AN UNEXPIRED PRE-PETITION LEASE OR EXECUTORY

8
CONTRACT WHICH IS REJECTED BY THE CONFIRMATION ORDER WILL BE

9
TWENTY (20) DAYS AFTER ENTRY OF THE ORDER CONFIRMING THE PLAN.  Any

10
Claim arising from the rejection of an unexpired pre-petition lease or executory contract which is

11
rejected by the Confirmation Order will be barred if the proof of Claim is not timely filed.  Any

12
Claims arising from rejection of any pre-petition executory contracts or unexpired leases shall be

13
treated in the appropriate class under the Plan.

14
         **B.    Changes in Rates Subject to Regulatory Commission Approval.**

15
        The Debtors are not subject to governmental regulatory commission approval of any

16
rates.

17
         **C.    Retention of Jurisdiction.**

18
        After confirmation of the Plan and occurrence of the Effective Date, and until all of the

19
Cases for the Debtors are closed, in addition to jurisdiction which exists in any other court, the

20
Court will retain the fullest and most extensive jurisdiction that is legally permissible, including

21
for all purposes set forth herein and in the Liquidating Trust Agreement and for the following

22
purposes:

23
         1.    To resolve any and all disputes regarding the operation and interpretation

24
of the Plan, the Liquidating Trust Agreement or the Confirmation Order;

25
         2.    To resolve any and all disputes between the Oversight Committee and the
Liquidating Trustee;

1      3.      To determine the allowability, classification, or priority of Claims against

2   the Debtors or their Estates;

3      4..     To determine the extent, validity and priority of any lien or encumbrance

4   asserted against property of any Debtor or of any Debtors' Estate;

5      5.      To construe and take any action to enforce the Plan, the Liquidating Trust

6   Agreement, the Confirmation Order, and any other order of the Court, issue such orders as may

7   be necessary for the implementation, execution, performance, and consummation of the Plan, the

8   Liquidating Trust Agreement, the Confirmation Order, and any matter referred to in the Plan, the

9   Liquidating Trust Agreement or the Confirmation Order, and to determine all matters that may

10  be pending before the Court in any of the Cases on or before the Effective Date;

11     6.      To determine any and all applications for allowance of compensation and

12  reimbursement of expenses of professionals employed at the expense of any of the Estates or

13  requests by members of the Committee or professionals employed by any of them for

14  reimbursement of expenses or compensation;

15     7.      To resolve any disputes regarding the employment or compensation of any

16  employees, professionals, agents or representatives of the Liquidating Trustee, the Liquidating

17  Trust or the Oversight Committee;

18     8.      To determine any request for payment of Administrative Claims or

19  Administrative Tax Claims;

20     9.      To determine the amount or legality of any tax, interest, fine or penalty

21  related to any tax, or any addition to tax, whether incurred or otherwise related to a period prior

22  to, on or after the Effective Date, owed by any of the Debtors, the Estate of any Debtor, the Post-

23  Effective Date Estate of any Debtor or the Liquidating Trust, whether or not previously assessed,

24  whether or not paid, and whether or not contested before or adjudicated by a judicial or

25  administrative tribunal;

       10.     To determine motions for the rejection, assumption, or assignment of

69

executory contracts or unexpired leases filed before the Effective Date and the allowance of any Claims resulting therefrom or from the rejection of any executory contracts or unexpired leases pursuant to the Plan or Confirmation Order;

11.    To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted in any of the Cases, whether before, on, or after the Effective Date;

12.    To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

13.    To remedy any apparent defect or omission in the Plan, the Liquidating Trust Agreement or the Confirmation Order or to reconcile any inconsistency in the Plan, the Liquidating Trust Agreement or the Confirmation Order so as to carry out their intent and purpose;

14.    To issue injunctions, take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan, the Liquidating Trust Agreement or the Confirmation Order, or the execution or implementation by any entity, including the Chief Restructuring Officer, the Liquidating Trustee and the Oversight Committee, of the Plan, the Liquidating Trust Agreement or the Confirmation Order;

15.    To issue orders in aid of consummation of the Plan, the Liquidating Trust Agreement and the Confirmation Order to the fullest extent authorized by the Bankruptcy Code or the Amended Bankruptcy Code (as applicable) or the Bankruptcy Rules;

26.    To adjudicate Estate Claims, regardless of when commenced; and

27.    To enter final decrees closing the Cases.

**D.    Tax Issues.**

The Chief Restructuring Officer and the Liquidating Trustee shall comply with all payment, withholding and reporting requirements imposed by any federal, state or local laws. All distributions of cash by the Chief Restructuring Officer or the Liquidating Trustee shall be

70

1   subject to all such applicable payment, withholding and reporting requirements. As a condition
2   to the receipt of any distributions under the Plan, the holders of Allowed Unsecured Claims may
3   be required to provide the Liquidating Trustee, and the holders of Allowed Administrative
4   Claims, Allowed Administrative Tax Claims, Allowed Priority Tax Claims, Allowed Secured
5   Claims and Allowed Priority Claims may be required to provide the Chief Restructuring Officer,
6   with information or documents required under applicable law for tax or other purposes. Any
7   Creditor or claimant to whom a notice is mailed by the Liquidating Trustee or the Chief
8   Restructuring Officer requesting such information or documents but who fails to deliver such
9   information or documents to the Liquidating Trustee or the Chief Restructuring Officer, as
10  appropriate, within three (3) months after the notice is mailed shall be forever barred from
11  thereafter receiving any distributions under the Plan, and the amounts to which such Creditor or
12  claimant would otherwise be entitled shall be paid to the Liquidating Trust or, if already part of
13  the Trust Property, reallocated to make distributions on other Allowed Unsecured Claims.

14          **E.      No Admissions**.

15          Notwithstanding anything to the contrary in the Plan, the Liquidating Trust Agreement or
16  the Disclosure Statement, if the Plan is not confirmed or the Effective Date does not occur, the
17  Plan will be null and void, and nothing contained in the Plan, the Liquidating Trust Agreement or
18  the Disclosure Statement will: (i) be constitute an admission with respect to any matter discussed
19  in the Plan, the Liquidating Trust Agreement or the Disclosure Statement, including any liability
20  on any Claim or the propriety of any Claim's classification; (ii) constitute waiver,
21  acknowledgement or release of any Claim, right, remedy, power, objection, defense, set-off or
22  action (including Estate Claims) held by any of the Debtors or their Estates; or (iii) prejudice in
23  any manner the rights of any of the Debtors or any holders of Claims or interests against any of
24  the Debtors in any further proceedings.

25          **F.      Inconsistencies/Governing Law.**

            To the extent this Plan is inconsistent with the Disclosure Statement, the provisions of

1  this Plan shall be controlling.  To the extent the Plan is inconsistent with the Confirmation Order,

2  the Confirmation Order shall be controlling.  To the extent the Plan or the Confirmation Order is

3  inconsistent with the Liquidating Trust Agreement, the Plan or the Confirmation Order, as

4  appropriate, shall be controlling in accordance herewith.

5      The rights and obligations arising under the Plan, the Liquidating Trust Agreement and

6  any other agreements, contracts, documents or instruments executed in connection with the Plan

7  or the Liquidating Trust Agreement will be governed by, and construed and enforced in

8  accordance with, California law without giving effect to California law's conflicts of law

9  principles, unless a rule of law or procedure is supplied by (i) federal law (including the

10 Bankruptcy Code or the Amended Bankruptcy Code (as applicable) or the Bankruptcy Rules) or

11 (ii) an express choice-of-law provision in any document executed in connection with the Plan or

12 the Liquidating Trust Agreement.

13      **G.      Notices to Chief Restructuring Officer or Liquidating Trustee.**

14      All notices, requests, demands or directions provided to the Chief Restructuring Officer

15 or the Liquidating Trustee, in order to be effective, must be given in writing and, unless

16 otherwise expressly provided herein or the Liquidating Trust Agreement, will be given or made

17 when actually delivered or, in the case of notice by facsimile transmission, when received and

18 telephonically confirmed, to the addresses set forth below:

19 **The Liquidating Trustee and the Chief Restructuring Officer**:

20              Sitrick Brincko Group, LLC
               Attention:  John P. Brincko
21              530 Wilshire Boulevard, Suite 201
               Santa Monica, CA 90401
22              Telephone: (310) 553-4523
               Facsimile: (310) 553-6782
23              Email:  jpb@brincko.com

24 and

25

72

**Counsel for the Liquidating Trustee and Post-Effective Date Estates**:

> Levene, Neale, Bender, Rankin & Brill L.L.P.
> Attention: David L. Neale, Esq.
> 10250 Constellation Blvd., Suite 1700
> Los Angeles, California 90067
> Telephone: (310) 229-1234
> Facsimile: (310) 229-1244
> Email: dln@lnbrb.com

The Chief Restructuring Officer may change its addresses set forth above by a notice filed with the Court and served on the holders of all Claims against the Debtors or their Estates that have not been disallowed by a Final Order or otherwise fully resolved in accordance with the Liquidating Trust Agreement. The Liquidating Trustee may change its addresses set forth above by a notice filed with the Court and served on the Oversight Committee, the Holders of Allowed Unsecured Claims and holders of Disputed Unsecured Claims that have not been fully resolved.

**H.    Nonconsensual Confirmation.**

To the extent necessary, the Debtors request the Court to confirm this Plan under Section 1129(b) of the Bankruptcy Code and the Amended Bankruptcy Code (as applicable)..

**IV.**

**EFFECT OF CONFIRMATION OF PLAN**

**A.    No Discharge.**

The Debtors will not receive any discharge in the Cases because the Plan does not meet the requirements for discharge as specified under Section 1141(d)(3) of the Bankruptcy Code and the Amended Bankruptcy Code.

**B.    Vesting of Property of the Effective Date; Dissolution of Debtors**

Confirmation of the Plan will not result in the vesting of any property in the Debtors. Rather, as described in detail elsewhere in the Plan, from and after the Effective Date, all property, assets, rights, powers and privileges of the any of the Debtors or their Estates (including the Estates Claim) shall become property of the Liquidating Trust and shall be

1   administered by the Liquidating Trustee; provided, however, that the Special Reserves and Post-

2   Effective Date Reserves established on the Effective Date in accordance with this Plan shall be

3   property of the Post-Effective Date Estates until the funds therein are distributed to holders of

4   Allowed Administrative Claims, Allowed Administrative Tax Claims, Allowed Secured Claims

5   or Allowed Priority Claims, as the case may be, or transferred to the Liquidating Trust in

6   accordance with the Plan.

7       As soon as practicable after the Effective Date, each of the Debtors shall be dissolved.

8   The Chief Restructuring Officer shall, and is empowered to, take any and all actions necessary or

9   appropriate to accomplish the dissolutions notwithstanding any otherwise applicable non-

10   bankruptcy law.

11      **C.**    **Transfer Taxes.**

12       Pursuant to Section 1146 of the Bankruptcy Code or the Amended Bankruptcy Code (as

13   applicable), and to the fullest extent permitted by law, no stamp tax, transfer tax or other similar

14   tax shall be imposed or assessed by any taxing authority on account of (i) the issuance, transfer

15   or exchange of any securities issued under the Plan, (ii) the transfer of any assets or property

16   pursuant to the Plan, or (iii) the making or delivery of an instrument of transfer under the Plan.

17      **D.**    **Modification of the Plan.**

18       The Debtors may withdraw or modify the Plan at any time before confirmation. The

19   Bankruptcy Court may require a new disclosure statement or re-voting on the Plan if the Debtors

20   modify the Plan before confirmation. After consultation with the Committee before the Effective

21   Date and subject to the approval of the Oversight Committee after the Effective Date, the

22   Liquidating Trustee may modify the Plan at any time after confirmation but before substantial

23   consummation of the Plan. Modification of the Plan shall be in accordance, and the Plan as

24   modified shall comply, with the requirements of Section 1127 of the Bankruptcy Code and the

25   Amended Bankruptcy Code (as applicable).

1

## E.    Post-Confirmation Status Report.

2    Within 120 days after the entry of the order confirming the Plan, unless final decrees
3    closing all of the Cases are earlier entered, the Chief Restructuring Officer shall file a status
4    report with the Court explaining what progress has been made toward consummation of the Plan.
5    The status report shall be served on the OUST, the members of and counsel for the Committee
6    (prior to the Effective Date), the members of and counsel (if any) for the Oversight Committee
7    (after the Effective Date), the Creditors listed by each of the Debtors on the List of 20 Largest
8    Creditors filed in accordance with Federal Rule of Bankruptcy Procedure 1007(d) and those
9    parties that have requested special notice in the Cases. Further status reports shall be filed every
10   120 days thereafter and served on the same entities until final decrees are entered closing the all
11   of the Cases, unless otherwise ordered by the Court. The Liquidating Trustee shall cooperate
12   with the Chief Restructuring Officer in connection with the preparation of such reports.

13

## F.    Post-Confirmation Conversion/Dismissal

14   A party in interest may bring a motion to convert or dismiss the Cases under Section
15   1112(b) of the Bankruptcy Code or the Amended Bankruptcy Code (as applicable) after the Plan
16   is confirmed if there is a material default in performing the Plan. If the Court orders the Cases
17   converted to chapter 7 after the Effective Date, then all property that had been property of the
18   Estates, and that has not been transferred or disbursed pursuant to the Plan, will revest in the
19   Estates, and the automatic stay will be reimposed, but only to the extent that relief from stay was
20   not previously authorized by the Court during the Cases.

21   The Confirmation Order may also be revoked under very limited circumstances. The
22   Court may revoke the Confirmation Order if it was procured by fraud and if a party in interest
23   brings an adversary proceeding to revoke confirmation within one hundred eighty (180) days
24   after the entry of the order confirming the Plan.

25

## G.    Payment of OUST Fees

Prior to the Effective Date, the Debtors shall be responsible for the timely payment of

1   fees incurred and payable pursuant to 28 U.S.C. § 1930(a)(6). Fees payable to the OUST under

2   28 U.S.C. § 1930(a)(6) for any period after the Effective Date shall be paid by the Chief

3   Restructuring Officer from the Post-Effective Date Estates for Franchise, Franchise Survivor,

4   Crossover Survivor and Holding based on distributions made by the Chief Restructuring Officer

5   from those Post-Effective Date Estates, respectively. The Chief Restructuring Officer shall

6   comply with the requirements of the OUST and the Bankruptcy Rules regarding the filing and

7   service of quarterly reports regarding disbursements made from the Post-Effective Date Estates.

8        **H.**     **Binding Effect.**

9        The rights, duties and obligations of any person or entity named or referred to in this

10   Plan, including holders of Allowed Administrative Claims, Allowed Administrative Tax Claims

11   or Allowed Claims, shall be binding on, and shall inure to the benefit of, the heirs, executors, ad

12   administrators, personal representatives, estates and permitted successors and assigns of such

13   persons or entities.

14        **I.**     **Final Decree.**

15        The Liquidating Trustee shall file a motion with the Court to obtain a final decree closing

16   each of the Cases as soon as practicable after each Case is eligible to be closed.

17   Dated: January 9, 2010          FRANCHISE PICTURES, LLC, *et al.*
                                SPE HOLDING CORP., *et al.*

18

19                          By:        */s/ John P. Brincko*

20                                 JOHN P. BRINCKO
                                CHIEF RESTRUCTURING OFFICER

21   Submitted By:
22   DAVID L. NEALE
    JULIET Y. OH
23   LEVENE, NEALE, BENDER, RANKIN &
        BRILL L.L.P.
24   Attorneys for Debtors and
    Debtors in Possession
25

## THE LIQUIDATING TRUST AGREEMENT

THIS LIQUIDATING TRUST AGREEMENT (the "Agreement") is made this ____ day of _____ 2010, by and between Franchise Pictures LLC, Franchise Pictures, Inc., Franchise Films LLC, Franchise Entertainment LLC, 3000 Miles Productions, Inc., Alex and Emma Productions, Inc., Auggie Rose Productions, Inc., Battlefield Productions, LLC, Carter Productions, LLC, Champs Productions Inc., Conprod, Inc., Heightened Productions Inc., Nine Yards Productions, LLC, Phoenician Entertainment LLC, Pledge Productions, Inc., Rangers Productions, Inc., Seraph Productions, Inc., Split Card Films, Inc., Suite Productions LLC, Valentine Productions, Inc., VLN Productions, Inc., and TGD Productions, Inc. (collectively, the "Original Debtors") and Phoenician Entertainment, Inc., Nordhoff Rentals, Inc., Franchise Classics Pictures, Inc., Franchise Creative Corp. and Franchise Television LLC (collectively, the "New Debtors," and, together with the Original Debtors, the "Franchise Debtors"), and Animal Productions, LLC, Captured Productions, Inc., Cinema Holdings Inc., Desperate, Inc., Disorder Productions, Inc., Lost Angels Distributions, Inc., Merciless Movies, Inc., Nine Yards Two Productions, Inc., Rabbitprod, Inc., Restrained Films, Inc., Ripped Films, Inc., Rumbling Productions, Inc., Saint Mortimer Films, Inc., Seabreeze Productions, Inc., Sever Productions, Inc., Silent Productions, Inc., Snake Eyes Productions, Inc., South Boondock Productions, Inc., Spartan Distribution, Inc., SPE Holding Corp., Stormy Productions, Inc., Twin Pictures Acquisition Corp., Unbelievable Productions, Inc., VS Productions, Inc., and Zig Zag Productions, Inc. (collectively, , the "Original SPE Debtors") and Franchise Studios, LLC ("Studios," and, together with the Original SPE Debtors, the "SPE Debtors"), on the one hand, and Sitrick Brincko Group, LLC, not in its individual capacity, but solely as trustee hereunder (the "Liquidating Trustee"). The Franchise Debtors and the SPE Debtors are collectively referred to herein as the "Debtors."

## RECITALS

A.    The Original Debtors commenced their chapter 11 bankruptcy cases by filing voluntary petitions under chapter 11 of title 11, United States Code § 101 et seq. as applicable to the Franchise Debtors' cases (the "Bankruptcy Code") in August, 2004. With the exception of TGD Productions, Inc., which filed its voluntary petition on August 23, 2004, the Original Debtors filed their voluntary petitions on August 18, 2004.

B.    On March 11, 2005, the New Debtors commenced their chapter 11 bankruptcy cases by filing voluntary petitions under chapter 11 of the Bankruptcy Code. The New Debtors are all wholly-owned subsidiaries of Franchise Pictures LLC. The cases of the Franchise Debtors are all being jointly administered in the United States Bankruptcy Court for the Central District of California, San Fernando Valley Division (the "Bankruptcy Court") under the lead case of Franchise Pictures LLC (case number 1:05-bk-13855-MT).

C.    An Official Committee of Unsecured Creditors (the "Committee") was appointed by the Office of the United States Trustee in the Franchise Debtors' jointly administered bankruptcy cases.

D.    The Original SPE Debtors commenced their chapter 11 bankruptcy cases by filing voluntary petitions under chapter 11 of title 11, United States Code § 101 et seq. as applicable to

1



cases filed on or after October 17, 2005 (the "Amended Bankruptcy Code") on November 21, 2005. Studios filed its voluntary petition for relief under chapter 11 of the Amended Bankruptcy Code on December 1, 2005. The cases of the SPE Debtors are all being jointly administered in the Bankruptcy Court under the lead case of SPE Holding Corp. (case number 1:05-bk-50077-MT).

      E.      Pursuant to an order entered on _____, 2009 (the "Confirmation Order"), the Bankruptcy Court confirmed the Plan (as defined below).

      F.      Pursuant to the Plan and Section 1123(a)(5)(C) of the Bankruptcy Code and the Amended Bankruptcy Code, on the Effective Date (as defined in the Plan), and notwithstanding any otherwise applicable non-bankruptcy law, the following mergers (the "Effective Date Mergers") shall occur:

      1.      all of the wholly-owned subsidiaries of Franchise Pictures LLC, other than Franchise Films LLC, that are treated as corporations for federal income tax purposes, namely Alex and Emma Productions, Inc., Franchise Classic Pictures, Inc., Franchise Creative Corp., Franchise Entertainment LLC, Franchise Pictures, Inc., Franchise Television LLC, Nordhoff Rentals, Inc. and Phoenician Entertainment, Inc. (collectively, the "Franchise Merger Parties") shall be merged into Franchise Films LLC ("Franchise Survivor");

      2.      the wholly-owned subsidiary of Franchise Pictures LLC that is treated as a partnership or disregarded entity for federal income tax purposes, namely Phoenician Entertainment LLC (the "Franchise Flow-Through Debtor") shall be merged into Franchise Pictures LLC;

      3.      all of the SPE Debtors other than SPE Holding Corp. shall be merged into SPE Holding Corp.; and

      4.      all of the Original Debtors, other than Battlefield Productions, LLC, that are wholly-owned subsidiaries of SPE Holding Corp., namely 3000 Miles Productions, Inc., Auggie Rose Productions, Inc., Carter Productions, LLC, Champs Productions, Inc., ConProd, Inc. Heightened Productions, Inc., Nine Yards Productions, LLC, Pledge Productions, Inc., Rangers Productions, Inc., Seraph Productions, Inc., Split Card Films, Inc., Suite Productions, LLC, TGD Productions, Inc., Valentine Productions, Inc. and VLN Productions, Inc. (collectively, the "Crossover Merger Parties") shall be merged into Battlefield Productions, LLC ("Crossover Survivor" and, together with Franchise Survivor, Franchise Pictures LLC, SPE Holding Corp., the "Survivor Entities").

      G.      The Plan also provides that, after the Effective Date Mergers have been completed and certain reserves have been created and funded in the post-Effective Date estates of the Survivor Entities, the remaining assets, property, rights, powers and privileges of the Survivor Entities, including Estate Claims (as defined in the Plan), shall be transferred to a

liquidating trust (the "Liquidating Trust") that is created for the benefit of the holders of Allowed Unsecured Claims (as defined in the Plan) pursuant to the Plan.

      H.    The Debtors and the Liquidating Trustee desire to create and fund the Liquidating Trust on the Effective Date in accordance with the Plan, pursuant to this Agreement.

## AGREEMENTS

      NOW THEREFORE, for and in consideration of the mutual promises and agreements contained herein and in the Plan, the receipt and sufficiency of which are hereby expressly acknowledged, the Debtors and the Liquidating Trustee, intending to be legally bound, hereby agree as follows:

## I.    Definitions:

      A.    Terms Defined Above.  As used in this Agreement, each of the terms "Agreement," "Amended Bankruptcy Code," "Bankruptcy Code," "Bankruptcy Court," "Committee," "Confirmation Order," "Crossover Merger Parties," "Crossover Survivor," "Debtors," "Effective Date Mergers," "Franchise Flow-Through Debtor," "Franchise Debtors," "Franchise Merger Parties," "Franchise Survivor," "Liquidating Trust," "New Debtors," "Original Debtors," "Original SPE Debtors," "SPE Debtors," "Studios" and "Survivor Entities" shall have the meaning set forth above.

      B.    Terms Defined in Plan or Bankruptcy Code or Amended Bankruptcy Code. Capitalized terms used in this Agreement without being defined herein shall have the meanings assigned to them in the Plan.  Any term not specifically defined herein or in the Plan shall the same meaning as when used in the Bankruptcy Code or the Amended Bankruptcy Code (as applicable).

      C.    Additional Defined Terms.  As used herein, the following terms shall have the meanings set forth below, unless the context otherwise requires:

      1.    "Beneficial Interest" shall mean a participating beneficial interest in the Liquidating Trust pursuant to the Plan and this Agreement belonging to the holder of an Allowed Unsecured Claim under the Plan.

      2.    "Court" shall mean the Bankruptcy Court or any other court that properly exercises jurisdiction over the Survivor Entities' cases.

      3.    "De Minimis Distribution" shall have the meaning set forth in Section VI.B.5 hereof.

      4.    "Distribution Funds" means, at a given time after the transfer of the Transferred Property to the Liquidating Trust on the Effective Date, all of the cash and cash equivalents in the Liquidating Trust other than funds held or accounted for in any Reserves as permitted herein or in the Plan.

5.    "Extension Period" shall have the meaning set forth in Section VI.E.1.ii hereof.

6.    "Holder" shall mean the owner of a Beneficial Interest.

7.    "Initial Objection Period" shall mean the period from the Effective Date until one hundred eighty (180) days after the Effective Date.

8.    "Internal Revenue Code" shall mean the Internal Revenue Code of 1986, as amended from time to time.

9.    "IRS" shall mean the Internal Revenue Service.

10.    "Liquidating Trustee" shall have the meaning ascribed to that term above, and any duly appointed successors, not in their individual capacities, but solely as trustees hereunder.

11.    "Plan" shall mean the Joint Plan of Liquidation for the Debtors as confirmed and modified by the Confirmation Order. Any inconsistency between the Plan and the Confirmation Order shall be governed by the Confirmation Order, which is incorporated by reference in the Plan as if fully set forth. The Plan is incorporated herein by reference as if fully set forth.

12.    "Termination Date" shall have the meaning set forth in Section VI.E hereof.

13.    "Transferred Property" shall mean all of the remaining tangible and intangible assets, property, rights, powers and privileges of the Survivor Entities (including Estate Claims) after the Effective Date Mergers have occurred and after the establishment and funding of the Special Reserves and the Post-Effective Date Estate Reserves in the Post-Effective Date Estates of the Survivor Entities, which assets, property, rights, powers and privileges shall be transferred on the Effective Date to the Liquidating Trust to be administered in accordance with the Plan and this Agreement. The Transferred Property includes (1) the remaining Sales Proceeds and other cash and cash equivalents held by the Debtors, or any of them, or by counsel for the Debtors on behalf of any of the Debtors on the Effective Date, (2) the right to the Estate Claims Recoveries (including the Commerzbank Recovery, the Comerica Turnover Recovery and the Japanese TV Money) to the extent not received by the Debtors prior to the Effective Date, (3) the right to receive, in accordance with the Plan, excess funds remaining after payments are made from the Reserve Accounts held in the Post-Effective Date Estates, and (4) all privileges, including the attorney-client privilege, owned or held by any of the Debtors or their Estates.

14.    "Trust Expense Reserve" shall mean the Reserve Account to be maintained by the Liquidating Trustee to pay (i) the fees and expenses, including taxes, incurred by the Liquidating Trust, and (ii) other fees and expenses incurred by professionals employed at the expense of the Liquidating Trust after the Effective Date, in accordance with the Plan and this Agreement.

4

15.    "Trust Property" shall mean, as of any given date after the transfer of the Transferred Property to the Liquidating Trust on the Effective Date, all the tangible and intangible assets, property, rights, powers and privileges that belong to the Liquidating Trust or the Liquidating Trustee, including the Reserves created by the Liquidating Trustee in accordance with the Plan or this Agreement and including the proceeds of (including interest earned with respect to) any Transferred Property or other Trust Property.

16.    "Unclaimed Distributions Reserve" shall mean the segregated bank account maintained by the Liquidating Trustee into which shall be deposited distributions with respect to uncashed checks in accordance with Section VI.B.3 hereof, (ii) with respect to undeliverable distributions under Section VI.B.4 hereof, and (iii) De Minimis Distributions in accordance with Section VI.B.5 hereof.

D.    Rules of Construction.  In this Agreement, except to the extent that the context otherwise requires:

1.    reference in this Agreement to a Section is to a Section of this Agreement unless otherwise indicated, and reference in this Agreement to an Article is to an Article of the Plan unless otherwise indicated;

2.    the headings and captions used in this Agreement are for reference purposes only and do not affect in any way the meaning or interpretation of this Agreement;

3.    whenever the words "include," "includes" or "including" are used in this Agreement, they are deemed to be followed by the words "without limitation," unless expressly indicated otherwise;

4.    the words "hereof," "herein" and "hereunder" and words of similar import, when used in this Agreement, refer to this Agreement as a whole and not to any particular provision of this Agreement;

5.    all terms defined in this Agreement or the Plan have the same defined meanings when used in any document made or delivered pursuant hereto, unless otherwise defined therein;

6.    the definitions contained in this Agreement are applicable to the singular as well as the plural forms of such terms and *vice versa*;

7.    except as otherwise provided, any law defined or referred to herein means such law or statute as from time to time amended, modified or supplemented, to the extent applicable to the situation;

8.    reference to a person or entity is also to his, her or its heirs, executors, administrators, personal representatives, estates and permitted successors and assigns, unless the context otherwise requires;

5

9.      the use of "or" is not intended to be exclusive unless expressly indicated otherwise;

10.     unless the context otherwise required, reference to the masculine shall also be deemed to constitute reference to the feminine or the neuter, reference to the feminine shall be deemed to constitute reference to the masculine or neuter, and reference to the neuter shall be deemed to constitute reference to the masculine or feminine; and

11.     except as otherwise provided herein, Federal Rule of Bankruptcy Procedure 9006(a) (effective December 1, 2009) shall apply when computing any time period under this Agreement.

## II.    Declaration of Trust.

A.      Creation of Liquidating Trust.   Pursuant to the Plan and the Confirmation Order and in accordance with Article III.A.2 of the Plan, on the Effective Date, the Debtors and the Liquidating Trustee hereby irrevocably create the Liquidating Trust for the benefit of holders of Allowed Unsecured Claims.   The name of the Liquidating Trust shall be the "Franchise Liquidating Trust."   The Liquidating Trust shall terminate only in accordance with the provisions of the Plan and this Agreement.

B.      Property in the Liquidating Trust.   The Liquidating Trust shall hold legal title to the Trust Property and shall hold the Trust Property in trust to be administered and disposed of pursuant to the terms of the Plan and this Agreement for the benefit of the Holders.   The Liquidating Trustee is authorized to make disbursements and payments from the Liquidating Trust in accordance with the Plan and this Agreement.

C.      Purpose of Liquidating Trust.   The Liquidating Trust is organized for the purposes of collecting, holding and liquidating the Trust Property, including pursuing Estate Claims, objecting to, litigating, compromising and settling objections to Claims against the Debtors or their Estates, and making distributions to the Holders, with no objective to continue or engage in the conduct of a trade or business.   Consistent with this purpose, the Liquidating Trustee shall make continuing efforts to liquidate the Trust Property, make timely distributions to Holders and not unduly prolong the duration of the Liquidating Trust.

D.      Appointment and Compensation of the Liquidating Trustee.   Sitrick Brincko Group, LLC (or any successor appointed in accordance with this Agreement), as Liquidating Trustee, shall act as the manager, trustee and liquidating agent of the Liquidating Trust.   The Liquidating Trustee's compensation shall be based upon the number of hours spent by the officers and employees of the Liquidating Trustee multiplied by the hourly rate normally charged by the Liquidating Trustee for that officer's or employee's services.   The Liquidating Trustee shall be entitled to engage in such other unrelated activities as it deems appropriate, provided, however, that the Liquidating Trustee shall devote such time as is necessary to fulfill all of its duties under the Plan and this Agreement.   The resignation, removal or incapacity of the Liquidating Trustee shall not operate to terminate the Liquidating Trust.

## III.    Beneficial Interests.

A.    Non-Certificated; Transferable.  On the Effective Date, each entity that is the holder of one or more Allowed Unsecured Claims shall automatically become the Holder of Beneficial Interests corresponding to the amount of the Allowed Unsecured Claim(s) held by such Creditor.  Beneficial Interests will not be evidenced by any certificate or other instrument or document.  No transfer or assignment of a Beneficial Interest shall be effective until and unless the Liquidating Trustee receives written notice thereof from the transferor or assignor at least thirty (30) days prior to the next distribution to holders of Allowed Unsecured Claims.

B.    Beneficial Owners.  The Liquidating Trust and the Liquidating Trustee may deem and treat each Holder as the owner of the underlying Beneficial Interests for the purpose of receiving distributions thereon or on account thereof and for all other purposes whatsoever.  The ownership of a Beneficial Interest in the Liquidating Trust shall not entitle any Holder to any title in or to the Trust Property or any other assets, property, rights, powers or privileges of the Liquidating Trust or the Liquidating Trustee or to any right to call for a partition or division of such assets, property, rights, powers or privileges or to require an accounting.

## IV.    Delivery and Acceptance of Trust Property.

A.    Conveyance by the Debtors.  On the Effective Date, the Transferred Property (including Estate Claims) shall be deemed to have been distributed to the Holders of Beneficial Interests in the Liquidating Trust and thereafter transferred to, and vested in, the Liquidating Trust free and clear of all liens, Claims, encumbrances and interests, and shall be held in trust for the benefit of holders of Allowed Unsecured Claims, subject to the provisions of the Plan and this Agreement.  The Liquidating Trust shall become the owner and holder of all privileges, including the attorney-client privilege, owned or held by any of the Debtors or their Estates on or prior to the Effective Date.  At any time and from time to time after the date hereof, at the Liquidating Trustee's request and without further consideration, the Chief Restructuring Officer on behalf of the Debtors and their Estates or the Survivor Entities and their Post-Effective-Date Estates shall execute and deliver such instruments of sale, transfer, conveyance, assignment and confirmation, and will cooperate and take such other actions as the Liquidating Trustee may deem reasonably necessary or desirable in order to effectively transfer, convey and assign all rights, title and interests in and to the Transferred Property, including privileges, to the Liquidating Trust.

B.    Acceptance of Conveyance.  Effective on the Effective Date, in accordance with the Plan and the Confirmation Order, the Liquidating Trustee on behalf of the Liquidating Trust:

1.    accepts delivery of the Transferred Property;

2.    accepts from the Debtors or the Survivor Entities all bills of sale, deeds, assumptions and assignments, and all other instruments of conveyance delivered by the Debtors or the Survivor Entities with respect to the Transferred Property pursuant to or in connection with the Plan, the Confirmation Order or this Agreement; and

7

3.      agrees to take such other action as may be required of the Liquidating Trustee hereunder or under the Plan, including the receipt and acceptance as part of the Transferred Property or other Trust Property of any property, instruments, or choses in action, which the Liquidating Trustee may receive in connection with or in consideration of the Transferred Property.

C.      No Interest Retained by Debtors. None of the Debtors (including the Survivor Entities) or their Post-Effective Date Estates shall retain or hold any interest in the Transferred Property, the Trust Property or the Liquidating Trust.

## V.      Administration of Trust Property.

A.      Reserves. The Liquidating Trustee shall establish and maintain the Trust Expense Reserve, the Disputed Unsecured Claim Reserve and the Unclaimed Distributions Reserve, as required by the Plan or this Agreement, and such other reserves as may be ordered by the Court. Subject to oversight by the Oversight Committee as provided herein or in the Plan, the Liquidating Trustee may at any time establish such additional reserves as the Liquidating Trustee deems reasonably necessary or appropriate to effectuate the provisions and intent of the Plan and this Agreement.

B.      Oversight Committee. On the Effective Date, the Committee shall have the right, in accordance with the terms of the Plan, to select two (2) or three (3) persons (not necessarily existing Committee members), including Intertainment AG, to serve on the Oversight Committee. In the event the Committee is unable to name one (1) person willing to serve on the Oversight Committee other than Intertainment AG, the Liquidating Trustee may, with the written consent of Intertainment AG, waive the establishment of the Oversight Committee. If the Oversight Committee is established, it shall have the following powers and responsibilities (in addition to those provided for in the Plan or elsewhere in this Agreement):

1.      The Oversight Committee shall meet with the Liquidating Trustee at such times and places, including telephonically, as the Liquidating Trustee and the Oversight Committee may agree, but in any event, at least once per quarter following the Effective Date.

2.      Any member of the Oversight Committee may resign at any time following the Effective Date. In the event of the resignation of any member of the Oversight Committee, the remaining member or members of the Oversight Committee, after consulting with the Liquidating Trustee, may replace or not replace such resigning member without any supervision of, or approval by, the Court or the OUST. If there is only one (1) remaining member of the Oversight Committee and such member does not replace at least one (1) of the member or members that has or have resigned within a reasonable time, then the Oversight Committee shall be disbanded and released from its duties and powers under the Plan and this Agreement. Notice of the disbanding of the Oversight Committee shall be filed with the Court and served on the holders of Allowed Unsecured Claims.

3.      The Liquidating Trustee shall consult with the Oversight Committee concerning the administration of the Liquidating Trust, including any matter that could have a material effect on the amount available to distribute to Holders, and shall provide the Oversight

8

Committee with any written or oral report reasonably requested by the Oversight Committee. The Liquidating Trustee shall seek the approval of the Oversight Committee before it (i) pays any professional fees incurred on or after the Effective Date, (ii) employs any professional that was not employed by a Debtor just prior to the Effective Date, (iii) settles any dispute or otherwise accedes to the allowance of a Claim that will result in an Allowed Administrative Claim, Allowed Administrative Tax Claim, Allowed Priority Tax Claim, Allowed Priority Claim or Allowed Secured Claim of more than $25,000, (iv) settles any dispute or otherwise accedes to the allowance of a claim that will result in an Allowed Unsecured Claim of more than $500,000, (v) settles any affirmative Estate Claim, (vi) otherwise disposes (including by abandonment) of any Estate Claim or other Trust Property, (vii) establishes a new Reserve Account or deposits additional funds into any Reserve Account other than the funds required to be deposited in the Disputed Unsecured Claim Reserve or the Unclaimed Distributions Reserve, (viii) extends the Initial Objection Period, (ix) defers a required distribution to holders of Allowed Unsecured Claims, (x) purchases or maintains insurance under Section VII.A or VIII.F.2 hereof, or (xi) extends the Termination Date of the Liquidating Trust by the Extension Period under Section VI.E.1.ii hereof. Unless two (2) members of the Oversight Committee disapprove an action, the Oversight Committee shall be deemed to have approved the action. In addition, the Oversight Committee shall be deemed to have approved an action if the Liquidating Trustee provides the members of the Oversight Committee with a written explanation and justification for such action, and the Oversight Committee fails to disapprove or request additional information in writing within ten (10) business days after receipt of such written explanation or justification. If the Oversight Committee does not approve, then before taking such action, the Liquidating Trustee must seek Court approval of such action, after notice and a hearing.

4.    For cause, after notice and a hearing, at the request of the Oversight Committee, the Court may authorize and appoint the Oversight Committee, in place of the Liquidating Trustee, as representative of the Debtors' Estates under Section 1123(b)(3) of the Bankruptcy Code and the Amended Bankruptcy Code, to pursue any Estate Claims or other Claims, including objections to Claims, for the benefit of the Holders.

5.    The Oversight Committee may consult with and rely on the advice of Liquidating Trustee and the professionals retained by the Liquidating Trustee. If, after consulting with the Liquidating Trustee and the professionals retained by the Liquidating Trustee, the Oversight Committee determines that it needs the assistance of counsel or other professional(s) in order to perform any of its duties under the Plan or this Agreement, the Oversight Committee may employ counsel or other professionals at the expense of the Liquidating Trust without any supervision of, or approval by, the Court, the OUST or the Liquidating Trustee. The Liquidating Trustee shall pay the fees and costs of any professional retained by the Oversight Committee from the Trust Expense Reserve or other funds that are Trust Property within ten (10) calendar days after receipt of such professional's statement (approved by the Oversight Committee), without the requirement to file fee applications or seek approval of the Court. If the Liquidating Trustee disputes the reasonableness of any portion of the fees or costs of such professional, it shall, within such ten (10) calendar day period, seek a hearing before the Court thereon, on notice to the Oversight Committee and the professional whose fees or costs are at issue, and shall not be required to pay any disputed portion of such fees and costs (but shall pay any undisputed portion) pending a ruling by the Court.

9

6.      During the first year following the Effective Date, members of the Oversight Committee shall, within five (5) business days following the conclusion of each three (3) month period after the Effective Date, be paid the sum of One Thousand Dollars ($1,000.00) for serving on the Oversight Committee during that period.  If an Oversight Committee member resigns from the Oversight Committee, such former member of the Oversight Committee shall not be paid for the period in which such member resigns.  Members of the Oversight Committee are expected to use these payments to cover their out-of-pocket expenses and other costs incurred in serving on the Oversight Committee.  After the first (1st) anniversary of the Effective Date, the Liquidating Trustee and the members of the Oversight Committee may agree on different terms for payment to the members of the Oversight Committee for their service on the Oversight Committee; provided, however, that in no event shall the payment to members of the Oversight Committee exceed One Thousand Dollars ($1,000.00) per three (3) month period.

C.      Powers of the Liquidating Trustee.

1.      Administrative Powers.  During the Liquidating Trustee's administration of the Liquidating Trust, and subject to the Plan and this Agreement (including oversight by the Oversight Committee as set forth herein and in the Plan), the Liquidating Trustee on behalf of the Liquidating Trust may exercise the following powers:

i.      to receive and hold all of the property, assets, rights, powers and privileges constituting the Transferred Property or the Trust Property, and all additions thereto, and all proceeds thereof, and to have exclusive possession and control thereof for the purposes set forth herein and in the Plan;

ii.      to enter into, perform and exercise rights under contracts binding upon the Liquidating Trust which are reasonably incident to the administration of the Liquidating Trust and which the Liquidating Trustee, in the exercise of its judgment, believes to be in the best interests of the Liquidating Trust;

iii.      to establish and maintain accounts at banks and other financial institutions, in a clearly specified fiduciary capacity, into which Reserves to be maintained by or other cash or funds of the Liquidating Trust are to or may be deposited, and to draw checks or make withdrawals from such accounts to pay or distribute such amounts as permitted or required under the Plan and this Agreement;

iv.      to employ attorneys, accountants, disbursing agents, expert witnesses and other persons whose services may be necessary or advisable in the judgment of the Liquidating Trustee, to pay from the Trust Property reasonable compensation to such attorneys, accountants, disbursing agents, expert witnesses and other persons (including, when necessary or appropriate, contingent fee or commission-based arrangements), and to compensate counsel and other professionals retained by the Oversight Committee in accordance with the Plan and this Agreement;

v.      to hold, administer, market, lease, sell or otherwise dispose of the Trust Property in accordance with the Plan and this Agreement;

10

vi.     to collect and receive any accounts receivable, income, proceeds, and distributions derived from or relating to the Trust Property;

vii.    to pay any and all necessary expenses attributable or related to the management, maintenance, administration, preservation or liquidation of the Trust Property;

viii.   to investigate, file, compromise, settle, withdraw or litigate objections to Claims against the Debtors or their Estates, including Administrative Claims, Administrative Tax Claims, Secured Claims, Priority Claims, Priority Tax Claims and General Unsecured Claims, and any affirmative Estate Claims;

ix.     to sue in connection with any matter arising from or related to the Plan, the Confirmation Order or this Agreement that affects in any way the assets, property, rights, powers, privileges, obligations, duties or recoveries of the Liquidating Trust, the Liquidating Trustee, or the Holders;

x.      to settle, compromise, retain, enforce or abandon all litigation claims (including the Estate Claims) and the rights, remedies, claims, powers, objections, counterclaims, defenses, setoffs and actions of the Debtors and their Estates under Sections 363, 365 and 501 to 558, inclusive, of the Bankruptcy Code, whether or not such litigation had been commenced by any of the Debtors prior to the Effective Date;

xi.     to act as the representative of the Debtors' Estates under section 1123(b)(3)(B) of the Bankruptcy Code and the Amended Bankruptcy Code, in accordance with the Plan;

xii.    to prepare and file informational and other tax returns for the Liquidating Trust and to pay any and all taxes incurred and owed by the Liquidating Trust;

xiii.   to make distributions to the Holders as provided herein and in the Plan; and

xiv.    to do any and all other things, not in violation of any other terms of the Plan, the Confirmation Order or this Agreement, which, in the judgment of the Liquidating Trustee, are necessary or appropriate to carry out the terms or purposes of the Plan, this Agreement, the Liquidating Trust or for the proper liquidation, management, investment and distribution of the Trust Property in accordance with the provisions of the Plan and this Agreement.

2.      Employment of Officers, Employees and Professionals.   Subject to oversight by the Oversight Committee as set forth herein or in the Plan, the Liquidating Trustee is authorized to employ and compensate such employees, professionals, including any professionals employed prior to the Effective Date at the expense of any of the Debtors' estates, representatives and agents, including disbursing agents, as the Liquidating Trustee determines is necessary or appropriate to implement all of the provisions of the Plan and this Agreement, without any supervision of, or approval by, the Court or the OUST. Pursuant to the Plan, but subject to oversight by the Oversight Committee as set forth herein or in the Plan, any actual or potential conflict of interest that might otherwise preclude employment by the Liquidating

11

Trustee of counsel for the Committee has been waived, and the Debtors, the Liquidating Trustee and the Committee have acknowledged that they have received full disclosure of such conflict and consented to such employment.

        3.      Objections to Claims and the Pursuit of Estate Claims. From and after the Effective Date, the Liquidating Trustee, on behalf of the Liquidating Trust, shall be the sole party entitled to review and, where necessary or appropriate, object to Administrative Claims, Administrative Tax Claims or Claims of Creditors (other than Administrative Claims of professionals employed at the expense of the Debtors' estates, as to which any party in interest may object), which shall thereafter be resolved in accordance with the Bankruptcy Code or the Amended Bankruptcy Code (as applicable) and the Bankruptcy Rules. However, for good cause shown, after notice and a hearing, other parties in interest (including the Oversight Committee) may be authorized by the Court to object to Claims asserted against any of the Debtors or their Estates. Subject to oversight by the Oversight Committee as provided herein or in the Plan, the Liquidating Trustee shall investigate Estate Claims and determine, in its sole discretion, which, if any, should be prosecuted in accordance with the Plan and this Agreement. Except as otherwise set forth in the Plan or this Agreement, including oversight by the Oversight Committee, the Liquidating Trustee shall have full power and authority to settle, compromise, retain, enforce or abandon any Estate Claims without supervision of, or approval by, the Court or the OUST and free of any restriction of the Bankruptcy Code, the Amended Bankruptcy Code or the Bankruptcy Rules. The Liquidating Trustee shall use its best efforts to bring any and all objections to Claims within the Initial Objection Period; provided, however, that, subject to oversight by the Oversight Committee, the Liquidating Trustee may, prior to the expiration of the Initial Objection Period and without order of the Court, extend the deadline for filing objections to Claims by an additional ninety (90) day period, by filing with the Court and serving notice of such extension as provided in the Plan. With the approval of the Court, after notice and a hearing, the Liquidating Trustee may obtain further extensions of the period within which to object to Claims.

      D.      Limitations on Trustee; Investments.

        1.      No Trade or Business for Liquidating Trust. The Liquidating Trustee shall carry out the purposes of the Plan, this Agreement and the Liquidating Trust and the directions contained herein and in the Plan and shall not at any time cause the Liquidating Trust or the Trust Property to enter into or engage in any trade or business, including the purchase of any asset or property (other than such assets or property as are necessary or appropriate to carry out the purpose of the Liquidating Trust). The Liquidating Trustee is directed to take all actions necessary or appropriate to liquidate and dispose of the Trust Property in as prompt, efficient and orderly a fashion as possible, to make timely distributions of Distribution Funds to the Holders, and to otherwise not unduly prolong the duration of the Liquidating Trust. Notwithstanding anything in this Agreement to the contrary, the Liquidating Trustee shall not knowingly do or undertake any action or knowingly fail to take any action that would jeopardize treatment of the Liquidating Trust as a "liquidating trust" or a grantor trust for federal income tax purposes.

        2.      Investments. The Liquidating Trustee shall invest any funds held at any time as part of the Trust Property in a reasonable and prudent manner and shall invest only in investments that a liquidating trust, within the meaning of Treasury Regulation Section

301.7701-4(d), is permitted to hold, pursuant to the Treasury Regulations, or any modification in
the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise.

     E.    Administration of Trust.  In administering the Liquidating Trust, the Liquidating
Trustee, subject to the express limitations contained in the Plan or this Agreement, is authorized
and directed to do and perform all such acts and to execute and deliver such deeds, bills of sale,
instruments of conveyance, and other documents as it may deem necessary or appropriate to
carry out the purposes of the Plan, this Agreement and the Liquidating Trust.  The Liquidating
Trustee shall not commingle any of the Trust Property with the property of the Liquidating
Trustee acting in any capacity other than as Liquidating Trustee or any other entity.

     F.    Payment of Expenses and Other Liabilities.  The Liquidating Trustee shall pay
from the funds in the Liquidating Trust all expenses, charges, liabilities and obligations of the
Liquidating Trust, including such debts, liabilities, or obligations as may be payable from the
Trust Property, taxes, assessments, and public charges of every kind and nature owed on account
of the Trust Property, and costs, charges and expenses in connection with or arising out of the
execution or administration of the Liquidating Trust and the Trust Property, and such other
payments and disbursements as are provided for in the Plan or this Agreement or which may be
necessary or appropriate charges against the Liquidating Trust or the Trust Property.  Subject to
the oversight of the Oversight Committee, the Liquidating Trustee, in his or her judgment, may,
from time to time, make provision by Reserve out of the Trust Property for such amount or
amounts as the Liquidating Trustee in his or her judgment may determine to be necessary or
appropriate to meet or satisfy unascertained, unliquidated or contingent liabilities of the
Liquidating Trust or the Liquidating Trustee.

     G.    Transfer of Funds to Special Reserves and Post-Effective Date Estate Reserves.
Subject to the oversight of the Oversight Committee, (i) in the event a Post-Effective Date Estate
Reserve does not hold sufficient funds to pay in full the fees and expenses incurred and payable
by the applicable Post-Effective Date Estate in accordance with the Bankruptcy Code or the
Amended Bankruptcy Code (as applicable) and the Bankruptcy Rules, the Liquidating Trustee
(after receiving a written request from the Chief Restructuring Officer) shall transfer into such
Post-Effective Date Estate Reserve from the Trust Property an amount sufficient to pay such fees
and expenses, and (ii) in the event a Special Reserve does not hold sufficient funds to pay in full
an allowed Claim entitled to payment therefrom, the Liquidating Trustee (after receiving a
written request from the Chief Restructuring Officer) shall transfer into such Reserve from the
Trust Property an amount sufficient to pay such Claim.

     H.    Tax Requirements.  The Liquidating Trustee shall comply with all payment,
withholding and reporting requirements imposed by any federal, state or local laws.  All
distributions by the Liquidating Trustee to Holders shall be subject to all such payment,
withholding or reporting requirements.  The Liquidating Trustee shall report and pay any taxes
that may be imposed by any federal, state or local laws on the Liquidating Trust, including the
Disputed Unsecured Claim Reserve, the Unclaimed Distributions Reserve, the Trust Expense
Reserve and any other Reserve established by the Liquidating Trustee.  As a condition to the
receipt of any distributions under the Plan, the Holders may be required to provide the
Liquidating Trustee with information or documents required under applicable law for tax or
other purposes.  Any holder of a General Unsecured Claim or an Allowed Unsecured Claim to

13

which a notice is mailed by the Liquidating Trustee requesting such information or documents but who fails to deliver such information or documents to the Liquidating Trustee within three (3) months after the notice is mailed shall be forever barred from receiving any distributions from the Liquidating Trust, and the amounts to which such holder is no longer entitled shall be reallocated to make distributions to other Holders.

   I. Liabilities of the Liquidating Trust. The Liquidating Trust shall have no liabilities whatsoever except in accordance with the Plan, the Confirmation Order and this Agreement, which authorized liabilities include (subject to oversight by the Oversight Committee, where applicable) the obligations to pay the compensation and reimburse the expenses of the Liquidating Trustee, the professionals and agents retained by the Liquidating Trust, the members of the Oversight Committee and the professionals retained by the Oversight Committee in accordance with this Agreement. Without limiting the foregoing, the Liquidating Trust shall have no liability for any expenses of or Claims against any of the Debtors or their Estates or the Post-Effective Date Estates or any other entities, except for the obligation to pay Allowed Unsecured Claims in accordance with the Plan and this Agreement.

   J. Costs of Liquidating Trustee. In addition to the compensation paid to the Liquidating Trustee, the Liquidating Trustee shall be entitled to be compensated from the Liquidating Trust for its actual, necessary and reasonable expenses incurred in the performance of its duties under the Plan and this Agreement.

## VI. Source of Payments; Distributions

   A. Payments from Property of the Trust. All distributions to be made to the Holders under the Plan and this Agreement shall be made only from the Trust Property and only to the extent that the Liquidating Trust shall have sufficient funds to make such distributions in accordance with the Plan and this Agreement. Each Holder shall look solely to the Trust Property, and not to the Liquidating Trustee, the officers, employees, professionals, agents or representatives of the Liquidating Trustee or the Liquidating Trust in their personal, individual capacities, or the Oversight Committee or its members or professionals, for distributions to such Holder as provided in the Plan and this Agreement.

   B. Distributions Pursuant to Plan and Agreement. The Liquidating Trust shall distribute funds in the Trust Property to the Holders in accordance with the Plan and this Agreement.

   1. Timing Of Distributions. Unless the Oversight Committee consents to a delay or the Court orders otherwise, after notice and a hearing, the Liquidating Trustee shall distribute Distribution Funds to the Holders of Beneficial Interests in the Liquidating Trust no later than six (6) months after the Effective Date and, thereafter, the Liquidating Trustee shall distribute Distribution Funds at least annually to the Holders of the Beneficial Interests in the Liquidating Trust, in accordance with such Holders' relative Beneficial Interests in the Liquidating Trust; provided, however, that, subject to oversight by the Oversight Committee as provided herein, the Liquidating Trustee, in its sole discretion, may retain such amounts (i) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Trust Property during liquidation, (ii) to pay reasonable administrative expenses (including, but not

14

limited to, any taxes imposed on the Liquidating Trust or in respect of the Trust Property), and (iii) to satisfy other liabilities incurred by the Liquidating Trust in accordance with the Plan or this Agreement. The distribution date for the final distribution from the Liquidating Trust of all remaining cash and cash equivalents shall be prior to the termination of the Liquidating Trust, when all of the Trust Property has been reduced to cash or cash equivalents or abandoned, all Disputed Unsecured Claims have been determined by Final Order of the Court or otherwise resolved in accordance with this Agreement, and the Liquidating Trustee has performed all of its duties under the Plan and this Agreement. All distributions of cash by the Liquidating Trust shall be made in lawful currency of the United States, by checks or, at the option of the Liquidating Trustee, wire transfers.

                2.      Delivery Of Distributions. Unless otherwise agreed by the Liquidating Trustee in writing with a holder of an Allowed Unsecured Claim, the delivery of distributions made by check to a holder of an Allowed Unsecured Claim shall be made by first class United States mail, postage prepaid, at the address set forth on the proof of claim filed by such holder or as listed in the Schedules if no proof of claim has been filed, or another address if the holder of the Allowed Unsecured Claim has notified the Debtor (before the Effective Date) or the Liquidating Trustee (from and after the Effective Date) of a change of address in a writing received by the Debtor or the Liquidating Trustee, as applicable, at least thirty (30) days prior to the distribution. The Liquidating Trustee shall not be required to attempt to locate any holder of an Allowed Unsecured Claim.

                3.      Checks Not Cashed. Any and all checks issued on account of Allowed Unsecured Claims shall be null and void if not cashed by the earlier of six (6) months after the date of issuance thereof and thirty (30) days before the final distribution to Holders from the Liquidating Trust. The Holder of an Allowed Unsecured Claim with respect to which such check was originally issued may make a written request to the Liquidating Trustee for re-issuance of the check; provided, however, that any such request must be made by the earlier of six (6) months after issuance of the check and thirty (30) days before the final distribution to Holders from the Liquidating Trust. If another distribution is made to Holders prior to the passing of the applicable deadline, the distribution that would have been made to any Holder that did not timely cash its distribution check shall be placed in the Unclaimed Distributions Reserve. When the applicable deadline has passed, any Allowed Unsecured Claim in respect of which an uncashed check has been issued shall be discharged and forever barred from any distributions from the Liquidating Trust and the cash represented by the null and void check and any amounts in the Unclaimed Distributions Reserve on account thereof shall be used by the Liquidating Trust to make distributions to the holders of other Allowed Unsecured Claims. Notwithstanding the foregoing, any checks issued in the final distribution from the Liquidating Trust to holders of Allowed Unsecured Claims that are not cashed within ninety (90) days after issuance shall be null and void, any Allowed Unsecured Claims in respect thereof shall be discharged and forever barred, and the funds represented by such check shall be donated as follows: 50% to the Alzheimer's Association (Los Angeles Chapter) and 50% to Children's Hospital of Los Angeles.

                4.      Unclaimed Distributions. If any distribution to the holder of an Allowed Unsecured Claim is returned as undeliverable, then no further distributions to such holder shall be made unless and until the holder notifies the Liquidating Trustee in writing of such holder's current address, at which time all missed distributions shall be made to such holder without

15

interest; provided, however, that any such notification must be made by the earlier of six (6) months after the date of the distribution at issue and thirty (30) days before the final distribution to Holders from the Liquidating Trust. If another distribution is made to Holders prior to the passing of the applicable deadline, the distribution that would have been made to any Holder of an undeliverable distribution shall be placed in the Unclaimed Distributions Reserve. When the applicable deadline has passed, any Allowed Unsecured Claim in respect of the undeliverable distribution shall be discharged and forever barred from any distributions from the Liquidating Trust and the funds involved in the undeliverable distribution shall be used by the Liquidating Trust to make distributions to the holders of other Allowed Unsecured Claims. Notwithstanding the foregoing, if the final distribution to any Holder is returned as undeliverable and the Holder does not notify the Liquidating Trustee of its current address within ninety (90) days after the distribution, then the Allowed Unsecured Claim in respect thereof shall discharged and forever barred, and the funds involved in the undeliverable distribution shall be donated as follows: 50% to the Alzheimer's Association (Los Angeles Chapter) and 50% to Children's Hospital of Los Angeles.

5.    De Minimis Distributions. The Liquidating Trustee shall not be required to make any distribution to the holder of an Allowed Unsecured Claim where the amount of that distribution would be Twenty-Five Dollars ($25.00) or less ("De Minimis Distribution"). De Minimis Distributions shall be retained by the Liquidating Trustee in the Unclaimed Distributions Reserve and shall be paid to the holders of the Allowed Unsecured Claims to which they relate when the distribution that would otherwise be made to such a holder, together with the De Minimis Distribution(s) that have been reserved for such holder, is greater than Twenty-Five Dollars ($25.00). If a holder of an Allowed Unsecured Claim is not entitled to a distribution of more than Twenty-Five Dollars ($25.00) in the final distribution to be made from the Liquidating Trust, then the amount that would be payable to such holder, including any amounts held in the Unclaimed Distributions Reserve on account of prior De Minimis Distribution(s) to such holder, shall be reallocated to the payment of all Allowed Unsecured Claims other than those Allowed Unsecured Claims that would result in De Minimis Distributions.

6.    Disputed Unsecured Claim Reserve. For purposes of making distributions to holders of Allowed Unsecured Claims under the Plan, consistent with the obligations of the Liquidating Trust under the Plan, on each distribution date the Liquidating Trust shall allocate to the Disputed Unsecured Claim Reserve, the amount of cash or cash equivalents that would be distributed to the holders of Disputed Unsecured Claims as if such claims were allowed in full. The Liquidating Trust shall allocate cash to the Disputed Unsecured Claim Reserve based on the amount that would be payable if such Disputed Unsecured Claim were allowed in full, which shall be based on the face amount of the Disputed Unsecured Claim or, if the face amount is unknown, the Liquidating Trustee's best estimate after consultation with the Oversight Committee of the amount of the Disputed Unsecured Claim that will be allowed, unless otherwise ordered by the Court.

7.    Payment of Resolved Disputed Unsecured Claims.

i.    As soon as practicable after a Disputed Unsecured Claim becomes an Allowed Unsecured Claim, the Liquidating Trustee shall distribute to the holder of such

Allowed Unsecured Claim the cash previously allocated to the Disputed Unsecured Claim Reserve on account thereof (or a lesser *pro* rata amount if the amount of the Allowed Unsecured Claim is less than the amount based on which cash was reserved in the Disputed Unsecured Claim Reserve). Any remaining cash allocated to the Disputed Unsecured Claim Reserve on account of a Disputed Unsecured Claim that becomes an Allowed Unsecured Claim in an amount less than the amount based on which cash was reserved in the Disputed Unsecured Claim Reserve shall be removed from the Disputed Unsecured Claim Reserve and become part of the property of the Liquidating Trust available for other permitted purposes under the Plan and this Agreement, including distribution to Holders.

ii.     If a Disputed Unsecured Claim becomes as an Allowed Unsecured Claim in an amount that is greater than the amount based on which cash was reserved in the Disputed Unsecured Claim Reserve, then, when the next distributions is made to Holders (including the holder of such Allowed Unsecured Claim), the Liquidating Trustee shall also pay the holder of the Allowed Unsecured Claim an additional amount so that the distribution to such holder is equal to the *pro rata* distribution(s) that would have previously been made to the holder if its Claim had been an Allowed Claim when prior distribution(s) were made.

C.     Reserves. The Liquidating Trustee shall establish and maintain as segregated bank accounts the Trust Expense Reserve, the Disputed Unsecured Claim Reserve and the Unclaimed Distributions Reserve in accordance with the Plan and this Agreement. Subject to oversight by the Oversight Committee as provided herein, the Liquidating Trustee may establish and maintain such other reserves, accounting entries, escrow accounts or similar items as the Liquidating Trustee deems necessary or appropriate, all of which shall be considered "Reserves" or "Reserve Accounts" as defined in the Plan and used herein. All such reserves, accounting entries, escrows and similar items and the amounts allocable to each are solely for administrative convenience and, except as otherwise provided in the Plan or this Agreement, the amounts allocated to each need not be segregated.

D.     No Fractional Distributions. No distributions to Holders in fractions of cents (i.e., fractions of hundredths of U.S. Dollars) shall be made by the Liquidating Trustee. Any distribution to a Holder that would include a fraction of a cent shall be rounded down to the nearest whole cent. The aggregate amount of fractions of cents that are not distributed pursuant to this provision in the final distribution to Holders shall be donated as follows: 50% to the Alzheimer's Association (Los Angeles Chapter) and 50% to Children's Hospital of Los Angeles.

E.     Dissolution and Termination.

1.     Dissolution Event. The Liquidating Trust shall be dissolved upon the first to occur of the following (the "Termination Date"):

i.     the determination by the Liquidating Trustee to dissolve the Liquidating Trust upon performance and completion of all obligations and duties of the Liquidating Trust and the Liquidating Trustee under the Plan, the Confirmation Order and this Agreement, including, without limitation, the liquidation and distribution of all of the Trust Property; or

17

ii.    the date which is three (3) years from and after the Effective Date; provided, however, that if, in the reasonable determination of the Liquidating Trustee, in light of existing facts and circumstances, the liquidation or final distribution of the Trust Property will not be completed prior to the Termination Date, then, not more than ninety (90) days prior to the Termination Date, the Liquidating Trustee, subject to oversight by the Oversight Committee as provided herein, may amend the Liquidating Trust Agreement to provide that the Termination Date shall be extended for an additional period of up to one (1) year (the "Extension Period"). The Liquidating Trustee shall give written notice of such extension to the Holders, but failure to give notice shall not affect the extension.  Prior to the expiration of the Termination Date or the Extension Period or any subsequent extension of the Termination Date, the Liquidating Trustee may seek and, for cause shown, obtain an order from the Court extending the Termination Date for any additional time the Court deems necessary or appropriate, after notice and opportunity for a hearing have been provided to the Oversight Committee, the Holders and holders of Disputed Unsecured Claims that have not been fully resolved, and provided that any such extension(s) do not alter the tax treatment of the Liquidating Trust as a "liquidating trust" or a grantor trust for federal income tax purposes under the Internal Revenue Code and relevant IRS rules and guidelines or any other relevant statute.

## VII.    Other Duties of the Liquidating Trustee.

A.    Insurance.  The Liquidating Trustee may, subject to oversight by the Oversight Committee as provided herein, if sufficient funds are available, purchase and maintain in existence such insurance as the Liquidating Trustee deems necessary or appropriate from time to time to protect the Trust Property, the Liquidating Trust or the Liquidating Trustee (including the officers, employees, professionals, agents or representatives of the Liquidating Trust or the Liquidating Trustee), the Oversight Committee and its members and professionals, or the Holders' interests in the Liquidating Trust from any potential claims or liabilities relating to the Liquidating Trust, the Trust Property or the distribution thereof.

B.    Records.  Subject to an alternative order of the Court, after notice and a hearing, (a) the Liquidating Trustee shall preserve all of the Debtors' books and records until the later of (i) three (3) years following the Effective Date and (ii) ninety (90) days after the final distribution from the Liquidating Trust is made to the Holders, and (b) the Liquidating Trustee shall maintain and preserve the books and records of the Liquidating Trust until four (4) years following the end of the taxable year in which the final distribution from the Liquidating Trust is made to the Holders.

C.    Reporting.  The fiscal year of the Liquidating Trust shall end on December 31 of each year.  In accordance with the Plan and this Agreement, in conjunction with any interim or final distribution to the Holders, but in any event, at least once in every twelve (12) month period following the Effective Date, the Liquidating Trustee shall serve the following unaudited annual financial statements prepared in accordance with generally accepted accounting principles on a cash basis and the following unaudited written reports and accounts on the holders of beneficial interests in the Liquidating Trust and the holders of Disputed Unsecured Claims that have not been fully resolved: (a) financial statements showing the assets and liabilities of the Liquidating Trust, including the Trust Expense Reserve, the Disputed Unsecured Claim Reserve, the Unclaimed Distributions Reserve and any other Reserves maintained in the Liquidating Trust

18

at the end of the fiscal year period, (b) financial statements showing the receipts and disbursements of the Liquidating Trust during the fiscal year period, (c) a written report from the Liquidating Trustee regarding the disposition of any Trust Property, receipts of funds from Reserves maintained by the Chief Restructuring Officer in the Post-Effective Date Estates, the allowance or disallowance of any Administrative Claims, Administrative Tax Claims, Priority Tax Claims, Secured Claims, Priority Claims and General Unsecured Claims, distributions that the Liquidating Trustee has made, and any pending adversary proceedings or contested matters (including objections to Claims) since the last such written report, (d) a written report from the Liquidating Trustee showing the number and amount of Beneficial Interests (i.e., the number and amount of Allowed Unsecured Claims) and the number and alleged amount of Disputed Unsecured Claims, and changes since the last written report, and (e) any other written reports the Liquidating Trustee elects to include or the Oversight Committee reasonably requests the Liquidating Trustee to include. If the Oversight Committee requests any written report that the Liquidating Trustee deems to be unreasonable or overly burdensome, the Liquidating Trustee or the Oversight Committee may seek a determination from the Court, after notice and a hearing, regarding the need for such report and, unless otherwise ordered by the Court, shall not be required to provide such report. Until the Case for Franchise Pictures LLC is closed, a copy of the financial statements and written reports shall be filed with the Court and served on the OUST. The Liquidating Trust shall serve the OUST with any and all documents that it files with the Court after the Effective Date. The Liquidating Trustee shall also prepare and distribute any other reports or other information that may be required by the Court or the Bankruptcy Rules or that the Liquidating Trustee determines are necessary or appropriate.

   D.  Cooperation with the Chief Restructuring Officer of the Survivor Entities. If requested by the Chief Restructuring Officer, the Liquidating Trustee cooperate and assist the Chief Restructuring Officer in connection with the Chief Restructuring Officer's performance of its duties and exercise of its rights under the Plan.

   E.  No Implied Duties. The Liquidating Trustee shall not manage, control, use, sell, dispose, collect or otherwise deal with the Trust Property or otherwise take any action hereunder except as expressly provided in the Plan, the Confirmation Order or this Agreement, and no implied duties or obligations whatsoever of the Liquidating Trustee shall be read into this Agreement. Except as otherwise expressly provided in the Plan, the Confirmation Order or this Agreement, the Liquidating Trustee shall have no duties or obligations under any laws or statutes otherwise applicable to trusts.

## VIII. Concerning the Liquidating Trustee.

   A.  Acceptance by Trustee. The Liquidating Trustee accepts the Liquidating Trust hereby created for the benefit of the Holders and agrees to act as Liquidating Trustee of the Liquidating Trust pursuant to the terms of the Plan and this Agreement. The Liquidating Trustee shall have and exercise the rights and powers granted in the Plan and this Agreement and shall be charged solely with the performance of the duties declared in the Plan and this Agreement on the part of the Liquidating Trustee. The Liquidating Trustee also agrees to receive and disburse the Trust Property pursuant to the terms of the Plan and this Agreement.

B.      Discretionary Submission of Questions. Unless Court authorization is required pursuant to the Plan or this Agreement, the Liquidating Trustee, in its judgment, may, but shall not be required to, submit to the Court, from time to time, after notice and opportunity for hearing have been provided to any affected Creditors and the Oversight Committee, unless otherwise ordered by the Court, any question or questions with respect to which the Liquidating Trustee may desire to have explicit approval of the Court for the taking of any specific action proposed to be taken by the Liquidating Trustee with respect to the Liquidating Trust or the Trust Property, or any part thereof, the administration the Liquidating Trust, or the distribution of the Trust Property. Written authorization of the Court set forth in an order which has not been stayed shall constitute approval by the Court of the proposed action to be taken by the Liquidating Trustee.

C.      Liquidating Trustee's Declining to Execute Documents. If, in the reasonable opinion of the Liquidating Trustee and its counsel, any document required to be executed pursuant to the terms hereof materially and adversely affects any immunity or indemnity in favor of the Liquidating Trustee under the Plan or this Agreement, the Liquidating Trustee may in its discretion decline to execute such document.

D.      Liability of the Liquidating Trustee or the Oversight Committee.

1.      Limitation on Liability. No provision of the Plan or this Agreement or any applicable law, rule or regulation shall be construed to impose any liability upon the Liquidating Trustee or the officers, employees, professionals, agents or representatives of the Liquidating Trustee or the Liquidating Trust, or upon the Oversight Committee or its members or professionals for an act taken or omission made in good faith in connection with the administration and distribution of the Liquidating Trust or the Trust Property, unless it shall be proven that the actions or omissions of such entity were not authorized under the Plan and this Agreement and constituted gross negligence or willful misconduct in the exercise of, or failure to exercise, any right or power under the Plan or this Agreement.

2.      Reliance on Certificates, Opinions or Information. In the absence of willful misconduct on the part of the Liquidating Trustee or the members of the Oversight Committee, respectively, the Liquidating Trustee and the Oversight Committee may conclusively rely, as to the truth of the statements and correctness of the opinions expressed therein, upon any certificates or opinions furnished to the Liquidating Trustee and conforming to the requirements of the Plan or this Agreement or, as to the members of the Oversight Committee, any information provided to them or professionals for the Oversight Committee by the Liquidating Trustee or the officers, employees, professionals, agents or representatives of the Liquidating Trustee or the Liquidating Trust.

3.      Discretion of the Liquidating Trustee. Except as otherwise expressly provided in the Plan or this Agreement, the Liquidating Trustee, within the limitations and restrictions expressed and imposed in the Plan or this Agreement, may act freely under all or any of the rights, powers and authority conferred in the Plan or this Agreement in all matters concerning the Liquidating Trust and the Trust Property without the necessity of obtaining the consent or permission or authorization of the Holders, the Oversight Committee, the Court, the OUST, the Chief Restructuring Officer or of any other representative of the Debtors; and the

20

rights, powers and authority conferred on the Liquidating Trustee by the Plan and this Agreement are conferred in contemplation of such freedom of action within the limitations and restrictions so expressed and imposed.

      E.        Reliance by the Liquidating Trustee or the Oversight Committee.

      1.        Genuineness of Documents.  The Liquidating Trustee and the officers, employees, professionals, agents and representatives employed the Liquidating Trustee or the Liquidating Trust, and the Oversight Committee and its members and professionals may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, objection, order, judgment, decree, or other paper or document reasonably believed by them to be genuine and to have been signed, made, entered or presented by the proper party, parties, official, officials, entity or entities.

      2.        Retention of Professionals.  The Liquidating Trustee may consult with legal counsel and with independent public accountants and other professionals or experts and, subject to oversight by the Oversight Committee as provided herein, the Liquidating Trust shall have the right to employ and to compensate any such professionals as the Liquidating Trustee deems appropriate.

      3.        Reliance on the Liquidating Trustee.  No entity dealing with the Liquidating Trustee or the officers, employees, professionals, agents or representatives employed by the Liquidating Trustee or the Liquidating Trust shall be obligated to see to the application of any funds, securities, or other property paid or delivered by such entity to any of them or the Liquidating Trust or to inquire into the expediency or propriety of any transaction or the right, power or authority of the Liquidating Trustee to enter into or consummate any transaction upon such terms as the Liquidating Trustee deems necessary or appropriate.

      F.        Indemnification.

      1.        Payment of Expenses.  Expenses (including attorneys' fees) incurred in defending any action, suit or proceeding brought against the Liquidating Trust, the Liquidating Trustee or any officer, employee, professional, agent or representative of the Liquidating Trustee or the Liquidating Trust (other than an action, suit or proceeding brought by the Liquidating Trustee or the Liquidating Trust), or against the Oversight Committee or its members or professionals may be paid by the Liquidating Trust in advance of the final disposition of such action, suit or proceeding, upon an undertaking by the Liquidating Trustee or any such officer, employee, professional, agent or representative employed by the Liquidating Trustee or the Liquidating Trust or any member of the Oversight Committee or professional employed by the Oversight Committee to repay such amount if it shall ultimately be determined that such entity is not entitled to be indemnified because a court of competent jurisdiction determines that the liability of the Liquidating Trustee or the officer, employee, professional, agent or representative employed by the Liquidating Trustee of the Liquidating Trust or the member of the Oversight Committee or professional employed by the Oversight Committee arose from gross negligence or willful misconduct.

    2. Insurance. The Liquidating Trust may, subject to oversight by the Oversight Committee as provided herein, obtain and maintain insurance during the Liquidating Trust's existence and after its termination, at its expense, to protect itself, the Liquidating Trustee and any officer, employee, professional, agent or representative of the Liquidating Trust or the Liquidating Trustee and the Oversight Committee and its members and professionals of and from any liability.

    G. Resignation and Removal.

    1. Resignation of the Liquidating Trustee. The Liquidating Trustee may resign and be discharged from any future obligations and liabilities hereunder by giving written notice thereof to the Oversight Committee, the Holders, the holders of Disputed Unsecured Claims that have not been fully resolved, all attorneys employed by the Liquidating Trust and the Court at least thirty (30) days prior to the date of resignation set forth in the notice of resignation. Such resignation shall become effective after the date specified in such notice when a successor Liquidating Trustee is appointed pursuant to Section VIII.G.3 below and the successor Liquidating Trustee accepts such appointment in writing in accordance with Section VIII.G.4 below.

    2. Removal of the Liquidating Trustee. On motion of the Oversight Committee or, if the Oversight Committee has not been established or has been disbanded, on motion of any holder of an Allowed Unsecured Claim, after notice and a hearing, the Court may remove Sitrick Brincko Group, LLC as Liquidating Trustee if John Brincko ceases to be personally involved and responsible for the activities of Sitrick Brincko Group, LLC in its capacity as Liquidating Trustee. In addition, the Liquidating Trustee may be removed for cause, on motion of any Holder or the Oversight Committee, after notice and a hearing, pursuant to an order of the Court that is not stayed. Such removal shall be effective when a successor Liquidating Trustee is appointed pursuant to Section VIII.G.3 below and the successor Liquidating Trustee has accepted the appointment in writing in accordance with Section VIII.G.4 below.

    3. Appointment of a Successor Trustee. In the event that the Liquidating Trustee gives notice of its intent to resign or shall be removed or shall become incapable of acting, the Court shall, upon request of the Liquidating Trustee, any Holder, the Oversight Committee or an attorney for the Liquidating Trust, designate a successor Liquidating Trustee to act under this Agreement.

    4. Acceptance of Appointment by Successor Trustee. Any successor Liquidating Trustee appointed hereunder shall execute an instrument accepting such appointment and shall file such instrument with Court. Thereupon, such successor Liquidating Trustee shall, from that time forward, without any further act, become vested with all of the properties, assets rights, powers, trusts and duties of the Liquidating Trustee with respect to the Liquidating Trust with like effect as if originally named herein.

## IX. Supplements and Amendments to this Agreement.

A.      Supplements and Amendment. Subject to the provisions of the Plan and this Agreement, at any time and from time to time, the Liquidating Trustee, after consulting with the Oversight Committee, and subject to prior approval by the Court for cause shown, after notice and opportunity for hearing have been provided to any affected Creditors and the Oversight Committee, may execute a supplement or amendment hereto for the purpose of adding provisions to, or changing or eliminating provisions of, this Agreement; provided, however, that if, under applicable law, the consent of the Holders is required, such consent shall be obtained before the amendment or supplement is executed. In no event, however, shall this Agreement be amended so as to change the purpose of the Liquidating Trust as set forth in the Plan or Section II hereof or in a manner that would be inconsistent with the Plan or that would alter the tax treatment of the Liquidating Trust as a "liquidating trust" or a grantor trust for federal income tax purposes under the Internal Revenue Code and relevant IRS rules and guidelines or any other relevant statute.

B.      Effect of Executed Amendment. Upon the execution of any amendment or supplement that has been approved by the Court in accordance with Section IX.A above, this Agreement shall be deemed to be modified and amended in accordance therewith and the respective rights, limitations of rights, obligations, duties and immunities under this Agreement of the Liquidating Trustee, the Oversight Committee and the Holders shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modification and amendment, and all the terms and conditions of any such amendment or supplement shall be thereby deemed to be part of the terms and conditions of this Agreement for any and all purposes.

C.      Notice of Executed Supplement or Amendment. Unless the Court orders otherwise, a copy of each amendment or supplement to this Agreement that has been executed and become effective in accordance with Section IX.A and B above (or a fair summary thereof) shall be served on the Oversight Committee, the Holders and the holders of Disputed Unsecured Claims that have not been fully resolved promptly after the execution thereof; provided, that failure to serve shall not adversely affect the effectiveness of the amendment or supplement.

## X.    Miscellaneous.

A.      Title to Trust Property. No Holder shall possess legal ownership of, or have title to, any part of the Trust Property and no Holder shall have an interest in any specific assets, property, rights, powers or privileges that are part of the Trust Property.

B.      Sales of Assets of the Trust Property. Any sale or other conveyance of Trust Property, or any part thereof, by the Liquidating Trustee made in accordance with the terms of the Plan and this Agreement shall bind the Liquidating Trust and the Holders and shall be effective to transfer or convey all right, title and interest of the Liquidating Trustee, the Liquidating Trust and the Holders (if any) in and to such Trust Property.

C.      Notices. Unless otherwise expressly specified or permitted by the terms of the Plan or this Agreement, all notices, requests, demands or directions to the Liquidating Trustee, in order to be effective, shall be in writing and shall be given or made when actually delivered to or, in the case of notice by facsimile transmission, when received and telephonically confirmed at, the addresses set forth below:

If to the Liquidating Trust and Liquidating Trustee:

> Sitrick Brincko Group, LLC
> Attention: John P. Brincko
> 530 Wilshire Boulevard, Suite 201
> Santa Monica, California 90401
> Telephone: (310) 553-4523
> Telecopier: (310) 553-6782
> E-mail: jpb@brincko.com

- and -

> Franchise Liquidating Trust
> c/o Levene, Neale, Bender, Rankin & Brill L.L.P.
> 10250 Constellation Boulevard, Suite 1700
> Los Angeles, CA 90067
> Attention: David L. Neale, Esq.
> Telephone: (310) 229-1234
> Telecopier: (310) 229-1244
> Email: dln@lnbrb.com

The Liquidating Trustee may change the addresses set forth above by a notice filed with the Court and served on the Oversight Committee, the Holders and holders of Disputed Unsecured Claims that have not been fully resolved.

D.      Severability. Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction, unless the prohibition or unenforceability of such provision will materially change the purpose or effect of this Agreement.      The Liquidating Trustee may attempt to amend or modify this Agreement pursuant to Section IX hereof in order to avoid the effect of this Section X.D.

E.      Binding Agreement. All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the Liquidating Trustee, any successor Liquidating Trustee appointed and accepting appointment as provided in Section VIII hereof, all Holders, the Oversight Committee and its members, and all of their respective heirs, executors,

24

administrators, personal representatives, estates and permitted successors and assigns. Any request, notice, direction, consent, waiver or other instrument or action by any party hereto, any Holder or any Creditor shall bind their respective heirs, executors, administrators, personal representatives, estates and permitted successors and assigns to the same extent that such party, Holder or Creditor is bound.

F.     Headings. The headings of the various Sections or subparts herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

G.     Construction with the Plan and the Confirmation Order. The Plan (including the Confirmation Order) is hereby incorporated fully by reference and is made a part hereof for all purposes; provided, however, that references herein to this Agreement shall refer only to this Agreement and shall not include the Plan unless otherwise indicated. To the extent the Plan (including the Confirmation Order, which governs inconsistencies between the Confirmation Order and the Plan) is inconsistent with this Agreement, the Plan (including the Confirmation Order) shall be controlling.

H.     Governing Law. Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal law applies, this Agreement shall be governed by, and construed in accordance with, the laws of the State of California (excluding conflict of law rules), including all matters of construction, validity and performance.

I.     Subject to the Court's Jurisdiction. In accordance with the terms of the Plan and as more fully set forth therein, to the fullest extent permitted by law, the Court shall have jurisdiction over this Agreement, the Liquidating Trust, the Trust Property, the Liquidating Trustee, the Oversight Committee, the Post-Effective Date Estates, the Chief Restructuring Officer, the Debtors, Holders and other Creditors and any other persons or entities to: (i) ensure that the purposes and intent of the Plan, and this Agreement are carried out; (ii) issue any and all orders and take other actions necessary to implement the Plan and this Agreement, such jurisdiction to include the jurisdiction contemplated by Section 1142 of the Bankruptcy Code and the Amended Bankruptcy Code; and (iii) resolve any disputes regarding the employment or compensation of any officers, employees, professionals, agents or representatives of the Liquidating Trustee or the Liquidating Trust or the Oversight Committee or the members of the Oversight Committee. All provisions of this Agreement are subject to such continuing jurisdiction of the Court. The Court may interpret or enforce this Agreement upon request of a party in interest, including the Oversight Committee, made in accordance with the Bankruptcy Rules.

J.     Integration. This Agreement supersedes all negotiations concerning the subject matter hereof which preceded or accompanied the execution and delivery of this Agreement. This Agreement is intended as the final expression of agreement as to the terms set forth herein, subject to the Plan and the Confirmation Order, and may not be contradicted by evidence of prior agreement or contemporaneous agreement. The Plan and this Agreement are also intended as a complete and exclusive statement of their terms.

K.     Tax Treatment. The Liquidating Trust is intended (i) to be treated, for federal income tax purposes, as a liquidating trust within the meaning of Treasury Regulations

section 301.7701-4(d) and Sections 671 and 677 of the Internal Revenue Code, and (ii) to comply with the requirements of Revenue Procedure 94-45 (1994-2 CB 684) with no objective or authority to engage in the conduct of a trade or business, and any ambiguity shall be construed consistent therewith.  The Surviving Debtors shall be treated as transferring their respective assets, rights and powers to the Liquidating Trust for the benefit of the Holders.  Such transfer shall be treated as a deemed transfer to the Holders followed by a deemed transfer by the Holders to the Liquidating Trust.  The Holders shall be treated as the grantors and deemed owners of the Liquidating Trust.  All income of the Liquidating Trust shall be treated as subject to a tax on a current basis and shall be allocated to the Holders as grantors in proportion to their respective Beneficial Interests.

        L.    Tax Reporting.        The Liquidating Trustee shall file tax returns for the Liquidating Trust as a grantor trust pursuant to Section 1.671-4(a) of the Treasury Regulations and shall file in a timely manner such other tax returns as are required by applicable law and pay any taxes shown as due from the Liquidating Trust thereon.  Promptly following the end of each calendar year and in no event later than March 15th, the Liquidating Trustee shall submit to the Holders a separate statement setting forth the Holder's share of items of income, gain, loss, deduction or credit for federal income tax purposes.  Allocations of the Liquidating Trust taxable income (including earnings or income retained by the Liquidating Trustee in Reserves) shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (without regard to any restrictions on distributions described herein or in the Plan) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all of the Trust Property (valued for this purpose at their tax book value) to the Holders, taking into account all prior and concurrent distributions from the Liquidating Trust and all adjustments necessary to take into account the resolution of Disputed Unsecured Claims.  Similarly, tax loss of the Liquidating Trust shall be allocated by reference to the manner in which economic loss would be borne immediately after a liquidating distribution of the Trust Property.  For this purpose, the tax book value of the Trust Property shall be equal to their fair market value on the Effective Date or, if later, the date such assets were acquired by the Liquidating Trust, adjusted in either case in accordance with the tax accounting principles prescribed by the Internal Revenue Code, Treasury Regulations and other applicable administrative and judicial authorities and pronouncements.

        M.    Valuation of Trust Property.    As soon as possible after the Effective Date, the Liquidating Trustee, in consultation with the Oversight Committee shall make a good faith determination of the fair market value of the Transferred Property, and the Liquidating Trustee shall inform the Holders [and holders of Disputed Unsecured Claims that have not been fully resolved], in writing, of the value of such assets and property, with a copy to the Oversight Committee.  The valuation shall be used consistently by all parties for all purposes, including federal income tax purposes.

IN WITNESS WHEREOF, the parties have executed or have hereunto caused this Agreement to be duly executed, as of the day and year first above written.

Franchise Pictures LLC                          Franchise Pictures, Inc.

By:_____             By: _____
    John P. Brincko,                                John P. Brincko,
    Chief Restructuring Officer                     Chief Restructuring Officer

Franchise Films LLC                             Franchise Entertainment LLC

By:_____             By: _____
    John P. Brincko,                                John P. Brincko,
    Chief Restructuring Officer                     Chief Restructuring Officer

3000 Miles Productions, Inc.                    Carter Productions, LLC

By:_____             By:_____
    John P. Brincko,                                John P. Brincko,
    Chief Restructuring Officer                     Chief Restructuring Officer

Alex and Emma Productions, Inc.                 Champs Productions Inc.

By:_____             By:_____
    John P. Brincko,                                John P. Brincko,
    Chief Restructuring Officer                     Chief Restructuring Officer

Auggie Rose Productions, Inc.                   Conprod, Inc.

By:_____             By:_____
    John P. Brincko,                                John P. Brincko,
    Chief Restructuring Officer                     Chief Restructuring Officer

Battlefield Productions, LLC                    Heightened Productions Inc.

By:_____             By:_____
    John P. Brincko,                                John P. Brincko,
    Chief Restructuring Officer                     Chief Restructuring Officer

Nine Yards Productions, LLC

By:_____
      John P. Brincko,
      Chief Restructuring Officer

Pledge Productions, Inc.

By:_____
      John P. Brincko,
      Chief Restructuring Officer


Seraph Productions, Inc.

By:_____
      John P. Brincko,
      Chief Restructuring Officer


Suite Productions LLC

By:_____
      John P. Brincko,
      Chief Restructuring Officer


VLN Productions, Inc.

By:_____
      John P. Brincko,
      Chief Restructuring Officer


Phoenician Entertainment, Inc.

By:_____
      John P. Brincko,
      Chief Restructuring Officer


Franchise Classics Pictures, Inc.

By:_____
      John P. Brincko,
      Chief Restructuring Officer

Phoenician Entertainment LLC

By:_____
      John P. Brincko,
      Chief Restructuring Officer

Rangers Productions, Inc.

By:_____
      John P. Brincko,
      Chief Restructuring Officer


Split Card Films, Inc.

By:_____
      John P. Brincko,
      Chief Restructuring Officer


Valentine Productions, Inc.

By:_____
      John P. Brincko,
      Chief Restructuring Officer


TGD Productions, Inc.

By:_____
      John P. Brincko,
      Chief Restructuring Officer


Nordhoff Rentals, Inc.

By:_____
      John P. Brincko,
      Chief Restructuring Officer


Franchise Creative Corp.

By:_____
      John P. Brincko,
      Chief Restructuring Officer

28

Franchise Television LLC

By: _____  _____

       John P. Brincko,
       Chief Restructuring Officer


LIQUIDATING TRUSTEE:
SITRICK BRINCKO GROUP, LLC,
in its capacity as Liquidating Trustee

By: _____

       John P. Brincko, President

29

| | |
|---|---|
| In re:<br>Franchise Pictures, LLC, et al.<br>SPE Holding Corp, et al<br><br>Debtor(s). | CHAPTER 11 (jointly administered)<br>CASE NUMBER 05-13855-MT<br><br>CHAPTER 11 (jointly administered)<br>CASE NUMBER 05-50077 |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Blvd., Ste. 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document described as **Debtors' Amended Joint Plan of Liquidation** (Proof Of Service Attached) will be or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On January 9, 2010 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Ron Bender    rb@lnbrb.com
- Laura L Buchanan    lbuchanan@ktbslaw.com
- Katherine Bunker    kate.bunker@usdoj.gov
- Sara Chenetz    sara.chenetz@dlapiper.com
- Brian L Davidoff    bdavidoff@rutterhobbs.com, calendar@rutterhobbs.com;jreinglass@rutterhobbs.com
- Joseph A Eisenberg    jae@jmbm.com
- Joseph A Eisenberg    bt@jmbm.com
- Richard W Esterkin    resterkin@morganlewis.com
- Thomas M Geher    tmg@jmbm.com
- David Guess    dguess@ktbslaw.com
- Richard W Havel    rhavel@sidley.com
- Eric P Israel    eisrael@dgdk.com
- Lance N Jurich    ljurich@loeb.com, kpresson@loeb.com
- Joseph A Kohanski    jkohanski@bushquinonez.com
- Michael S Lurey    michael.lurey@lw.com, colleen.rico@lw.com
- Jennifer L Nassiri    jennifer.nassiri@dlapiper.com, bambi.clark@dlapiper.com
- David L. Neale    dln@lnbrb.com
- Sally S Neely    sneely@sidley.com
- Juliet Y Oh    jyo@lnbrb.com, jyo@lnbrb.com
- Richard Park    Richard.Park@usdoj.gov
- Courtney E Pozmantier    cpozmantier@ktbslaw.com
- J Alexandra Rhim    arhim@buchalter.com, smartin@buchalter.com
- Jacqueline L Rodriguez    jlr@lnbrb.com
- Mark M Sharf    mark@sharflaw.com, msharf00@gmail.com
- David B Shemano    dshemano@pwkllp.com
- Randye B. Soref    rsoref@buchalter.com, IFS_filing@buchalter.com
- Ovsanna Takvoryan    ovsanna@takvoryanlawgroup.com
- Derrick Talerico    dtalerico@loeb.com, kpresson@loeb.com;ljurich@loeb.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                          **F 9013-3.1**

| | |
|---|---|
| In re:<br>Franchise Pictures, LLC, et al.<br>SPE Holding Corp, et al<br><br>Debtor(s). | CHAPTER 11 (jointly administered)<br>CASE NUMBER 05-13855-MT<br><br>CHAPTER 11 (jointly administered)<br>CASE NUMBER 05-50077 |

Additional SPE Holding Corp. NEF list
- Sandford Frey      Sfrey@cmkllp.com
- Stuart I Koenig    Skoenig@cmkllp.com
- Mark A Serlin      mserlin@globelaw.com

## II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):

On January __, 2010 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*
*Service via First Class Mail*
*None*

☐ Service information continued on attached page

## III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on January 11, 2010 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

**By attorney service:**
Honorable Maureen Tighe
United States Bankruptcy Judge
21041 Burbank Blvd.
Woodland Hills, CA 91367

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| January 9, 2010 | Jason Klassi | /s/ Jason Klassi |
|---|---|---|
| *Date* | *Type Name* | *Signature* |